1

191

Marlon D. Currie
4046 Fullerton
Detroit, MI. 48238
(313) 806-4754

REC # 098319

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

Marlon D. Currie

                         Plaintiff,

V.

United States of America
The State of Michigan
State Actors

                     Defendant(s)

Case:2:16-cv-14153
Judge: Murphy, Stephen J.
MJ: Grand, David R.
Filed: 11-28-2016 At 10:28 AM
Currie vs. USA, et al (DP)

# TABLE OF CONTENTS

PREVIOUS CASE FILING…………..……….…..………………………………2

JURISDICTION AND VENUE……..………….…..…………………...……………...3

CLAIM FOR RELIEF………..…………….…..………………………...……….…...6

PARTIES……………….……….…..……………………………….…..…………....7

ALLEGED FACTS and CLAIMS

    FIRST CLAIM………..……….…..……………….…..……………….……....10

    SECOND CLAIM……………………….…..……………………………....21

    THIRD CLAIM…………………….…..……………………………..……..27

    FOURTH CLAIM……………………….…..…………………………..…..99

    RELIGIUOS CLAIM……………………….…..……………………….…..124

INJURIES……………………………….…..……………………….…..…..185

PRAYER FOR RELIEF…………………….…..……………………….…....186

## PREVIOUS CASE FILING

Case Number; 10-13133
Case Filed; August 9, 2010
Case Discussion; August 20, 2010

- Granted application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 (a)(1).
- Dismissed Plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant 28 U.S.C. § 1915 (e)(2).   Detail of the underlying occurrences are scarce because "Plaintiff does not allege any facts"   (Compl.   ¶¶ 10(r), (u).); Plaintiff's complaint is nearly unintelligible.
- The Plaintiff will detail and expound complaint.

## JURISDICTION AND VENUE

A. This action arises under the First and Fourteenth Amendment to the Constitution of the United States; Article IV §25 of the Michigan State Constitution; 42 U.S.C § 1983 Civil action for the deprivation of rights; 42 U.S.C § 1985 Conspiracy to interfere with civil rights; 28 U.S.C § 1343 Civil rights and elective franchise; 42 U.S.C § 1986 Action for neglect to prevent; 42 U.S.C § 1988 Proceedings in vindication of civil rights; 31 U.S.C § 3729 actions for False claims and 18 U.S.C. § 371 Conspiracy to commit offense or to defraud United States.

B. The Court has original jurisdiction over Plaintiffs' constitutional and federal law claims pursuant to 28 U.S.C. § 1331. The court also has subject matter jurisdiction pursuant to 28 U.S.C § 1332.

C. The court has supplemental jurisdiction pursuant to Title 28 U.S.C 1367 to hear Plaintiffs State law claims because those claims are related to Plaintiff's Federal Claims and are inextricably entwined in case and controversy described in Plaintiffs' and arise out of a common nucleus of related facts. Plaintiff's State law claims are related to Plaintiff's Federal law claims such that those claims from part of the same case of controversy under Article III of the United States Constitution. The jurisdictional amount of suit here exceeds the sum of $75,000.00, exclusive of interest and cost.

D. Venue is proper in the Eastern District of Michigan pursuant to 27 U.S.C § 1391per the events giving rise to these claims occurred in the Eastern District of Michigan.

E. The Parties against whom this complaint is filed passed laws (*ex post facto and bills of attainder*) against the religious institution of marriage and the free exercise thereof in violation of the First Amendment. The Parties against whom this complaint is filed passed a minimum of 82 subsequent laws predicated upon the before mentioned First Amendment violation. These 82 subsequent laws trampled the entire Bill of Rights with the exception of the Third and Sixth Amendments. To such the Parties against whom this complaint is filed built a very elaborate house of cards with one unconstitutional law atop another and perpetrated a perpetual fraud representing the color of law. The multiplicity of legal laws in which these Parties have violated is staggering; and they did so openly and in plain sight. The Parties against whom this complaint is filed failed to enforce the Equal

4

Protections and Enforcement Clauses of the Fourteenth Amendment in protection of nine of the Plaintiff's constitutional rights. Parties against whom this complaint is filed failed to provide the Plaintiff a fair trial and Due Process of law. Hence the Plaintiff's grounds for objection is adverse to federal and state legislations and cannot rest upon the grounds of the inferior courts. Insomuch as these Parties have violated an assortment of laws in a multiplicity of ways the Plaintiff prays that the State of Michigan wave its constitutional protections under the Eleventh Amendment and/or he prays that Congress abrogate the states immunity pursuant of its enforcement powers under the Equal Protection, Enforcement and Due Process Clauses of the Fourteenth Amendment and/or the Plaintiff prays that this Federal Court will provide the proper venue.

F. The Parties against whom this complaint is filed violated both the Establishment and Free Exercise Clause of the First Amendment infringing upon Plaintiff's right to religious freedom. These Parties prohibited necessary theocratic practices in the service of the Plaintiff's God and deemed said practices illegal; forcing the Plaintiff to serve the Creator in an unacceptable manner with eternal life threatening consequences. These Parties wrote and enforced illegal ex post facto laws that were broad, vague and didn't care to discriminate and/or differentiate the religious rights of the Plaintiff from the 'legal' definitions of assault. These Parties deprived the Plaintiff of non-trivial protections of life, liberty and property without due process of law. And without the enumerated power to do so these parties used their illegal ex post facto laws as bills of attainder against other enumerated rights of the Plaintiff. Knowing that the Courts have interpreted the Establishment Clause of the First Amendment to accomplish the separation of church and state on both the national and state levels of government the Plaintiff believes this venue is proper.

G. The entire premise of the American justice system is built upon the presumption of innocence. Due process combined with both the Sixth Amendment should've guaranteed the Plaintiff some semblance of justice; a fairness and a moral rightness comparing his criminal charge against all of his enumerated rights both natural and lawful. The passing of "ex post facto laws", writing "Bills of Attainder", "No dropped charges", "testifying in place of spouse", guaranteeing "full faith enforcement and protection", "truthfulness of a declarants statements", "warrantless arrest", "exceptions to hearsay", "order granting

immunity", impeaching the victim", "changing the rules of evidence" and even "likelihood" stacked the odds in favor of the house/Defendants'. Ergo the Plaintiff was arrested, tried and convicted in exercise of his First Amendment rights of religious Exercise, simply because 'he' fell victim to the whelm of overzealous lawmakers who abridged their limits of enumerated powers passing arbitrary and capricious laws depriving the Plaintiff of his constitutional rights. After stripping/seizing the Plaintiff of his rights theses parties tried the Plaintiff in a criminal court that would not hear his constitutional claims. As the Plaintiff raised the constitutional issue at hand, both the prosecuting attorney and his court appointed defense attorney stammered and stuttered around the issue (*as can be seen in the court transcripts*) and proceeded to prosecute the Plaintiff in Star Chamber proceeding perpetrated in a kangaroo court. The trail was a farce and a miscarriage of justice. Our Constitution guarantees the Plaintiff to due process; due process was negated and process is due. This action was perhaps one of the most inventive ways to negate a fair trial in violation of the Sixth Amendments. The parties against whom this complaint is filed perpetrated a fraud, extrinsic fraud, intrinsic fraud and fraud in the inducement under the color of law. As a result of these frauds the Plaintiff was led to believe that he had no other legal options or grounds upon which to stand. Ergo the old adage is true "justice delayed is justice denied." The Plaintiff was charged in exercise of his constitutional rights; a religious right which subordinates every member of his immediate family for which he alone is the rightful religious legal advocate and spokesman of. Yet these parties violated his religious rights and legal authority to processed him like meat with illegal courtroom procedures stream-lined in support of the case logs, and a domestic violence playbook providing the Plaintiff no hope of an innocent verdict. This was no fair trial and it's certainly wasn't justice, neither does it resemble Due Process in any way. [*Satisfying legislative procedure alone is not enough to satisfy Due Process (Chicago, B. & Q.R. Co v Chicago 166 US 226,237 (1897) Justice Harlan*]. For in fact I'm certain that the Plaintiff didn't need to appear to have been found guilty. Ergo this complaint is filed because it's believed that the Plaintiff could not obtain a fair trial in the inferior courts. Chapter 94 of the Michigan Domestic Violence Trails Manual by the Prosecuting Attorney's Association of Michigan (*2009 edition seems to ensure no fair trial*). The procedure outline in the chapter is backed by a number of procedural due

process laws to show that; once the Plaintiff was accused of DV he was neither presumed innocent nor found innocent despite all evidences to the contrary.   Furthermore, Michigan's Supreme Court allocates the federal funding of STOP grants promoting a "one-way" legislative process in support of the domestic violence initiative.   The Compliance Eligibility Requirements of the Stop grants as passed in the VAWA encourages arrests, more arrest and increased arrest.   This is neither conducive nor representative of the American system of law as enumerated in the Bill of Rights.   This makes the domestic violence laws passed by the parties against whom this complaint is filed; both arbitrary and capricious.   So it is not only the illegal domestic violence laws that are in weigh, but the un-enumerated passing of procedural due process laws against the superior rights of the Plaintiff; acts that have stripped the Plaintiff and will continue to strip the Plaintiff of his rights without lawful authority and/or will incriminate Plaintiff before he's even tried.   Due Process was negated, due process was not served, due process is the constitutional guarantee and process is due.

## CLAIM FOR RELIEF

H.  Plaintiff, Marlon D. Currie is entitled to relief in Violation of his Civil Rights and the fraud perpetrated by these Parties with whom I shall now call the Defendants'.   The Defendants' did violate the Plaintiff's Constitutional Rights with an unprecedented solidarity deceiving the Plaintiff to believe that his rights were not in violation and leaving him to believe that he had no legal alternative or option and/or ground to stand, or defend himself and/or no remedy or redress despite the cause for redress pursuant of the First Amendment.   The actions perpetrated against the Plaintiff represent a cognitive and deliberate legislative misconduct… and as representatives of the governing bodies within whose office they hold the conduct is dreadfully shameful.   As "government" the Defendants' passed unconstitutional laws and claimed the legal right to do so in a breach of trust.   Resultantly the Plaintiff's religious freedoms are still prohibited by those laws some eleven years later and he can neither train up his children according to Proverbs 22:6 and 4:1 (*KJV*), or instruct his wide according to Proverbs 5:13 (*KJV*) and I Corinthians 14:35 (*KJV*), nor fulfill the commandments of his God due of these illegal/unconstitutional laws.   In short

the actions of the Defendants' has placed the Plaintiff's immortal soul in danger of eternal damnation. Ergo, this actions seeks complete relief; monetary relief *(punitive)*, equitable relief, injunctive relief, a Petition for Extraordinary Relief, Post-conviction relief, a Motion for Appropriate Relief, exemplary damages, the abrogation of domestic violence laws pursuant of religiously married persons and to expunge/remove and destroy the illegal offense from the Plaintiff's associated police records and its removal from all associated data bases.

## PARTIES

A. Plaintiff, Marlon D. Currie is a citizen of the United States of America and resident of Detroit in the state of Michigan.

B. Defendant(s); The State of Michigan; the U.S. Attorney General; John Ascroft, Alberto Gonzales, Michael Mukasey, Eric Holder and Loretta Lynch. Michigan Attorney Generals; Mike Cox and Bill Schuette. Governors; John Engler, Jennifer Granholm and Rick Snyder. OVW Principal Deputy Director Bea Hanson. Police officers, J. Stitt (badge #1083), H. Valentine (badge #681), E. Toth (badge #395), J Reynolds (badge #1143), R. Summer (badge #1150). Prosecutor, Brian L. Mackie, defense attorneys; Ronald Q. Brown and James M. Kincaid; judges Hon. Richard E. Conlin 14A-3 DC MI. Magistrate Camille T. Horne; probation officer, Cristela Perez Scanlon; employer Total Technical Services.

- Pub L 103-322, 1994 VAWA HR 3355 103rd Congress
- Senator (alphabetical) Vote 61 yea. H.R. 3355. Senate vote #295 of 1994.
  Akaka (D-HI), Baucus (D-MT), Biden (D-DE), Bingaman (D-NM), Boren (D-OK), Boxer (D-CA), Bradley (D-NJ), Breaux (D-LA), Bryan (D-NV), Bumpers (D-AR), Byrd (D-WV), Campbell (D-CO), Chafee (R-RI), Cohen (R-ME), Conrad (D-ND), Danforth (R-MO), Daschle (D-SD), DeConcini (D-AZ), Dodd (D-CT), Dorgan (D-ND), Exon (D-NE), Feinstein (D-CA), Ford (D-KY), Glenn (D-OH), Graham (D-FL), Harkin (D-IA), Heflin (D-AL), Hollings (D-SC), Inouye (D-HI), Jeffords (R-VT), Johnston (D-LA), Kassebaum (R-KS), Kennedy (D-MA), Kerrey (D-NE), Kerry (D-MA), Kohl (D-WI), Lautenberg (D-NJ), Leahy (D-VT), Levin (D-MI), Lieberman (D-CT), Mathews (D-TN), Metzenbaum (D-OH), Mikulski (D-MD), Mitchell (D-ME), Moseley-Braun (D-IL), Moynihan (D-NY), Murray (D-WA), Nunn (D-GA), Pell (D-RI), Pryor (D-AR), Reid (D-NV), Riegle (D-MI), Robb (D-VA), Rockefeller (D-WV), Roth (R-DE), Sarbanes (D-MD), Sasser (D-TN), Simon (D-IL), Specter (R-PA), Wellstone (D-MN), Wofford (D-PA).
- Congress (alphabetical) Vote 235 yea. H.R. 3355. House vote roll call #416 of 1994.
  Abercrombie, Ackerman, Andrews (ME), Andrews, Andrews (TX), Applegate, Bacchus (FL), Baesler, Barca, Barrett (WI), Becerra, Beilenson, Berman, Bilbray, Bishop, Blackwell, Blute, Boehlert, Bonior, Borski, Brooks, Browder, Brown (CA), Brown (FL),

Brown (OH), Bryant (TX), Byrne, Canady, Cantwell, Cardin, Carr, Castle, Chapman, Clayton, Clement, Clyburn, Coleman, Collins (IL), Collins (MI), Condit, Coppersmith, Costello, Coyne, Cramer, Darden, DeLauro, Derrick, Deutsch, Diaz-Balart, Dicks, Dingell, Dixon, Dooley, Durbin, Edwards (CA), Edwards,Engel, English (AZ), Eshoo, Evans, Farr, Fazio, Filner, Fingerhut, Flake, Foglietta, Foley, Ford (MI), Ford, Frank (MA), Franks (CT), Franks (NJ), Frost, Furse, Gallegly, Gejdenson, Gephardt, Gibbons, Gilchrest, Glickman, Gonzalez, Gordon, Grandy, Green, Greenwood, Gutierrez, Hall (OH), Hamburg, Hamilton, Harman, Hastings (FL), Hefner, Hinchey, Hoagland, Hobson, Hochbrueckner, Holden, Horn, Houghton, Hoyer, Huffington, Hughes, Inslee, Jacobs, Jefferson, Johnson (CT), Johnson (GA), Johnson (SD), Johnson, E. B., Johnston, Kaptur, Kasich, Kennedy (MA), Kennelly, Kildee, King, Kleczka, Klein, Klug, Kolbe, Kreidler, Kyl, LaFalce, Lambert, Lancaster, Lantos, Lazio, Leach, Lehman, Levin, Levy, Lipinski, Lloyd, Long, Lowey, Machtley, Maloney, Mann, Manton, Margolies-Mezvinsky, Markey, Martinez, Matsui, Mazzoli, McCloskey, McCurdy, McDermott, McHale, McKinney, McNulty, Meehan, Meek, Menendez, Meyers, Mfume, Miller (CA), Mineta, Minge, Mink, Moakley, Molinari, Moran, Morella, Neal, Neal (NC), Obey, Olver, Owens, Pallone, Pastor, Pelosi, Pickle, Pomeroy, Porter, Poshard, Price (NC), Pryce, Quinn, Ramstad, Reed, Reynolds, Richardson, Ridge, Roemer, Ros-Lehtinen, Rose, Rostenkowski, Roukema, Roybal-Allard, Rush, Sanders, Sangmeister, Sawyer, Saxton, Schenk, Schroeder, Schumer, Serrano, Sharp, Shaw, Shays, Shepherd, Skaggs, Slattery, Slaughter, Smith (IA), Smith (NJ), Snowe, Spratt, Stark, Studds, Swett, Swift, Talent, Thompson, Thornton, Torkildsen, Torres, Torricelli, Towns, Traficant, Upton, Velazquez, Vento, Visclosky, Walsh, Waxman, Weldon (PA), Wheat, Whitten, Woolsey, Wyden, Wynn, Yates, Zimmer.

- Pub L 103-322, 1997 VAWA HR 3355 103th Congress.
  Senator (not listed) Vote 95 yea. H.R. 3355. Senate vote #384 of 1993.
  Congress (not listed) Vote 235 yea. H.R. 3355. House vote #416 of 1994.
- Pub L 109-162, 2005 VAWA HR 3402 109th Congress.
  Congress (alphabetical) Vote 415 yea. H.R. 3402. House vote #501 of 2005.
- Pub L 113-4, 2013 VAWA HR 3402 109th Congress.
  Senator (not listed) Vote 78 yea. S 47. Senate vote #19 of 2013.
  Congress (not listed) Vote 286 yea. S 47. House vote #55 of 2013.
- Michigan (Senate Roll Call 736) Vote 37 yea.
  PA 270 of 1999, House Bill 4713 of 1999. MCL 750.81.
  Bennett, Bullard, Byrum, Cherry, DeBeaussaert, DeGrow, Dingell, Dunaskiss, Emerson, Emmons, Gast, Goschka, Gougeon, Hammerstrom, Hart, Jaye, Johnson, Koivisto, Leland, McCotter, McManus, Miller, Murphy, North, Peters, Rogers, Schuette, Schwarz, Shugars, Sikkema, Smith A., Smith V., Steil, Stille, Van Regenmorter, Vaughn, Young.
- Michigan Legislators. (House Roll Call 878). Vote 104 yea.
  PA 270 pf 1999, House Bill 4713 of 1999. MCL 750.81.
  Allen, Baird, Basham, Birkholz, Bisbee, Bishop, Bogardus, Bovin, Bradstreet, Brater, Brewer, Brown, B., Brown, C., Byl, Callahan, Cassis, Caul, Cherry, Clark, I., Clarke, H., Daniels, DeHart, Dennis, DeRossett, DeVuyst, DeWeese, Ehard, Faunce, Frank, Garcia, Garza, Gieleghem, Gilbert, Godchaux, Gosselin, Green, Hager, Hale, Hanley, Hansen, Hardman, Howell, Jacobs, Jamnick, Jansen, Jelinek, Jellema, Johnson Rick, Johnson Ruth, Julian, Kelly, Kilpatrick, Koetje, Kowall, Kuipers, Kukuk, LaSata, Law, Lemmons,

Lockwood, Mans, Martinez, Mead, Middaugh, Minore, Mortimer, Neumann, O'Neil, Pappageorge, Patterson, Pestka, Price, Prusi, Pumford, Quarles, Raczkowski, Reeves, Richardville, Richner, Rison, Rivet, Rocca, Sanborn, Schauer, Scott, Scranton, Shackleton, Sheltrown, Shulman, Spads, Stallworth, Stamas, Switalski, Tabor, Tesanovich, Thomas, Toy, Van Woerkom, Vander Roest,Vaughn, Vear, Voorhees, Wojno, Woodward, Woronchak.

- PA 268 of 1999, House Bill 4708 of 1999.  MCL 600.2950.
Michigan (Senate Roll Call #675736) Vote 35 yea.
Michigan (House Roll Call #873) Vote 104 yea.

K. Defendant, The United States Government; summons, the Attorney General;

- Domestic Violence Intervention; Catholic Services Diocese of Green Bay, Wisconsin, Valerie Elander Page.  In all the Plaintiff currently list approximately 95 Senators, 371 Congress Persons, 35 members of the Michigan Senate, 102 Michigan Legislators, 2 Attorney Generals, 1 Judge, 1 Magistrate, 1 State Prosecutor, 1 Prosecuting attorney, 2 Defense Attorneys, 4 Police Officers, 1 School Police Officer, 1 Probation officer, 1 DV Counselor, 1 Employer and 1 Chad Brewer.

- Currently the Plaintiff does not name the persons and/or institutions created by the domestic violence initiative whom have also injured the Plaintiff in their official seats with legislative actions; simply because of sheer volume of parties.  Therefore the Plaintiff prays that the Court will rely on his discretion to reduce and/or replace any number of the actors in enumeration J, sponsoring the laws that violate his rights and injure him; voting "yea" on the laws that violate his rights and injure him; and/or enforcing the laws that violate his rights and injure him; on any of the 60 laws contained within the body of this complaint violating nine of the Plaintiff's constitutional Amendment and eighteen of their respective Clauses in a minimum of 320 different ways (*plus 331 by not including all religious Exercises*).  The Plaintiff's prays that if any of the before named parties are deceased, incapacitated and/or bankrupted etc., the Plaintiff is allowed to choose other involved lawmakers as a substitute for the ineligible parties named above as there were multiple official acts of government that have injured the Plaintiff and can be held under Ex Parte Young.

# FIRST CLAIM

**Facts; the Plaintiff alleges the following in every enumeration; the Plaintiff makes the following claims in every enumeration;**

### Events of the First Offense

1. On 06/07/2005 the Plaintiff *(a religious person)* was arrested and charged with MCL 750.81 [780.81(A)] and MCL 750.540 [MSA 28.287A] in Exercise of his First Amendment Rights (Bill of Rights, U.S. Constitution), and his rights of Religious Worship [Article I, Bill of Rights, Constitution of Michigan (1835 and 1963)] and parental duties.

2. The Plaintiff was arrested and jailed; as a direct result lost employment and income, because he was unlawfully detained in Exercise of said rights. The arrest and detention was also an enactment of the third Calder category of ex post facto by increasing retroactive modifications of punishments beyond the law annexed to the office.

3. The Defendants' passed and enforced laws against the Plaintiff that were unconstitutional in violation of both religious clause of the First Amendment.

a) The Defendants' domestic violence legislation are ex post facto laws and Bills of Attainder in violation of Article 1 § 9, ¶¶¶ and Article 1 § 10, ¶ of the US Constitution. The Defendants' domestic violence laws made noncriminal conduct criminal, according to the First Calder Category of ex post facto.

b) More so, the Defendants' domestic violence laws incriminated a civil liberty and [1]converted a constitutional right into a crime in violation of Exercise of the First Amendment. Evelyn Miller, Appellant, v. U.S of America, Appellee, 230 F.2d 486 (5th Cir. 1956) [*The claim and exercise of a constitutional right cannot thus be converted into a crime*]. The Defendants' enacted the third Calder category of ex post facto by increasing retroactive modifications of punishments beyond the law annexed to the office to arrest the Plaintiff for Exercise.

c) The Defendants' domestic violence laws also became Bills of Attainder in the attainder of Exercise pursuant of the First Amendment; the right to Bear Arms pursuant of the Second Amendment; Privacy, Unlawful Seizures, Warrantless Arrest and Probable Cause pursuant of the Fourth Amendment; Self-Incrimination and Due Process pursuant of the Fifth

---

[1] For the remainder of this complaint I'll refer to this act as the Currie Category of ex post facto

Amendment; a Fair Trail pursuant of the Sixth Amendment; Cruel and Unusual Punishment pursuant of the Eighth Amendment; the Un-enumerated Rights pursuant of the Ninth Amendment; the "natural powers" of the Tenth Amendment (*defining lawful jurisdictions*); and Citizenship, Privileges and Immunities, Due Process, Equal Protection and Enforcement pursuant of the Fourteenth Amendment.

d) The Defendants' exceeded their prescribed limits of power in violation of Nine of the Plaintiff's constitutional rights and eighteen of their respective Clauses. [(*McCulloch v. Maryland; Justice Marshall*)" ... *the power of the federal government is "defined and limited" and therefore: "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution"*]. [(*Marbury v. Madison, 1 Cranch 137, 176 (1803) (Marshall, C. J.). "The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written"*]. *Chief Justice Marshall's expressed opinion [(We admit, as all must admit, that the powers of the Government are limited, and that its limits are not to be transcended. But we think the sound construction of the Constitution must allow to the national legislature that discretion with respect to the means by which the powers it confers are to be carried into execution which will enable that body to perform the high duties assigned to it in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are Constitutional; 17 U.S. 421.)*].

4. The Defendants' barred the Plaintiff from his home with a PPO restraining order in violation of Exercise and Establishment of the First Amendment, and Privacy pursuant of the Fourth Amendment and separated the Plaintiff from his wife and family. In so doing the Defendants' violated the "sanctity of marriage" and separated the Plaintiff from his wife and family. *(Matthew 19:6 Wherefore they are no more twain, but one flesh. What therefore God hath joined together, let no man put asunder.); (Leviticus 21:7 They shall not take a wife that is a whore, or profane; neither shall they take a woman put away from her husband: for he is holy unto his God.).*

a) Under the 'color of law' the Defendants' acted ultra vires and violated the "sanctity of marriage" in violation of Exercise of the First Amendment, Privacy and Probable Cause of the Fourth Amendment.

b) The Defendants' acted "parens patriae" to hold the Plaintiff accountable to them for his Exercise in violation of Establishment (*state church/state stipulated Exercise*); and not accountable to His God for theocratic exercises pertaining to his religious family.  Thus the Defendants' prohibited the Exercise in violation of the First Amendment.

c) The Defendants' acted parens patraie to remove the Plaintiff's authority (*as father*) over his child.  Removing the Plaintiff's God given authority not only prohibits the religious Exercise in violation of the First Amendment, but changes, alters and modifies the Exercise in violation of Establishment by establishing a state church, a state stipulated exercise or doctrine upon the Plaintiff's religious practice.  Changes what a right is.

d) The Defendants' legislated a preferred method of child discipline (*no discipline*) over the religious method of child disciplines as stated in Proverbs 13:24 & 23:14-15 (*KJV*) in violation of both religious clauses of the First Amendment.  When the Defendants' prohibited religious discipline they assumed the role of the Plaintiff's God by telling him when and how to dispense justice in his home in violation of Exercise and Establishment of the First Amendment.

e) Prohibiting the Plaintiff from disciplining a child isn't a minor burden on religion and/or a prohibition of the Plaintiff's Exercise.  The prohibition of Exercise impairs the religious development of the child in violation of her religious rights.  The act of changing, altering and modifying the religious discipline not only incorporates Establishment, but destroys the Patriarchal presence of the theocratic home and its relationship to God.  The Defendants' removed the Plaintiff's Patriarchal authority in violation of Exercise.  The Defendants' inadvertently and/or deliberately destroyed the theocratic home itself up-under whose covering the Plaintiff's family all reside; in violation of Exercise. Let's be clear; the Defendants' domestic violence laws didn't merely commit an act prohibiting the physical and/or verbal disciplines of a religious Exercise, the Defendants' actions prohibited "religion" as shown in the RELIGIOUS CLAUSE. The Bible clearly shows that the bases of every religious practices stems from and/or originates from the home.  For it is within the home that God examines and evaluates the man He is to select and/or use for His

purposes. The Fourteenth Amendment's Equal Protection Clause demands that all citizens pursuant of the Citizenship Clause should be treated equally as entitled to all of the same rights and privileges provided by the U.S. Constitution; its Bill of Rights and [2]constitutionally compliant laws. To wit both the Plaintiff and his family were in exercise of religious Exercise when the Plaintiff was occulted by the Defendants'

f) The public Defender and Prosecuting Attorney made false statements of fact or law to a tribunal or failed to correct a false statement or material fact in violation of the American Bar Associations Model Rules of Professional Conduct, Rule 3.3(a)(1).

g) The public Defender and Prosecuting Attorney offered evidence that they knew to be false in violation of the American Bar Associations Model Rules of Professional Conduct, Rule 3.3(a)(3).

h) Counsel verbally provided an ultrasensitive definition of assault to be "any unwanted touching", which was completely unsupported by law. The same brand of ultrasensitive tactics which the Defendants' used in media campaigns to persuade women into believing that they were being abused when they were not as the complaint alleges.

i) As Attorney, Magistrate, and Judge, the Defendants' ignored relevant facts of law to render a guilty verdict in Star Chamber proceedings perpetrated in a kangaroo court. Due Process was denied and process is due.

j) On 07/11/2005 the Plaintiff informed the Defendants' during his tribunal that he was married, head of house, parent and a religious practitioner. The Plaintiff offered evidence and scripture references of said practices. The Plaintiff continued to state that the Defendants' were in violation of federally protected First Amendment rights. And as the Defendants' are without the powers to legislate religion. Due Process should've examined the Plaintiff's claims and the constitutionality of the Defendants' domestic violence laws. However, the Defendants' stammered and stuttered as the court transcript will show, and proceeded to negate Due Process. Counsel should've made a reasonable effort to expedite litigation on the constitutionality of the Plaintiff's claim according to ABA MRPC Rule 3.2. The judge and/or magistrate failed to remand the Plaintiff's case/constitutionality of the Plaintiff's claim over for further action to afford him Due Process. Per enumeration

---

[2]Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are Constitutional; McCulloch v. Maryland; Justice Marshall.

#19 the Defendants' had already established courtroom procedures to process the Plaintiff like meat in Star Chamber proceeding perpetrated in a kangaroo court. [*Satisfying legislative procedure alone is not enough to satisfy Due Process. In determining what is Due Process of law regard must be had to substance, not to form*; Chicago, B. & Q. R. Co. v. Chicago 166 U.S. 226,237 (1897) Justice Harlan]. Ergo the Defendants' denied the Plaintiff's right to a fair and impartial trial in a criminal Court pursuant of the Sixth Amendment.

k) The Defendants' proceeded to prosecute the Plaintiff under their "procedural due process" application of laws which do not exist under the U.S. Constitution in violation of Due Process pursuant of the Fifth and Fourteenth Amendments. The Constitution forbids the Defendants' from writing any such laws denying depriving and/or violating the Privileges and Immunities of the Citizens of the United States under Article 1 § 9, ¶¶¶ and Article 1 § 10, ¶ of the US Constitution; and reinforces the law under the Due Process clauses of the Fifth and Fourteenth Amendments. Ergo the power to incriminate the Plaintiff, by incriminating the First Amendment is not one of the Defendants' enumerated powers and neither is it what the Constitution guarantees as an entitlement of Citizenship. The Defendants' exceeded their prescribed limits of power to write and enforce laws respecting the establishment of religion and prohibiting the exercise thereof. The Defendants' arrested, tried and convicted the Plaintiff with the laws prohibiting his Exercise; violating, denying, depriving and negating many other rights belonging to the Plaintiff to do so. To wit the Defendants' violated nine of the Plaintiff's constitutional rights and eighteen of their respective clauses for the sake of an unconstitutional civil remedy. This is no minor burden on religion and this is no minor trespass of civil liberties. Therewith the Plaintiff [3]seeks Due Process through the filing of a federal complaint. The Defendants' violated the Plaintiff's First Amendment Rights as soon as the Defendants' passed and enforced domestic violence laws to included marital persons as signified by the words 'child in common' within the legal definition of federal and state DV laws added to the crimes of assault. As of right now the Defendants' have continued to deprive the Plaintiff of his

---

[3] The Plaintiff objects to the writing of the procedural due process laws denying Due Process. Seeking substantive due process is an insult to the Fourth and Fourteenth Amendments. Due Process is a right. Due Process is free. The Plaintiff should not have to pay and/or pay a fee for Due Process [Murdock v. Pennsylvania, 319 U.S. 105 (1943).

federally protected rights for eleven consecutive years contributing to great pain, suffering and duress; also consigning his soul to hell (*see RELIGIOUS CLAIM*).  The Defendants' presented themselves under the color of law to violate the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendment rights; in a conspiracy to deprive the Plaintiff 's civil rights in violation of Title 18 U.S.C. § 241 as shown in Morrison's "Mountains of Data"; and the deprivation of civil rights under the color of law in violation of Title 18 U.S.C. § 242, by acting without "lawful authority", exceeding the limits of power, writing and enforcing ex post facto laws and Bills of Attainder without the enumerated powers to do so; and violating Nine of the Plaintiff's constitutional rights without Due Process of law; and the conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 (*depriving of rights and Equal Protection of the law*).

l) On 07/11/2005 during the Plaintiff's tribunal, the Plaintiff's wife repeatedly informed the Defendants' that she and the Plaintiff were married, and that the Plaintiff was husband, parent and head of house.

m) On 07/11/2005 during the Plaintiff's tribunal, the Plaintiff and his wife sufficiently defined their religious beliefs, exercise and marriage as demanded by the Christian God.  The article of their Faith was understood and the religious conditions accepting of the Plaintiff's religious Exercises were guaranteed by the protections of the First, Fifth and Fourteenth Amendments.  The religious practices described by the Plaintiff and his wife are both protected by the U.S. Constitution as well as the Constitution of the State of Michigan; Article I, § 4 and § 10.  When the Defendants' were informed of the Plaintiff's constitutional rights; the Defendants' should've provided Due Process of law and inferred to Bradley v. State and inquired if the so-called-victim was the Plaintiff's daughter.  However, the Defendants' had already added the words "child in common" to the definitions of domestic violence and added and included it to the crimes of assault.  In other words the Defendants' had already written ex post facto laws and Bills of Attainder for which the Plaintiff was being tried.  The act negates Due Process and defeats any hope of a Fair Trial pursuant of the Sixth Amendment with no other foreseeable outcome; destroying the "presumption of innocence" in America and defeating a function of government.

n) Yet the Defendants' continued to violate and deprive the Plaintiff of liberties; and the Plaintiff's arrest, charge, tribunal and conviction constitutes proof of the claim.  Neither has Congress Enforced (*religious*) Equal Protection with a verbiage to exclude the religious freedoms of the First Amendment of which they have no jurisdiction or legal precedence.

o) On 09/29/2005 the Defendants' trampled the Plaintiff's First Amendment Rights and convicted the Plaintiff of MCL 750.811 [750.81 (A)].  The conviction prohibited and still prohibits the free exercise of religion.  The conviction penalizes the Plaintiff under the first and second Calder Category of ex post facto.  The conviction was also made under the forth Calder Category of ex post facto by changing the rule of evidence to prosecute on the bases of an illegal law/unconstitutional law without Due Process of law.

p)  The Defendants' usurped the Plaintiff's religious authority over his household in violation of un-prohibited Exercise and incriminated and prohibited the free Exercise thereof; therefore violating both the Establishment Clause as well as the Exercise Clause of the First Amendment.  Upon sentencing; the Defendants' ignored four opportunities (*arrest, detention, pre-trial and tribunal*) to uphold the federal grants, liberties, immunities, powers, promises and guarantees of the U.S. Constitution as a blatant disregard for law.  On each of those four occasions the Defendants' elected to deprive the Plaintiff of those grants, liberties, promises and guarantees, and continued to perpetuate a fraud; a fraud deceiving the Plaintiff and led him to believe that he had no other legal options or alternatives in which to fight so grave an injustice.

q) On 09/29/2005 the Defendants' convicted and incriminated the Plaintiff as well as the Plaintiff's religious beliefs and practices through legislations demanding that the Plaintiff modify his religious beliefs and practices in a manner acceptable, compliable and deemed legal by the laws of the Defendants' in order to avoid further prosecution.  No change in the Plaintiffs' behavior (*i.e. religious conduct*) would violate the terms of probation.  This probationary stipulation violates both religious clauses of the First Amendment by prohibiting normal Exercise while incorporating a state stipulated practice as a substitute (*Establishment*).

r) In so doing, the Defendants' humiliated and usurped the Plaintiff's God's given authority over his child in violation of Exercise; and conditioned his return home to his family solely

upon the consent and permission of the child, with whom the Plaintiff has authority over, by incorporating Establishment (*granting the child power over the parent in violation of Mt 10:24 KJV; in violation of exercise*). Thus destroying God's Patriarchal relationship with the Plaintiff and his theocratic home in violation of Exercise. Resultantly the Plaintiff has been disarmed and lost the struggle to regain control over his household ever since the Defendants' divided his family with ultra vires laws. As a result of the Defendants' actions the Plaintiff's household is not in order (*see RELIGIOUS CLAIM*) in violation of Exercise.

s) By action, the Defendants' laws demanded that the Plaintiff surrender "male authority" and the "rod" in contrast of his faith in violation of Exercise. Thereby creating a State sanctioned, acceptable and legally recognized version of the Plaintiff's religious practices in violation of Establishment. Had the Defendants' provided Due Process and not penalized, punished or incriminated the Plaintiff for religious Exercise an/or passed legislation against those time honored beliefs; by decreeing, declaring and legislating that the Plaintiff most abandon and modify certain aspects of his Exercise in order to avoid criminal prosecution... then the Defendants' wouldn't be guilty of the long list of crimes contained within the body of this complaint. Joshua 1:8 (*KJV*) demands that the followers of God meditate in the Book of the Law (*Scriptures*) so they might observe to do according to "all" which is written within therein. This passage does not exclude "all" and/or "any" of the Exercises disapprove of by the Defendants'. Therefore the Plaintiff cannot remain pacified by the Defendants' domestic violence laws which places the Plaintiff soul at risk of eternal damnation (*see RELIGIOUS CLAIM*). The passage clearly states that the Plaintiff must observe to do according to "all" that is written therein. According to James 2:10 (*KJV*) the federal and state governments may never be of the ability to legislate against religion by imposing a minor burden on religion, because the scripture tells us that failing to keep one of God's commandments makes us guilty of breaking all of God's commandments. Thus the Defendants' laws demands that the Plaintiff should "sin" in violation of Exercise.

5. The Defendants' recognized the Plaintiff's natural and theocratic position as the "head of house" that has also been recognized by the rulings of other courts, telemarketers, service providers and members of society as a parent and decision maker in the home. In so doing

the Defendants' dismissed the charge of MCL 750.540; pursuant of Exercise. However, the Defendants' found the Plaintiff guilty of MCL 780.811, and claimed that he had no parental or religious right to discipline his child under the Defendants' DV laws; in violation of Exercise. The Plaintiff found this "odd" and worth investigating. It was then that the Plaintiff discovered the Defendants' fraud, and intrinsic fraud (*the false representation of facts and law which railroaded the Plaintiff in court*), the extrinsic fraud (*which kept him from obtaining vital information about his rights*), and the fraud in the inducement ([4]*begging the Plaintiff to act to his disadvantage and rely on the justice of the court, the discretion of his attorney and the prosecutors authority to prosecute him as a law abiding citizen*) which violated the ABA MRPC Rules 3.2, 3.3(a)(1) and 3.3(a)(3). All of the actions perpetrated by the Defendants' caused the Plaintiff to believe that he had no other legal option or alternative; therefore the Plaintiff is also asking for exemplary damages.

a) The Defendants' prohibited the free Exercise of religion by making it an illegal and stipulated practice demanding that the Plaintiff alter his lifestyle and change his religious practices to comply with the Defendants' laws, in violation of the Establishment and free Exercise Clause of the First Amendment. As pertaining to his child.

b) The Plaintiff's First Amendment rights were prohibited by Bill of Attainder and ex post facto laws to which the U.S. Constitution promised that none would be passed. This constitutes a "breach of promise" as the states are without the power to revoke grants. This also constitutes a "breach of trust". The Plaintiff's arrest, trial and conviction are all evidences of these breaches.

c) As by abridging, violating, denying and depriving the Plaintiff of Nine Constitutional Amendments, the Defendant's disarmed the Plaintiff of his enumerated powers, muted his political voice, judicial standing and stripped him of his parental authority in the home. These actions expose the Plaintiff and his household to terrestrial and celestial threats, and vulnerabilities perhaps unforeseen by the Defendants' (*see RELIGIOUS CLAIM*). The domestic violence conviction strips the Plaintiff of his rights to bear arms pursuant the Second Amendment per MCL 600.2950, MCL 600.2950a and MCL 764.15c, as a Bill of

---

[4] The Plaintiff thoroughly discussed the constitutional as relevant facts of law and provided documentation counsel dismissed.

Attainder; and the domestic violence legislation continues to strip the Plaintiff of arms against the spiritual/biblical in watch for his family's souls (*see RELIGIOUS CLAIM*).

d) On 09/18/2005 the Defendants' made the Plaintiff aware of the "color of law" when the Plaintiff sought an appeal, but failed to retain an attorney, because counsel didn't want to appeal the Judge's decision and tried to persuade the Plaintiff to disregard the issue while others remained tight lipped and/or stammered, stuttered, evaded and/or terminated all communication on the subject. Since it's illegal to record a conversation without informed consent it was nearly impossible to provide proof of these accusations. However, the Plaintiff has retained a few emailed correspondences of these accounts perpetuating the frauds identified in enumeration 5. The "color of law" used to arrest, try and convict the Plaintiff led him to believe that he had no legal option or alternatives to stand against the injustice and/or frauds which created an unprecedented solidarity between the federal government, the state of Michigan, the bench, law enforcement, legal counsel and the prosecutor's office. To which the Plaintiff has studied the Constitution, constitutionality, constitutionalism, the law and case laws to discover that crimes/injustices are still being committed/perpetuated against the Plaintiff. Therewith the Plaintiff begs that there should be no qualifying statute of limitations to free the parties/state actors named in the body of this complaint pursuant of ex parte Young for their state actions.

e) 18 U.S.C. § 371 sets legal precedent demanding that only four evidences be shown to prove the Defendants' conspiracy to defraud a nation. Let it be known that it is the Plaintiff who steps forward to advocate on behalf of truth and law. The Plaintiff does so, because the Defendants' illegal laws have become a new bases for religious discrimination in America. The federal laws prohibiting job discrimination; Title VII of the Civil Rights Act of 1964, prohibits employment discrimination based on race, color, religion, sex, or national origin [*Federal Equal Employment Opportunity (EEO) Laws*] is abrogated by a domestic violence conviction seen on pre-employment screening and/or during on-going periodic background checks as (*felony, or not*). This allows employers to deny employment opportunities to potential applicants solely on the bases of "religion", because the Defendants' have incriminated the Exercise. The general governments are also guilty of religious discrimination due to State mandatory rules denying employment to religious

p10-20

practitioners convicted of domestic violence in all care professions (*child care, nursing homes etc*) in violation of the Civil Rights Act of 1964.

f) The Plaintiff alleges that all CLAIM's made in the body of this complaint is evidence and direct evidence that the Defendants' did do and commit the acts enumerated in each claim. The facts and evidences of which are seen in the Defendants' laws that they have written to prohibit Exercise and incorporate Establishment. Evidences can also be seen in all of the media propaganda let out in support of the Defendants' laws. For which the Defendants' incriminated the Bill of Rights, charged the Plaintiff with a crime in exercise of his First Amendment rights. The Defendant's violated the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments, three Articles of the Constitution, two federal rules of evidence, Michigan's Rights of Religious Worship and most shamefully attempted to brainwash/reform the Plaintiff of Exercise through 52 weeks of repetitious therapeutic probationary counseling designed to alter his behavior and "break the cycle of abuse". The Defendants' penalized the Plaintiff for a lack of cooperation, placed a criminal conviction on the Plaintiffs' record and destroyed the Plaintiff's household for disciplining an unruly child (*a runaway*) and suspending phone privileges; and they did it openly and in plain sight. To which the Plaintiff also seeks action for 'neglect to prevent', because no branch of local or federal government or its agents/members of the bar or law enforcement prevented, nor took actions to prevent any of these misdoings.

g) On 11/8/2005 MCL 771.3 became an attainder of the Plaintiff's right to travel. The Defendants' incriminated the Plaintiff's Exercise and enforced MCL 771.3 as a condition of the Plaintiff's probation. MCL 771.3 required the Plaintiff to seek the Defendants' permission to travel for employment opportunities and became an attainder of Privileges and Immunities pursuant of the Fourteenth Amendment [*see Corfield v. Coryell, 6 Fed. Cas 546 (1823) and Paul v. Virginia 75 U.S. 168 (1869)*].

1
p10-20

## SECOND CLAIM

### Facts; the Plaintiff alleges the following in every enumeration; the Plaintiff makes the following claims in every enumeration;

### Events of the Second Offense

6. Plaintiff recounts and incorporates the enumerated paragraphs from the First Claim of the complaint herein.

7. On 12/26/2005 the Plaintiff *(a religious person)* was arrested and charged with MCL 780.812 [780.81(B)] *(violating the terms of probation)* in Exercise his First Amendment Rights and his rights Bill of Rights, U.S. Constitution), and his rights of Religious Worship [Article I, Bill of Rights, Constitution of Michigan (1835 and 1963)] and husbandly duties.

a) The Plaintiff still married per page 2 of the police/incident report and was arrested for refusing to abandon, alter and/or modify his religious beliefs based on the un-prohibited Exercise of the First Amendment. As a matter of law and "terms of probation" the Defendants' demanded that the Plaintiff abandon, alter and/or modify his religious practices in violation of Establishment in order to avoid further criminal prosecution for Exercise. The Plaintiff's re-arrest and tribunal constitutes proof of the Defendants' stipulated/state sanctioned religion in violation of Establishment. The Plaintiff was arrested and charged, because he still declined to quit the law of nature and relinquish Exercise as modified by the Defendants' with ex post fact laws and Bills of Attainder incriminated the Bill of Rights. And as state legislatures lobbied successfully to reduce the "evidentiary requirements" needed to make an arrest. The Plaintiff's arrest and detention was also a result of the third Calder category of ex post facto by increasing retroactive modifications of punishments beyond the law annexed to the office.

b) The Defendants' acted "parens patriae" to hold the Plaintiff accountable to them for his Exercise in violation of Establishment; and not accountable to His God for theocratic exercises pertaining to his religious family. The Defendants' changed and monitored the Plaintiff's Exercise incorporating Establishment, and prohibited the Exercise in violation of the First Amendment.

2
p21-27

h) The Plaintiff's First Amendment rights were prohibited by bill of attainder and ex post facto laws to which the U.S. Constitution promised that none shall be passed (a breach of promise). The Plaintiff's re-arrest, trial and conviction are all evidences of said breach.

i) The Defendants' usurped the Plaintiff's religious authority over his household in violation of un-prohibited Exercise and incriminated and prohibited the free Exercise thereof. The Defendants' violated both the Establishment Clause as well as the Exercise Clause of the First Amendment. The Defendants'' usurped the Plaintiff's religious and physical authority over his household in violation of the separation of powers pursuant of the Tenth Amendment.

j) ON 12/29/2005 The Defendants' Magistrate remanded the Plaintiff over to domestic violence policies per enumeration #19, but failed to remand the Plaintiff's constitutional claims per enumeration #4j in Exercise of his rights.

k) On 02/07/2006 the Plaintiff was told by the Defendants' (*Judge*) at the beginning of his tribunal that if the Judge was to even take the time to hear the Plaintiff's case on the day of his tribunal that the Plaintiff would be immediately jailed following the proceeding regardless of the outcome. The threat of incarceration was presented as an obstruction against Due Process, a fair and impartial hearing. The threat forced the Plaintiff to plead no-contest. The threat forced the Plaintiff to make a choice that he should not have been made to make [*Thomas v. Review board 450 U.S. 707; a person may not be compelled to choose between the exercise of a First Amendment right and any other programs or consequence*]. The Defendants' coerced and deprived the Plaintiff of due process and made him fearful of a corrupt legal process of which he could not be heard (*this is not Due Process*). A system that could violate the Plaintiff's rights, arrest and punish the Plaintiff in Exercise of said rights. A system which continued to perpetuate a fraud deceiving the Plaintiff and causing him to believe that he had no legal options and/or alternatives in which to fight so grave an injustice. This scene was reminiscent of the "carpetbag" and "scalawag" governments of America's past. Unequivocally the Defendants' used the "color of law" to threaten, intimidate and disarmed the Plaintiff. To violate his rights, to deprive him of his rights and then to intimidated him in order to get away with it. When the Plaintiff informed the Defendants' of his constitutional rights; the Defendants' should've provided Due Process of law and inferred to Bradley v. State and inquired if the

c) The Defendants' acted "parens prtraie" to replace the Plaintiff as husband and remove his covering and authority in the home in violation of Exercise.

e) The Defendants' prohibited the free Exercise of religion by making it an illegal and stipulated practice demanding that the Plaintiff alter his lifestyle and change his religious practices to comply with the Defendants' laws, in violation of the Establishment and free Exercise Clause of the First Amendment; as pertaining to his wife.

f) The Defendants' prohibited the Plaintiff from correcting his wife in violation of the Exercise.  Prohibiting the Plaintiff from correcting his wife isn't a minor burden on religion.  The act of changing, altering and modifying the religious discipline not only incorporates Establishment, but destroys the Patriarchal presence of the theocratic home and its relationship to God.  The Defendants' removed the Plaintiff's Partriachal authority in violation of Exercise.  Thus by removing the Plaintiff's Patriarchal authority, the Defendants' have inadvertently and/or deliberately destroyed the theocratic home itself up-under whose covering the Plaintiff's family all reside; in violation of Exercise.  Let's be clear; the Defendants' domestic violence laws didn't merely commit an act prohibiting the physical and/or verbal disciplines of a religious Exercise, the Defendants' actions prohibited "religion" as shown in the RELIGIOUS CLAUSE.  The Bible clearly shows that the bases of every religious practices stems from and/or originates from the home.  For it is within the home that God looks at and evaluates the man He is to select and/or use for His purposes.  In furtherance The Fourteenth Amendment's Equal Protection Clause demands that all citizens pursuant of the Citizenship Clause should be treated equally as entitled to all of the same rights and privileges provided by the U.S. Constitution; its Bill of Rights and [5]constitutionally compliant laws.  To wit both the Plaintiff and his family were in exercise of religious Exercise when the Plaintiff was occulted by the Defendants'.

g) The Plaintiff's First Amendment rights were prohibited by Bill of Attainder and ex post facto laws to which the U.S. Constitution promised that none would be passed.  This constitutes a "breach of promise" as the states are without the power to revoke grants.  This also constitutes a "breach of trust".  The Plaintiff's arrest, trial and conviction are all evidences of these breaches.

2

p21-27

---

[5]Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are Constitutional; McCulloch v. Maryland; Justice Marshall.

so-called-victim was the Plaintiff's wife.  However, the Defendants' had already added the word "spouse" to the definitions of domestic violence and added and included it to the crimes of assault.  In other words the Defendants' had already written ex post facto laws and Bills of Attainder for which the Plaintiff was being tried.  The act negates Due Process and defeats any hope of a Fair Trial pursuant of the Sixth Amendment with no other foreseeable outcome; destroying the "presumption of innocence" in America and defeating a function of government.

l) With a new job, and supporting three households due to a poor economy the Plaintiff couldn't afford the threat of incarceration and the possibility of losing another job. Therefore, the Plaintiff pled "No Contest" in lieu of the Defendants' threats.

2

p21-27

l) In so doing, the Defendants' humiliated and usurped the Plaintiff's God's given authority over his wife in violation of Exercise; and conditioned his return home to his family solely upon the consent and permission of his wife by incorporating Establishment.  Thus destroying God's Patriarchal relationship with the Plaintiff and his theocratic home in violation of Exercise.  Resultantly the Plaintiff has been disarmed and lost the struggle to regain control over his household ever since the Defendants' divided his family with ultra vires laws.  As a result of the Defendants' actions the Plaintiff's household is not in order (*see RELIGIOUS CLAIM*) in violation of Exercise.

m) By action, the Defendants' laws demanded that the Plaintiff surrender "male authority" and the "rod" in contrast of his faith in violation of Exercise.  Thereby creating a State sanctioned, acceptable and legally recognized version of the Plaintiff's religious practices in violation of Establishment.  Had the Defendants' provided Due Process and not penalized, punished or incriminated the Plaintiff for religious Exercise and/or passed legislation against those time honored beliefs; by decreeing, declaring and legislating that the Plaintiff most abandon and modify certain aspects of his Exercise in order to avoid criminal prosecution… then the Defendants' wouldn't be guilty of the long list of crimes contained within the body of this complaint. Joshua 1:8 (*KJV*) demands that the followers of God meditate in the Book of the Law (*Scriptures*) so they might observe to do according to "all" which is written within therein.  This passage does not exclude "all" and/or "any" of the Exercises disapprove of by the Defendants'.  Therefore the Plaintiff cannot remain pacified by the Defendants' domestic violence laws which places the Plaintiff soul at risk

of eternal damnation (*see RELIGIOUS CLAIM*).   The passage clearly states that the Plaintiff must observe to do according to "all" that is written therein.   According to James 2:10 (*KJV*) the federal and state governments may never be of the ability to legislate against religion by imposing a minor burden on religion, because the scripture tells us that failing to keep one of God's commandments makes us guilty of breaking all of God's commandments.   Thus the Defendants' laws demands that the Plaintiff should "sin" in violation of Exercise.

n) On 03/23/2006 the Defendants convicted the Plaintiff of MCL 750.81(2) [769.4a)] and trampled his First Amendment Rights for disputing his wife; exerting religious male authority and driving away.

2
p21-27

o) On 03/23/2006 the Defendants' convicted and incriminated the Plaintiff 'again' as well as the Plaintiff's religious beliefs and practices through legislations demanding that the Plaintiff modify his religious beliefs and practices in a manner acceptable, compliable and deemed legal by the laws of the Defendants' in order to avoid further prosecution.   No change in the Plaintiff's behavior (*i.e. religious Exercise*) would violate the terms of probation.    This probationary stipulation violates both religious clauses of the first Amendment by prohibiting normal Exercise while incorporating a state stipulated practice as a substitute (Establishment).   The Defendants' humiliated and usurped the Plaintiff's God's given authority in violation of Exercise and even conditioned his return home to his family solely upon the consent and permission of his wife with whom he argued in Exercise of the First Amendment (*giving the wife authority over her husband conflicting with I Cor11:8 and I Tim 2:12 KJV; in violation of Exercise*).   Resultantly the Plaintiff has been disarmed and struggling to regain control over his household since the Defendants' divided his family with ultra vires laws.   In violation of the Plaintiff's First Amendment Rights the Defendants' demanded that the Plaintiff surrender male authority and the rod in contrast of his faith in violation of Exercise

p) The Defendants' disregarded the Plaintiff's religious obligations, duties and theocratic powers and trespassed against the Plaintiff Exercise and "rule/jurisdiction" over his home pursuant of the First and Tenth Amendments.   During the Plaintiff's first tribunal he found it odd that the prosecuting attorney did not rebuttal the Plaintiff's First Amendment claims as neither did his defense attorney advocate on his behalf.   Now a Judge mutes the

Plaintiff's claims.  The governments of the United States of America have never formed a legal body to legislate religion and neither can it; the separation of church and state forbids it.  Resultantly the Supreme Court found the RFRA (*Religious Freedom Reformation Act*) unconstitutional, but somehow compelling interest still lives on.  Surely the Defendants' are grossly entangled in a web of deception, falling ever so deeper and deeper into redress.

q) As by abridging, violating and denying the Plaintiff of nine Amendments, the Defendant's disarmed the Plaintiff of his enumerated powers, muted his political voice, judicial standing and stripped him of his parental authority in the home in violation of the First and Tenth Amendments.  These actions expose the Plaintiff and his household to terrestrial and celestial threats and vulnerabilities perhaps unforeseen by the Defendants' (*see RELIGIOUS CLAIM*).  The domestic violence conviction strips the Plaintiff of his rights to bear arms pursuant the Second Amendment per MCL 600.2950, MCL 600.2950a and MCL 764.15c, as a Bill of Attainder; and the domestic violence legislation continues to strip the Plaintiff of arms against the spiritual/biblical in watch for his family's souls (*see RELIGIOUS CLAIM*)..

r) The Plaintiff alleges that all CLAIM's made in the body of this complaint is evidence and direct evidence that the Defendants' did do and commit the acts enumerated in each claim.  The facts and evidence of which are seen in the law that they have written to prohibit the Exercise and incorporate Establishment; evidences can also be seen in all of the media propaganda let out in support of the Defendants' laws.  The Defendants' incriminated the Bill of Rights, charged the Plaintiff with a crime in exercise of his First Amendment rights.  The Defendant's violated the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments, three Articles of the Constitution, two federal rules of evidence, Michigan's Rights of Religious Worship and most shamefully attempted to brainwash/reform the Plaintiff of Exercise through 52 weeks of repetitious therapeutic probationary counseling designed to alter his behavior and "break the cycle of abuse".  The Defendants' penalized the Plaintiff for a lack of cooperation, placed a criminal conviction on the Plaintiffs' record and destroyed the Plaintiff's household for disputing with his wife; and they did it openly and in plain sight.  To which the Plaintiff also seeks action for 'neglect to prevent', because no branch of local or federal government or its

2

p21-27

agents/members of the bar or law enforcement prevented, nor took actions to prevent any of these misdoings.

## THIRD CLAIM

**Facts; the Plaintiff alleges the following in every enumeration; the Plaintiff makes the following claims in every enumeration;**

**Ongoing offenses, multiplicity of offenses and conspiracy.**

2
p21-27

8.  Plaintiff recounts and incorporates the enumerated paragraphs from the previous CLAIMS of the complaint herein.

9.  The Defendants' continue to deprive the Plaintiff's rights.  Violations of the Plaintiff's rights are still ongoing.  The Defendants' have deprived the Plaintiff of his First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendment rights and eighteen of their respective Clauses.

3
p27-99

10. The Defendants' Unlawfully Seized the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendment rights and eighteen of their respective Clauses to enforce domestic violence laws and prohibit the Plaintiff's Exercise.

11. The Defendants' domestic violence laws are the Attainder of the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendment rights and eighteen of their respective Clauses to enforce domestic violence laws and prohibit the Plaintiff's Exercise.

12. The Defendants' wrote ex post facto laws against the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendment rights and eighteen of their respective Clauses to enforce domestic violence laws and prohibit the Plaintiff's Exercise.

13. The Defendants' did violate: nine of the Plaintiff's Amendment rights and eighteen of their respective Clauses. Failed to uphold the Supremacy Clause per Article VI, ¶¶, the Oaths Clause per Article VI, ¶¶¶, exceeded their limits of power in violation of Article 1 § 8, ¶ and ¶¶¶, and passed Bills of Attainder and ex post facto laws in violation of Article 1 § 9, ¶¶¶, and  Article 1 § 10, ¶ of the U.S. Constitution:  Two Federal Rules of Evidence Article

V, Privileges; Rule 505, General Rule; Husband-Wife Privilege(s), the Federal Rules of Evidence Article V, Privileges; Rule 501, General Rules pertaining to Marital Confidence Privilege and Spousal Testimonial Privilege relative to the Fourth and Fifth Amendment: Four Calder Categories of "ex post facto", as well as Articles I § 1, 2, 4, 6, 10, 11, 17, 20, 23, 26 and Article IV § 24 of Michigan's State Constitution: Perpetrated fraud, extrinsic fraud, intrinsic fraud and fraud in the inducement against the Plaintiff: Denied employment opportunities solely on the bases of religious discrimination in violation of the Federal Equal Employment Opportunity (*EEO*) Laws, Title VII of the Civil Rights Act of 1964, and by action allowed others to do the same: Are in violations of The Civil Rights Act of 1964, 42 U.S.C § 1983 Civil Action For Deprivation of Rights, 42 U.S.C § 1985 Conspiracy to Interfere With Civil Rights ¶¶¶, 42 U.S.C § 1986 Action For Neglect to Prevent, 18 U.S.C § 1623 False Declarations before Grand Jury or Court (*perjured oaths*), 18 U.S.C § 241 Conspiracy Against Rights, 18 U.S.C § 242 Deprivation of Rights Under Color of Law. 18 U.S.C. § 371 Conspiracy to Defraud the United States. Imposed an unreasonable burden on religion [RFRA] 42 U.S.C § 2000bb Congressional Findings and Declaration of Purposes and 42 U.S.C § 2000bb-1 Free Exercise of Religion Protected: Religious Discrimination, Breach of Promise, Breach of Trust, and Harassment. The Plaintiff also seek 28 U.S.C § 1343 Civil Rights and Elective Franchise and 28 U.S.C § 1443 Civil Rights Cases against "state actions".

**3**

p27-99

14. The VAWA of 1994, H.R. 3355, Pub. L. 103-322., Sep 13, 1994, approved by former President Bill Clinton and the 235 members of congress voting AYE on Congressional Roll Call 416, and the 95 members of the Senate voting YEA per the U.S. Senate Roll Call votes 103rd Congress 1st Session Vote Number 384;* adds and includes religious marriage (the *theocratic household*) to crimes of assault under the title and category of domestic violence in violation of the First Amendment. * Adds and includes the word "spouse" and "parent" as definitions of domestic violence, and redefining the phrase "intimate partner" to mean "spouse" and "parent" in violations of the First Amendment. Adding the word 'spouse' denotes religious marriage of the First Amendment and common law. * Thereby creating ex post facto laws per the first, second Calder and fourth Calder category of ex post facto. * Prohibits free Exercise religious and makes is a prosecutable offence per the first and second Calder category of ex post facto. * Institutes a "no contact" stay away

Personal Protection Order (PPO) [6]in violations of the First, Fourth, Fifth and Fourteenth Amendment. * Bribes reluctant states law enforcement agencies with grants and federal funding in support of the legislation. * Withholds funding for noncompliance. * Noncompliance by the Plaintiff results into incarceration and/or imprisonment. * Is the attainder of the Plaintiff's Second Amendment to bear arms as DV convictions denies the receipt of firearms for DV perpetrators. * Specifically targets religious marriage. * Instituted mandatory and warrantless arrest policies without Probable Cause in violation of the Fourth Amendment. * And allots the Defendants' a 75% federal share of the $1billion in grants and special taskforces targeting religious marriage in violation of the First Amendment. This combined with a minimum conservative estimate of approximately $1.7 billion in fees, fines, bails, bonds, and court cost paid by the alleged perpetrators of domestic violence in the state of Michigan alone. In the years 2007 – 2008 the 110th Congress approved between $409 to $430 million for the Office on Violence Against Women Recovery Act, in the H.R. 3093 bill (*U.S Department of Commerce, Justice, Science and Related Agencies*) with what the media called a "Feminist Pork Spending Bill", which allotted $115 million to encourage arrest and an additional $55 million to encourage the arrest and prosecution of children. As we can see the issue of domestic violence (*punishing the innocent*) has proven to be a very lucrative practice; one which can easily afford the redress of grievances and liabilities occurred by all state actions and state actors. Within recent years the Victims of Crimes Act (VOCA) has released $2.573 billion in annual revenues, by averting $14.8 billion in victimization cost. In 2009 the American Recovery and Reinvestment Act allotted $225 million to the Office on Violence against Women (OVW) to combat the legacy of laws, social norms and religious exercises that long served to justify violence against women. This means that the Defendants' domestic violence agenda is no longer a "Feminist Pork Spending Bill"; because religious acquiesce and sufferance of governmental interferences have been taken carte blanche. In other words the Defendants' have found a passive patsy to pay government expenses. * In all;

3

p27-99

---

[6] Pursuant the First Amendment Religious Exercise denotes a "One Flesh Doctrine" upheld by the Citizenship Clause in three ways; 1st citizenship/naturalization entitles all citizens to Free Exercise & One Flesh Doctrines of Marriage pursuant Equal Protection, Citizenship, and Privileges and Immunities. 2nd Citizenship adopts the concept of incorporation as a natural person i.e. Free Exercise and Citizenship allows for the recognition of a marital person. 3rd PPO's are unconstitutional per Castle Rock v. Gonzales.

Pub. L. 103-322, violates nine constitutional Amendments and two Articles of the Constitution, and two Federal Rules of evidence etc. with the creation of ex post facto laws violating the First Amendment, while hoping to cap liabilities for the deprivation of rights. Sounds criminal; appears to be a cover-up; looks like a golden parachute to protect oneself from deliberate actions.

15. The Victims of Trafficking and Violence Protection Act of 2000, H.R. 3244, Pub. L. 106-386, Oct 25, 2000, approved by former President George W. Bush and the 371 members of congress voting AYE on Congressional Roll Call 548, and the 95 members of the Senate voting YEA per the U.S. Senate Roll Call votes 106th Congress 2nd Session Vote Number 269.* Pub. L. 106-386, perpetuates Pub. L. 103-322 to be ongoing, but Pub. L. 106-386, includes penalties and punishments threatening the naturalization and/or deportation of immigrant domestic violence perpetrators; and includes alternative transitional housing assistance destroying the sanctity of marriage in violations of the First and Fifth Amendments.

16. The VAWA Reauthorization Act of. 2005, H.R. 3402, Pub. L. 109-162, Jan 5, 2006, approved by former President George W. Bush and the 415 members of congress voting AYE on Congressional Roll Call 501, and the 90 members of the Senate voting YEA U.S. per the U.S. Senate Roll Call votes 103rd Congress 1st Session Vote Number 384.* Pub. L. 109-162, perpetuates Pub. L. 103-322 and Pub. L. 106-386, to be ongoing, but adds, includes and invents marital rape under the title and category of sexual assault in violation of the First Amendment as the Bible tells us there's no such thing as marital rape; I Corinthians 7:5 (KJV). * Publishes the personal information of DV offenders in national databases in violation of Privacy pursuant the Fourth Amendment.

3

p27-99

17. MCL 780.811 Sec. 61.(1)(a)(i) & 61.(1)(a)(ii) as amended by the MCL 750.81. PA 328 of 1931 as amended by PA 270 of 1999 as House Bill 4713, approved by Governor John Engler, its 6 sponsors, including the 105 state actors voting yea in the House roll call #878, and the 37 state actors voting yea in the Senate roll call # 736, creating MCL 750.81. A summary of House Bill 4713; PA 270 of 1999, distinguishes assaults where there is an element of domestic violence. The relationship is described in the law as an assault against one's spouse, former spouse, individual with child in common and/or a resident of the same household. The summary, law, description and/or definition adds and includes

religious marriage (*the religious workings of a theocratic household*) to crimes of assault under the title and category of domestic violence in violation of the First, Ninth, Tenth and Fourteenth Amendments. Adding the word 'spouse' denotes religious marriage; a First Amendment protection supported by common law. The legislation of the Defendants' prohibits the free Exercise of religious, incriminates the Exercise as a prosecutable offence contrary to Genesis 3:16, Proverbs 13:24 and Matthew 19:4-6 (*KJV*). Adding the words 'child in common' denotes family; a Ninth Amendment protection supported by common law - Adding the words 'child in common' denotes a theocratic household; a First and Tenth Amendment protection supported by common law. The legislation of the Defendants' prohibits the free Exercise of religious, incriminates the Exercise as a prosecutable offence contrary to Genesis 3:16, Proverbs 13:24 and Matthew 19:4-6 (*KJV*).

18. MCL 600.2950 amending PA 236 of 1961 as amended by House Bill 4708, approved by Governor John Engler, its 51 sponsors, including the 104 state actors voting yea in the House roll call #873, and the 35 state actors voting yea in the Senate roll call #675, creating MCL 600.2950. A summary of House Bill 4708; PA 268 of 1999, allows enforceable provisions to restrain a spouse by the petitioners of domestic violence. The summary, law, and/or definition permits personal protection orders by a spouse, former spouse, individual with child in common and/or a resident of the same household as to add and include religious marriage (*the religious workings of a theocratic household*) to crimes of assault under the title and category of domestic violence in violation of the First, Ninth, Tenth and Fourteenth Amendments. Adding the word 'spouse' denotes religious marriage; a First Amendment protection supported by common law. The legislation of the Defendants' prohibits the free Exercise of religious, incriminates the Exercise as a prosecutable offence contrary to Genesis 3:16, Proverbs 13:24 and Matthew 19:4-6 (*KJV*). Adding the words 'child in common' denotes family; a Ninth Amendment protection supported by common law - Adding the words 'child in common' denotes a theocratic household; a First and Tenth Amendment protection supported by common law. The legislation of the Defendants' prohibits the free Exercise of religious, incriminates the Exercise as a prosecutable offence contrary to Genesis 3:16, Proverbs 13:24 and Matthew 19:4-6 (*KJV*).

**3**

p27-99

a) The Federal Government provided federal grants to the State of Michigan as so noted in H.R. 335 Pub. L. 103-322, H.R. 3244 Pub. L. 106-386 (2000), H.R. 3402 Pub. L. 109-162 (2006), MCL 400.1501, MCL 400.1511, MCL 600.1060, MCL 600.1082, MCL 600.181 and etc to treat domestic violence/the Plaintiff's Exercise as a crime.  Accordingly the State of Michigan tried and prosecuted the Plaintiff in compliance of the eligibility requirements of the grants.

b) Without the enumerated powers to do so, the Defendants' built a very elaborate house of cards with one unconstitutional law atop another.  The Plaintiff only list 60 of the Defendants' laws which are all in some part in violation of and/or deprive the Plaintiff of and/or have become the attainder of the Plaintiff's constitutional rights; 1 U.S.C. § 7, 18 U.S.C. § 371, 18 U.S.C. §§ 2261, 18 U.S.C. §§ 2261A, 18 U.S.C. §§ 2262, 18 U.S.C. § 2265, 18 U.S.C. § 2266, 18 U.S.C § 922, 42 U.S.C § 13981, Pub. L. 103-322 (VAWA of 1994), Pub. L. 106-386 (Victims of Trafficking and Violence Protection Act of 2000), Pub. L. 109-162 (VAWA Reauthorization Act of 2005), MCL 28.211, MCL 28.214, MCL 28.215, MCL 28.422b, MCL 49.153, MCL 400.1501, MCL 552.505*, MCL 600.1060, MCL 600.1063, MCL 600.1064, MCL 600.1715*, MCL 600.2157a, MCL 600.2158, MCL 600.2950, MCL 600.2950a, MCL 600.2950b, MCL 600.8511e, MCL 722.22*, MCL 722.23*, MCL 722.27a*, MCL 722.31*, MCL 750.411h, MCL 750.411i, MCL 750.411s, MCL 750.81, MCL 750.81a, MCL764.15, MCL 764.15a, MCL 764.15b, MCL 764.15c, MCL 764.15e, MCL 765.6b, MCL 768.26, MCL 768.27c,MCL 769.4a, MCL 765.6b, MCL 722.1112*, MCL 722.27a, MCL 722.31, MCL 771.3, MCL 780.582a, MCL 780.811, MCL 780.702, MRE 607, MRE 803, MRE 804, the federal RFRA 42 U.S.C. § 2000bb, 42 U.S.C. § 2000bb-1 and Michigan's RFRA law defined by House Bill 5958.

**3**

p27-99

c) From hence forward the Plaintiff will define the terms to be used throughout the remainder of this complaint.  The "Supreme Law of the Land" (*U.S. Constitution*) defines those things which are "lawful"; as things conforming to, permitted by, or recognized by law. The word "legal"; defines those things relating to law, connected with law or its administration; and the legal profession.  The word "unlawful is defined as those things not conforming to, permitted by or recognized by law (*the Supreme Law*).  And the word "illegal"; is defined by those things that are contrary to and/or forbidden by law.  The illegal and unlawful actions of the Defendants' have not only deprived and violated the

Plaintiff's rights, but affirm, verify and validate that the Plaintiff's Exercises were lawful pursuant of the First Amendment and thereby constitutes Cruel and Unusual Punishment; because the Plaintiff was punished as a law abiding citizen.  In furtherance these laws destroyed the Plaintiff's home and ruined his marriage (*failing to preserve marital harmony MCL 600.1262(3)(b) was dedicated to preserve in enumeration #21*).

19. The Defendants' have committed acts forbidden by law.  Their acts are illegal and unlawful.  Their acts were/are committed openly and in plain sight.  Their acts were perpetrated against the Plaintiff's First Amendment and subsequent rights.  Their acts are documented in the form of federal and state Public Laws, Public Acts, Michigan Compiled Laws, U.S. Codes, guidelines, statutes, and other documentation such as DV Trial Manuals/Benchbooks and Crime Victims, Rights Manual (CVRM) written by such agencies like the Prosecuting Attorneys Association of Michigan as "application requirements" submitted to the U.S. Attorney General to receive federal funding and grants from the federal Defendants' per Chapter 2 of H.R. 3355 (*Pub L. 103-322*).  H.R. 3355 authorizes the U.S. Attorney General to make and/or provide state grants; regulate, disperse appropriate sums and monies, and/or to suspend funding; providing the U.S. Attorney General assurances that the state of Michigan will comply with its laws, policies and practices as a recipient of its (*congressional/federal*) grants/eligibility requirements. H.R. 3355 Stop Grants authorizes the U.S. Attorney General to implement mandatory domestic violence arrests of pro-arrest programs and policies by Michigan police departments in violation of Unlawful Seizures, Probable Cause, and Warrantless Arrest. H.R. 3355 authorizes the U.S. Attorney General to train and instruct Michigan courts and prosecutors to deny the Plaintiff Due Process and/or a Fair Trial with or without the before mentioned documentation.  According to section 2.2 of the Defendants' CVRA of 1985 the Plaintiff's constitutional rights should've taken precedence over any conflicting state constitutional and statutory provision.  H.R 3244 (*Pub L 106-386*) increases the powers of H.R. 3355 to combat crimes against women.  H.R. 3402 (*Pub L 109-162*) Title I, Subtitle J, authorizes the Director of the OVW to enable/assist the U.S. Attorney General violate, interfere with and/or deny the Plaintiff's civil rights with STOP Grant improvements and improved court responses to negate Due Process and/or a Fair Trial.  H.R. 3355, H.R. 3244, H.R. 3402 authorizes full faith and credit given to personal protection orders in

3

p27-99

violation of the Fourth Amendment.  H.R. 3355, H.R. 3244, H.R. 3402 and other Public Laws, Public Acts, Michigan Compiled Laws, U.S. Codes, guidelines, statutes, and other documentation such as DV Trial Manuals/Benchbooks and Crime Victims Rights Manuals are evidences of the Defendants' illegal and unlawful acts.  The Defendants' acts are also in the form of Case Law, Senate Committee Hearings, media, media campaigns, political platforms and propaganda, and may also be entered as evidence per this enumeration and enumeration #14, 15 & 16.

20. Per the First and Second Claim, including the Third Claim enumerations #14, 15, 16 & 19; the Defendants' failed to prove that the Plaintiff's actions were crimes motivated by gender and/or were animus based on the gender of his wife and child.  The Federal Defendants' defined domestic violence and the State Defendants' accepted, adopted and endorsed the definition in violation of the Plaintiff's Exercise.  The Federal Defendants' demanded domestic violence actions and funded domestic violence actions; and the State Defendants' enforced them in violation of the Plaintiff's Exercise.  The Federal Defendants' paid to have the Plaintiff arrested for religious Exercise with STOP Grants and the State Defendants' arrested the Plaintiff in violation of Exercise, Unlawful Seizures, Probable Cause and Warrantless Arrest.  The Federal Defendants' wanted statistical data on the Plaintiff so the State Defendants' denied Due Process, a Fair Trial, and subjugated the Plaintiff to Cruel and Unusual Punishment.  On 7/11/2005 the Defendants' found the Plaintiff guilty of domestic violence.  On 9/29/2005 and again on 2/07/2006 the Defendants' convicted the Plaintiff of acts of domestic violence.  These specific court dates show three distinct occasions whereas the Defendants' failed to prove that the Plaintiff's actions were gender motivated crimes according to the origin of domestic violence laws and definitions.  Neither did the Defendants' illegal laws didn't care to discriminate and/or differentiate the religious rights and/or Exercise of the Plaintiff from the 'legal' definitions of assault.

21. The Abdo Law Firm Criminal Lawyer Blog also defines domestic assault as any unwanted touching according to the hypersensitive description provided in enumeration #4h.  However, this definition is also in violation of the Plaintiff's Exercise as a disciplinarian.  According to the theocratic Exercises of religious households, family members are likely to experience any unwanted touching/corporal punishments that are not animus actions.  In

3
p27-99

either case the Defendants' illegal laws didn't care to discriminate and/or differentiate the religious rights and/or Exercise of the Plaintiff from the 'legal' definitions of assault. If the Defendants' definition of any unwanted touching refers to intimate marital relations then the Defendants' have authorized themselves to provide options to religious obedience by altering the meaning and/or changing what a right and/or Exercise is. The Exercise is according to I Corinthians 7:5 (*KJV*) which specifically commands the followers of God not to withhold, deny or defraud one another except for fasting and prayer; because a woman's' vow is unto her husband for as long as he lives (*Rom 7:2 and I Cor 7:39 KJV*). In the City of Boerne v. Flores Justice Kennedy Justice wrote that [*"Legislation which alters the meaning of the Free Exercise clause cannot be said to be enforcing the Clause." "Congress does not enforce a constitutional right by changing what the right is. It has been given the power to 'enforce,' not the power to determine what constitutes a constitutional violation."*] State v. Carswell 2005 (Ohio Appellate Courts) raises a relevant issue in regards to the status of married persons and/or the marital person i.e. a natural person pursuant of the Citizenship Clause and religious Exercise of the First Amendment. For if the governments could define religious marriage then it is no longer religious, and if irreligious then unprotected by the First Amendment. Yet all throughout the Old and New Testament Scriptures the Plaintiff's God commands the Plaintiff to keep the things of the world separate from the Holy things of God. To wit the Plaintiff is not authorized to change the Commandments of God and neither are the Defendants'; considering the separation of church and state. For if the Defendants' were to change what a right and/or Exercise is (and they have) then the action would incorporate a state church pursuant of Establishment. A conflict ensues because God commands the Plaintiff to be separate and not to conform to the ways of the world (*II Cor 6:17 & 11&14 KJV*), because the Jesus tells us that God will destroy any and everything that He has not made (*Mat 15:13 KJV*); such as legal marriage and/or the Defendants' state church and/or exercise.

3
p27-99

22. The Defendants' hypersensitive definition of domestic assault (*any unwanted touching*) is not supported by any written or statuary law. Hence it becomes necessary to identify the Defendants' definition of domestic violence, because the definition exceeds the RFRA with a minor burden on religion. The Defendants' definition of domestic violence is broad, ambiguous and prohibits an alarmingly large number of religious exercises.

- The VAWA defines "crimes motivated by gender" to mean: a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender
- Per the OVW; the Federal Defendants' also define domestic violence as the following; We define domestic violence as a pattern of abusive behavior in any relationship that is used by one partner to gain or maintain power and control over another intimate partner. Domestic violence can be physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone.
  *Physical Abuse*: Hitting, slapping, shoving, grabbing, pinching, biting, hair pulling, etc are types of physical abuse. This type of abuse also includes denying a partner medical care or forcing alcohol and/or drug use upon him or her.
  *Sexual Abuse*: Coercing or attempting to coerce any sexual contact or behavior without consent. Sexual abuse includes, but is certainly not limited to, marital rape, attacks on sexual parts of the body, forcing sex after physical violence has occurred, or treating one in a sexually demeaning manner.
  *Emotional Abuse*: Undermining an individual's sense of self-worth and/or self-esteem is abusive. This may include, but is not limited to constant criticism, diminishing one's abilities, name-calling, or damaging one's relationship with his or her children.
  *Economic Abuse*: Is defined as making or attempting to make an individual financially dependent by maintaining total control over financial resources, withholding one's access to money, or forbidding one's attendance at school or employment.
  *Psychological Abuse*: Elements of psychological abuse include - but are not limited to - causing fear by
  intimidation; threatening physical harm to self, partner, children, or partner's family or friends; destruction of pets and property; and forcing isolation from family, friends, or school and/or work.
- MCL 400.1501 Definitions.
  (d) "Domestic violence" means the occurrence of any of the following acts by a person that is not an act of self-defense:
  (i) Causing or attempting to cause physical or mental harm to a family or household member.
  (ii) Placing a family or household member in fear of physical or mental harm.
  (iii) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.
  (iv) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.
  (e) "Family or household member" includes any of the following:
  (i) A spouse or former spouse.
  (ii) An individual with whom the person resides or has resided.
  (iii) An individual with whom the person has or has had a dating relationship.
  (iv) An individual with whom the person is or has engaged in a sexual relationship.

3

p27-99

(v) An individual to whom the person is related or was formerly related by marriage.

(vi) An individual with whom the person has a child in common.

(vii) The minor child of an individual described in subparagraphs (i) to (vi).

The Defendants' definitions of domestic violence violate the sanctity of marriage, the marital bed and intimate marital relations, the marital function, the marital purpose and the religious Exercises of the theocratic household. The Defendants' definition of domestic violence and its laws are not only unconstitutional, but are too broad reaching; into the private marital affairs of the Plaintiff's house, destroying many aspects of the Plaintiff's theocratic Exercise, violating too many rights, defeating the legal functions of government and completely undermines the purpose of the traditional/religious wedding vow. The vow is a profession made to provide certain marital assurances identified as the obligations, duties and responsibilities the married owe to one another; and the Defendants' frees the married of the obligation with no fear of reprisal from the Plaintiff. Marriage is sacred and the bed undefiled (*Heb 13:4 KJV*) and there is no individuality in a pairing. The Defendants' illegal laws have exceeded their jurisdiction to reach into the home and/or personal life of the Plaintiff.

3

p27-99

23. All of the 60 domestic violence laws listed in enumerations #14-18b; supported by the definitions of the previous enumeration prohibit the Plaintiff's Exercise. All are ex post facto laws and Bills of Attainder; against which Article 1 § 9, ¶¶¶, and Article 1 § 10, ¶ of the U.S. Constitution promised that none would be passed. Michigan's Constitution Article 1 § 10 concurs.

24. U.S. v Morrison specifically identifies that the primary purpose of the Defendants' domestic violence laws was to turn the tables against gender based bias in the courts, by prosecuting men with a vengeance. Likewise the Defendants' private civil remedy against the Plaintiff is reminiscent of Yick Wo v. Hopkins, prejudicial applications of law. The sheer volume of constitutional violations perpetrated/discriminating against the Plaintiff is the same kind of prejudice seen in Yick Wo v. Hopkins; and is arbitrary and capricious. No less than 60 domestic violence laws were passed to prohibit the Plaintiff in any religious endeavor. For example; when Catholic Charities sent a negative progress report to the Plaintiff's probation officer Cristela Scanlon for noncompliance. Ms. Scanlon nearly asserted other prohibitions against the Plaintiff by refusing to allow him to attend

his daughter's high school graduation.  Other acts not affecting the Plaintiff include prohibitions of parenting time, child custody placement and others.

25. Without provocation the Defendants' discarded studies showing both sexes to be equal in the use of violence as stated in Dobash & Dobash's 1987 report called the 'Myths of Sexual Symmetry', which printed extracts of 'Straus and Gelles 1986 report combined with 'Straus et al' 1980 report; which reveled statistical data that 11.6% of domestic violence victims are male, while 12.1% were female for the year of 1974.  However, in 1985 the stats were reversed to show that 12.1% of the victims to be male, while 11.3% were female.  Stacy, Hazlewood & Shupe, 1994 showed that the police still tended to arrest the males even though the female was the perpetrator.  This is gender-based-discrimination and the same prejudicial application of law as Yick Wo v. Hopkins.

26. All of the 60 domestic violence laws listed in enumerations #14-18b; supported by the definitions of the previous enumeration are in violation of Michigan's Constitution, Article I § 26, ¶¶ and ¶¶¶.  Affirmative Action Program.  (2) *The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, "sex", color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.  (3) For the purposes of this section "state" includes, but is not necessarily limited to, the state itself, any city, county, any public college, university, or community college, school district, or other political subdivision or governmental instrumentality of or within the State of Michigan not included in sub-section 1.*  The Defendants' domestic violence laws enacted as a civil remedy against gender based bias in the courts and unresponsive police action.  The remedy outlined in the VAWA provides educational programs for training judges, state courts, police departments and prosecutors against the Plaintiff's Exercise.  The remedy outlined in the VAWA provides "grants" for educational programs to train judges, state courts, police departments and prosecutors against the Plaintiff's Exercise in violation of Michigan's Constitution, Article I § 26, ¶¶ and ¶¶¶.  In Michigan's Constitution, Article I § 26, ¶¶ and ¶¶¶, the word "state" is shown in quotations to denote that the State itself pledged not to discriminate against the Plaintiff by reason of his sex or gender; but it has.  The Fourteenth Amendment's Equal Protection Clause demands that all citizens pursuant of the Citizenship Clause should be treated equally as entitled to all of the same rights and privileges provided by the U.S.

3

p27-99

Constitution; its Bill of Rights and constitutionally compliant laws. 42 U.S.C. § 1981 Equal Rights Under the Law concurs; equal protection against impairment under the color of state law. To wit both the Plaintiff and his family were in exercise of religious Exercise when the Plaintiff was occulted by the Defendants'. However, the Plaintiff was discriminated against because of his sex and/or gender. Denied Equal Protection and treated illegally and made to suffer Cruel and Unusual Punishments. Both federal and state Defendants' violated Equal Protection of the Fourteenth Amendment when they created a special category of rights for women which do not currently exist under the U.S. Constitution. The federal defendants' created such laws including, but not limited to 42 U.S.C § 13981 and 42 U.S.C. 14042, while the state Defendants' created laws including, but not limited to MCL 400.1501, MCL 600.2950, MCL 750.81 and MCL 780.811; that no father should be opposed to. However, the Plaintiff is a father of three boys as well as three girls. His children are Black and subject to various forms of discrimination; his boys more so than any... and now the Defendants' have legalized discrimination in the form of domestic violence laws while engaging in [7]anti-discrimination Transgender Bathroom Laws (House Bill 2), while failing to provide Due Process, a Fair Trail and Equal Protection of the Plaintiff's right to Exercise.

**3**

p27-99

27. Neither Defendant(s) passed domestic violence legislations in compliance of, nor under the enumerated powers of the U.S. Constitution. The federal Defendants' passed their laws in compliance of Article I, Sections 7, 8 and 9 of the U.S. Constitution, but it did not meet the requirements of Article III § 2 of the Constitution; for which the Court has already ruled that the VAWA exceed their authority. By doing so lawmakers gambled procedural due process applications of law against Due Process (*substantive due process*) at the risk of redress for the sake of a private civil remedy. Likewise the Federal Defendants' Defendants' passed Pub. L. 103-322 (VAWA 1994) under the constitutional authorization of Article I, sec. 8; Commerce Clause. Pub. L. 106-386 (Victims of Trafficking and Violence Protection Act of 2000) was passed under Article I, sec. 8, clause 3; Commerce Clause/Commerce with foreign Nations and Indian Tribes. Pub. L. 109-162 (VAWA Reauthorization Act of 2005) was passed under Article I, sec 8, clause 1; the Power to Lay and Collect Taxes, to Pay Debts, Provide for the Common Defense and General Welfare.

---

[7] HB2 combated by one of the same U.S. Attorney General's name in this suit.

While the State of Michigan simply passed its DV legislations by reading the Bills aloud three times in accordance to the State's Constitution and were passed in forbiddance of apprehending, violating, depriving and/or abridging the Privileges and Immunities of the Citizens of the United States i.e. the Plaintiff. In fact Michigan's domestic violence legislation doesn't even infer or reference the U.S. Constitution in any way, nor do they claim constitutionality.

28. All Defendants' passed their laws while exceeding their prescribed limits of power in violation of Article I § 9 & 10, Article VI, the Bill of Rights and the Fourteenth Amendment.

29. All Defendants' abandoned their sworn Oaths to uphold and defend the U.S. Constitution and are guilty of perjury 18 U.S.C § 1623 False Declarations before Grand Jury or Court, 42 U.S.C § 1983 Civil Action for Deprivation of Rights, 42 U.S.C § 1985 Conspiracy to Interfere with Civil Rights, 31 U.S.C § 3729 False Claims, 42 U.S.C § 1986 Action for Neglect to Prevent. These are their oaths.

- Congress's oath of office. U.S. Constitution Article VI, clause 2; I, __, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion, and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." 5 U.S. Code § 3331 - Oath of office
- Senate's oath of office. I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter: So help me God.
- U.S. Attorney General's oath of office; I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter So help me God. 28 U.S. Code § 544 - Oath of office
- Justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, ___ ___, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as ___ under the Constitution and laws of

**3**

p27-99

the United States. So help me God."  28 U.S. Code § 453 - Oaths of justices and judges

- All officers, legislative, executive and judicial, CONSTITUTION OF MICHIGAN OF 1963   ARTICLE XI   PUBLIC OFFICERS AND EMPLOYMENT   § 1 Oath of public officers.   The official 'oath of office' is found in Section 1 of Article XI of the State Constitution of 1963. That section of the State Constitution reads: before entering upon the duties of their respective offices, shall take and subscribe the following oath or affirmation: *I do solemnly swear (or affirm) that I will support the Constitution of the United States and the constitution of this state, and that I will faithfully discharge the duties of the office of .......... according to the best of my ability*. The State Constitution also prescribes that "No other oath, affirmation,

- Michigan police officers. The State of Michigan language requiring oath of office before entering the duties as a police officer Article XI, sec 1 in the Constitution of the State of Michigan (appendix B) states "All officers, legislative, executive and judicial, before entering upon the duties of their respective officers, shall take and subscribe the following oath or affirmation: I do solemnly swear (or affirm) that I will support the Constitution of the United States and the constitution of this state, and that I will faithfully discharge the duties of the office of _____ according to the best of my ability..." (Constitution of the State of Michigan 1835).  MCL 28.1, MCL 28.2 and MCL 28.4 including the Law Enforcement Oath of Honor

- The same is true for Michigan's Attorney General MCL 15.37, MCL 168.80 and MCL 198.84

**3**

p27-99

30. The illegal and unlawful acts of the Defendants' constitute fraud.  Enumeration #18c was written to define the legal and lawful acts of government pursuant of the Supreme Law of the Land.   Claiming to be of the legal authority to do otherwise constitutes fraud. Concealing the fraud is another fraud.  Deceiving the Plaintiff of truth and facts of law is another fraud.  Using the fraud(s) to confiscate the Plaintiff's rights/property and/or to act against his best intrest is also fraud.  The Defendants' used deceit and dishonest means to trick the Plaintiff and deprive him of his property (*rights; a right implies ownership and/or possession*).  To wit the Plaintiff is also seeking punitive damages due to the malicious nature of the fraud.

31. The Defendants' committed fraud exceeding their prescribed limits of power without the enumerated powers to do so and perpetuate the fraud under the "color of law". On April 23, 2011 the FBI released a definition for the 'color of law' with no lawful jurisdiction over the Plaintiff's superior rights.  'Color of law' denotes the "mere semblance of legal right", and/or the "pretense or appearance of right".

32. The Defendants' committed fraud writing laws respecting the establishment of religion and prohibiting the exercise thereof without the enumerated powers to do so and perpetuate the

fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

33. The Defendants' committed fraud writing ex post facto laws and Bills of Attainder against the Plaintiff without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

34. The Defendants' committed fraud prohibiting the Plaintiff's First Amendment right to Exercise without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

35. The Defendants' committed fraud incorporating Establishment against the Plaintiff in violation of the First Amendment without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

36. The Defendants' committed fraud prohibiting the Plaintiff's Second Amendment right to Bear Arms without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights

**3**

p27-99

37. The Defendants' committed fraud violating the Plaintiff's Fourth Amendment right to Privacy without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

38. The Defendants' committed fraud instituting Unlawful Seizures against the Plaintiff's Fourth Amendment right without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

39. The Defendants' Unlawfully seized the Plaintiff, the Plaintiff's rights, the Plaintiff's daughters testimony and the Plaintiff's wife's' testimony in violation of the Fourth Amendment.

40. The Defendants' committed fraud denying the Plaintiff's right to Probable Cause pursuant of the Fourth Amendment without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

41. The Defendants' committed fraud instituting and enacting Warrantless Arrest against the Plaintiff's Fourth Amendment right without the enumerated powers to do so and perpetuate the fraud under the "color of law".

42. The Defendants' committed fraud negating the Plaintiff's right to Due Process (*federal*) of the Fifth Amendment without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

43. The Defendants' committed fraud using Unlawfully Seized testimony (*declarant*) to Self-Incriminate and prosecute the Plaintiff in violation of the Fifth Amendment without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

44. The Defendants' used procedures outlined in the documentation shown in enumeration #19 to testify in place of the so-called victim, not to drop the charges and prosecute the Plaintiff. According to the Plaintiff's Exercise the Plaintiff is the only person in his household to authorize said testimonies as to constitute Self-Incrimination.

45. The Defendants' committed fraud denying the Plaintiff's right to a Fail Trial without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

46. The Defendants' committed fraud subjugate the Plaintiff to Cruel and Unsual Punishment without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

3
p27-99

47. The Defendants' committed fraud, extrinsic fraud, intrinsic fraud and fraud in the inducement negating the Plaintiff's right of a Fair Trial; with no jurisdiction over the Plaintiff's superior rights. The Defendants' claimed to recognize the Plaintiff's superior rights in procedures outlined in the Michigan Judicial Institute. However, when the Plaintiff informed the Defendants' of his constitutional rights; the Defendants' should've provided Due Process of law and referred to Bradley v. State and inquired if the so-called-victim was the Plaintiff's wife and/or daughter. However, the Defendants' had already added the words "spouse" and/or "child in common" to the definitions of domestic violence and added and included it to the crimes of assault. In other words the Defendants' had already written ex post facto laws and Bills of Attainder for which the Plaintiff was being tried.

48. The Defendants' committed fraud subjugating and subjecting the Plaintiff to Cruel and Unusual Punishment in violation of the Eight Amendment without the enumerated powers

to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

49. The Defendants' committed fraud violating the un-enumerate rights of the Plaintiff pursuant the Ninth Amendment without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

50. The Defendants' committed fraud violating and trespassing the jurisdiction and powers belonging to the Plaintiff pursuant of the Tenth Amendment without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

51. The Defendants' committed fraud violating the Plaintiff's Citizenship, and Privileges and Immunities without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

52. The Defendants' committed fraud denying the Plaintiff's Due Process, Equal Protection and congressional Enforcement of his rights without the enumerated powers to do so and perpetuate the fraud under the "color of law" with no lawful jurisdiction over the Plaintiff's superior rights.

**3**
p27.99

53. The Defendants' committed intrinsic fraud with the intentional false representation of facts and law which railroaded the Plaintiff in court, denied Due Process, negated a Fair Trial, allowed inadmissible and Unlawfully Seized testimony to be used against him, negated Probable Cause, allowed for Warrantless Arrest; violating Privacy and Exercise, incorporating Establishment, enacting Cruel and Unusual Punishment; in violation of other Ninth, Tenth and Fourteenth Amendment rights; and did so under the "color of law" as if the Defendants' actually possessed the enumerated power to do so.

54. The Defendants' committed extrinsic fraud which kept the Plaintiff from obtaining vital information about his rights, destroyed critical evidences in the form of facts of law, and changed the rules of evidence per the fourth Calder category of ex post facto. Every attorney questioned by the Plaintiff claimed that the Plaintiff's rights were not being violated.

55. The Defendants' committed fraud in the inducement against the Plaintiff causing him to act to his disadvantage. The Plaintiff sent numerous papers to his attorney regarding his

constitutional rights and the charges against him. The Plaintiff's attorney advised him otherwise. The Plaintiff was forced to rely on the justice of the court, the discretion of his attorney and the prosecuting authority who in turn convicted him as a law abiding citizen. The Plaintiff was disadvantaged. According to the Michigan Judicial Institute the rights of the Plaintiff pursuant of the U.S. Constitution supersedes and takes precedence over any conflicting state constitutional and statutory provisions. This statement is recorded in Michigan's Crime Victims Rights Manual (CVRA), Domestic Violence Benchbook (DVB), and the Michigan Judicial Institute Online Resources Desk Reference. The CVRA was enacted in 1985 and clearly states in section 2.1 (CVRA), that [*It is important to note that provisions of the United States Constitution take precedence over conflicting state constitutional and statutory provisions. Therefore, when an offender's federal constitutional right conflicts with a crime victim's right contained in a state constitution or statute, the offender's federal constitutional right prevails and must be preserved at the cost of the victim's right*]. In section 2.2 of the CVRA it is also stated that [*if a criminal defendant is not asserting a federal constitutional right, a crime victim's right contained in a state's constitution prevails*]. In accordance with both declarations of the CVRA the Plaintiff repeated noted his superior rights to Courts/Defendants' operating under the authority of the Michigan Judicial Institute issuing the statement. The Defendants' did not yield to the Plaintiff's superior rights and the Supremacy of the U.S. Constitution; did not prevail. To the Plaintiff's disadvantage his constitutional rights were not argued. The Prosecutor prosecuted the Plaintiff with inferior statutory laws of MCL 49.153, MCL 768.26, MCL 768.27c, and MRE 804. When the Defendant's authorized the Domestic Violence Trial Manual (DVTM) of 2009, they also committed fraud and extrinsic fraud, because the DVTM recycles the frauds described in enumerations #4p, 5, 5d, 7k, 13 and 30-57. The DVTM claimed to prosecute the Plaintiff under MCL 768.26 Evidence, use of former testimony, MRE 803 Exceptions to Hearsay, MCL 780.702 Order Granting Immunity, and MRE 607 Impeaching the Victim; as to negate the Plaintiff's superior rights. This is also a deceit or trick used to persuade the Plaintiff into signing away a property/his rights. A deceit used as a base for the Plaintiff's decision to trust the lower courts. James Madison drafted a carefully written Due Process Clause in the protection of constitutional rights. Due Process is the superior right which should be obtained in any

**3**

p27-99

court in the nation and the Defendants' were aware of this and published these facts through the Michigan Judicial Institute. Therefore the frauds are malicious, oppressive and grossly negligent and/or reckless causing great injury to be remedied with justice, redress and punitive (*exemplary*) damages.

56. The Defendants' committed fraud, extrinsic fraud, intrinsic fraud and fraud in the inducement under the "color of law" in violation of the Plaintiff's Constitutional rights.

57. The Defendants' perpetrated a fraud under the color of law and gambled redress.

58. Per enumeration #18c; any act, action and/or law made by the Defendants' which are not U.S. Constitutionally compliant are unlawful and/or illegal. However, I may refer to the so-called *"legal status of marriage"* and/or a *"separate legal identity"* for other purposes.

59. The Defendants' wrote and enforce domestic violence legislation in violation of other standing laws without the enumerated power to do so (*enumeration #3d*). In a very confusing manner the Defendants' had to break several components of one law to enforce another. Likewise the Defendants' violated the Plaintiff's rights in a multiplicity of ways, by breaking the Supreme Law of the Land to enforce inferior laws. The Defendants' also split the provisions of some Constitutional Amendments and pit others against themselves by misappropriating their clauses. Therefore, if a person and/or the Defendants' were to abide by one law then they'd be in violation of another; can this be construed as Entrapment and/or a "get out of jail free card"? For example; how is Probable Cause established with no visible evidences; except perhaps bruised feelings and/or heightened emotional displays? Who to believe? Why give "full faith" to the female declarant and not the male? Is Justice blind or not? It is said that procedural due process rules may be applied to fix the mistakes caused by the Constitution, but this COMPLAINT will show no mistakes on behalf of the Constitution.   To wit, "reasonable suspicion" is a level of suspicion lower than Probable Cause; while "[8]suspicion" is merely speculative. The Fourth Amendment demands Probable Cause for an arrest. The Defendants' lobbied to reduce the evidentiary requirements for DV arrest. The act also employed the third Calder category for ex post facto to increase retroactive modifications to a punishment beyond limits the law annexed to the office. However, "reasonable suspicion" is not a constitutional derivation or substitute; so there is no bases for the Defendants' domestic

3
p27-99

_____

[8] Stop and frisk. New York.

violence laws as alleged in this claim. The laws are arbitrary and capricious. Per enumerations #4e, 5f & 7f, the Plaintiff and his family were in exercise of religious Exercise when the Defendant's occulted the Plaintiff; and neither did the Plaintiff or his family quit the "law of nature" or the "natures God entitled them" to be subject to the jurisdictions of the Defendants' DV legislations per enumeration #7a. Other contradictions of the Defendants' laws can even be seen in the "Michigan's Judicial Institutes Crime Victim's Right's Manual" and in the "Michigan Domestic Violence Trial Manual by the Prosecuting Attorney's Association of Michigan". Time and time again the Defendants' laws appear to be so ridiculously controverted, because their laws are in fact arbitrary and capricious. Enumerations 15-19b shows a small list of the federal laws and state actions legislated and enforced by some of the state actors listed under PARTIES on pages 7-10 of this complaint.

60. Michigan's MCL 600.2162; Husband or Wife as witness for or against other; prohibits marital persons from being examined to witness for or against one another in either a civil or criminal proceeding. The language of this statute is ambiguous, disputed and requires interpretation, therefore, it is not listed among the illegal and unlawful acts of the Defendants' shown in enumerations 15-19b  However, the stature is relevant, because in some cases the testimony of the witness-spouse could mean the difference between a conviction or an acquittal. Therefore the Defendants' needed a way to seize spousal testimonies, because sometimes, the witness-spouse may be willing to testify against his or her spouse, but the accused spouse has the ability to block that testimony. Therefore the Defendants' would also need to discard the privilege in order to prosecute and convict the Plaintiff and/or prohibit witness tampering. However, the law protecting spousal privilege as a means to preserve marital harmony which could easily be disrupted if the spouses were required to testify against each other. The privilege is a product of ancient common law rules of incompetency that were codified in Michigan in 1846. According to the Michigan Supreme Court in *People v Love*, 425 Mich 691 (1986), which quoted from *Trammel v United States*, 445 US 40 (1980); the spousal disqualification from being able to testify arose from "two canons of medieval jurisprudence: first, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one (*one flesh*), and that since the woman

had no recognized separate legal existence, the husband was that particular one. From these principles it followed that whatever was inadmissible from the lips of the defendant-husband was inadmissible from his wife." Therefore the origin of MCL 600.2162 is deduced from Biblical concepts recognizing that the Plaintiff and his wife are "one flesh" pursuant of Exercise. This means that the laws permitting spousal testimonies are also ex post facto and Bills of Attainder. This means that any authorized statement by the Plaintiff's wife was inadmissible to populate a police report; thus inadmissible to prosecute the Plaintiff under MCL 768.26 Evidence, use of former testimony, MRE 803 Exceptions to Hearsay, Mcl 780.702 Order Granting Immunity, MRE 607 Impeaching the Victim and MCL 49.153 Prosecuting attorney; duties (*testifying in place of spouse/tactics outlined in Michigan's Domestic Violence Trial Manual 2009 Edition*). This also means that the any form of witnessing against the Plaintiff by his wife also constitutes Self-Incrimination of the Fifth Amendment. Therefore we must examine the legalities. In 1922 the Defendants' had every right to grant married woman citizenship independent of that of their husbands for all other purposes to/which/that exists outside of the First Amendment (*naturalization/suffrage*). The Woman's Citizenship Act of February 10, 1855; R.S 2166, deemed that any woman marring a citizen of the United States who herself might be lawfully naturalized shall be deemed a citizen; repealed by sec. 6, of the Married Women's Independent Citizenship Act of September 22, 1922. The Woman's Citizenship Act of March 2, 1907 stated that any American woman who marries a foreigner shall take the nationality of her husband. The First Perfecting Amendment of the Married Women' Independent Citizenship Act of July 3, 1930 was proceeded by the American Citizenship Rights of Women March 2, 1933, because the resolution of the known citizenship status of married women was predicated by the decision upholding the Expatriation Act of March 2, 1907. In that decision the U.S. Supreme Court noted that "the identity of husband and wife is an ancient principle of our jurisprudence." Ergo, we see additional evidences that all of these decisions refer to Biblical concepts and religious Exercise; identifying "marital persons" as "one-flesh" and "indivisible" (*ref: Genesis 5:2 KJV*). Therefore, granting women Citizenship pursuant of the Fourteenth Amendment is both legal and lawful, but this doesn't in any way change their religious status. However, the Defendants' DV legislations attempt to provide the protections of civil liberties for women which don't

**3**

p27-99

currently exist under the U.S. Constitution as a right or a privilege.  For in fact the Women's Citizenship Acts only entitles married women to the same Privileges and Immunities, which Citizenship entitles men.  Therefore, misappropriating Enforcement and Equal Protection in favor of a woman just to prosecute the Plaintiff not only deprives the Plaintiff of his Exercise, but it also deprives the Plaintiff's wife of her First Amendment rights pursuant of the entitlements of Citizenship, i.e. Equal Protection of Exercise and Enforcement.  Therefore, if the Plaintiff's wife failed to commit an apostasy and/or she is not apostatized by a "separate legal identity" then the Defendants' violated the First Amendment rights of the Plaintiff and his wife with DV legislations.  We must note that during the Slaughter House cases of 1873 the court identified the two types of citizenship shown in the same descending order as they appear in the Fourteenth Amendment.  The Citizenship clause denotes the supremacy of rights entitled to all U.S. Citizens of the United States first; and then to the subsequent entitlements within the states and/or jurisdictions they reside (*jurisdiction is a lawful authority*).  State citizenship does not in any way negate the Bill of Rights and its entitlements cannot be deprived without Due Process of Law.  To wit the Defendants' are not granted the power to revoke grants with or without Bills of Attainder and/or ex post facto laws.  Neither should the Defendants' write Bills of Attainder and/or ex post facto laws in a procedural light causing injury to the Plaintiff.  The Michigan Judicial Institute ensures that the rights of U.S. Citizenry pursuant of the U.S. Constitution supersedes and takes precedence over any conflicting state constitutional and statutory provisions.   Therefore no conflict ensues against the Supremacy of the U.S. Constitution and the Defendants' claims of Equal Protection, against the Plaintiff's Exercise. Such a conflict is arbitrary and capricious; it would pit one Constitutional right against another and/or violate one right to enforce another indiscriminately, regardless of who they were; the Plaintiff, his spouse or his child.  We know that ["*Procedural due process rules are shaped by the risk of error inherent in the truth–finding process as applied to the generality of cases.  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property "caused by the Constitution".  The rules 'minimize substantively unfair or mistaken deprivations' by enabling persons to contest the basis upon which a State proposes to deprive them of protected interests.  Thus, after the*

3

p27-99

*determination of the existence of a protected interest at issue, it must still be determined what procedure is adequate"*]. However, the Defendants' really didn't lay a claim to the procedural due process rules in U.S. v. Morrison, which marks the beginning of DV legislation with the VAWA. The states observed procedures for their sovereign interest, as Congress observed procedures protecting the federalist values at stake. To wit the Defendants' negated Due Process and process is due. MCL 780.811 is defined as a physical or emotional inability of a victim to exercise privileges and rights. However, no contradiction ensues between the Exercise Clause of the First Amendment, and the Citizenship and Equal Protection Clause(s) of the Fourteenth Amendment. For it is known that both the Plaintiff and his wife were in Exercise of religious Exercise when the Plaintiff was arrested. Neither did the Plaintiff or his wife quit the [9]"law of nature" or the "natures God entitled them", and resigned it to the public to live under John Locke's "Second Treatise of Civil Government"; and neither was such a declaration ever made, read or signed by the Plaintiff or his family. So how was MCL 780.811 lawfully applied? By definition MCL 780.811 is illegal and unlawful as applied against the Plaintiff, because no one in the Plaintiff's theocratic household was physically and/or emotionally unable to Exercise their First Amendment rights and/or privileges requiring the Equal Protection of the Defendants' laws, as all persons within the Plaintiff's theocratic household Exercises the faith of the Plaintiff. MCL 750.81 is also is illegal and unlawful as applied against the Plaintiff, because Due Process would've determined that every person within the Plaintiff's theocratic household may at some time experience "any unwanted touching" if they disobey the rules of the house. Yet neither did the Plaintiff's family quit the "law of nature" or the "natures God entitles them" as a "cry for help". It must be noted that the Plaintiff's wife's vow is unto her husband for as long as he lives (*Rom 7:2 and I Cor 7:39 KJV*) regardless of a "separate legal identity". However, their children are destined to gain more of their freedom when they come of age. Therefore, we must distinguish a legitimate "cry for help" from an incited "cry for help", because they are entirely two different things. Under the "color of law" the Defendants' perpetrated a fraud seducing the Plaintiff's wife and child to believe; 1) that they were being abused; and; 2) that the Defendants' actually possessed the lawful authority to trespass the religious protections of the First Amendment

3
p27-99

---

[9] Declaration of Independence.

and offer them asylum under the law.  When people are seduced under such pretenses they usually demonstrate a tendency to drop the charges (*aggravating the Defendants'*).  Therefore, if the Plaintiff's wife were to ever make a legitimate "cry for help" then the Plaintiff would have to view it as a petition for divorce and release her for the cause of "marital fornication".  For there again, their "vow" is unto God (*Num 30 KJV*) and not to a piece of paper.  God grants the Plaintiff religious, spiritual and physical rule over his house and he would be amiss if any of them to were to become apostatized.   The First Amendment guarantees the Plaintiff's Exercise and the Supreme Court upholds the Parental Rights Doctrine, and the Defendants' couldn't prosecute the Plaintiff per State v. Black, Bradley v. State, and Joyner v. Joyner State.   Hence the illegal actions of the Defendants'.  In the "The State of Michigan v. Kevin Thomas Szabo" the Court of Appeals confirmed that spousal privilege does not apply where the witness-spouse is the victim of the defendant-spouse's alleged offense pursuant to MCL 600.2162(3), but in regards to the Plaintiff the ruling is unlawful, because the Plaintiff never yielded his superior rights.  Therefore to circumvent the Plaintiff's constitutional protection, the Defendants' incriminated a lawful theocratic Exercise in violation of the First Amendment.   The Defendants' specifically targeted religious Exercise through congressional acts and senate committee hearings; [*Domestic Violence Terrorism in the Home; Hearing before the Subcommittee on Children, Family, Drugs and Alcoholism of the Committee on Labor and Human Resources, United States Senate, One Hundred First Congress, Second Session. Violent Crimes Against Women: Hearing Before the Committee on the Judiciary, United Stated Senate, One Hundred Third Congress, First Session on the Problems of Violence Against Women in Utah and Current Remedies, Salt Lack City, UT, April 13,1993. Domestic Violence: [10]Not just a family matter; Hearing Before the Subcommittee on Crime and Criminal Justice of the Committee on the judiciary, House of Representatives, On hundred Third Congress, Second Session, June 30. 1994.  Implementation of the Violence Against Women Act; Hearing Before the Committee on the Judiciary, United States Senate, On Hundred Third Congress, Second Session on the Implementation of the Violence Against Women Act provisions of the Violent Crime Control and Law Enforcement Act (Public Law 103-322), September 29, 1994*]; including but not limited to all of the

3
p27-99

---

[10] The title in itself is an admission of guilt.

Defendants' laws listed in enumerations 15-19b.  Yet, in Goldman v. Weinberger (1986), Employment Div. of Oregon v. Smith (1990), Church of Lukumi Babalu Aye v. Hialeah (1993) and Locke v Davey (2004); the Supreme Court held that all laws specifically targeting religious beliefs are never permissible; the Courts also added that any governmental attempt to specifically target an unpopular religious practice is not only unconstitutional, but will be struck down.  To wit the Plaintiff is relying on said decree. Therefore it must be known that the Plaintiff's Exercise was/is a religiously motivated conduct which is also subject to the protections of the law under several other provisions of the U.S. Constitution.  However, the Defendants' incriminated the Exercise of "male rule" and violated the "sanctity of marriage" - both actions are in violation of the Plaintiff's First Amendment rights.  In simpler terms the Defendants' converted a civil liberty it into a crime without the enumerated powers to do so.   When the Defendants' incriminated Exercise (*physical and/or verbal disciplines*), they added the Exercise to the crimes of assault.   By incriminating the Exercise, the Defendants' were now able to label the Plaintiff's wife and/or family as victims.   Under the State of Michigan v. Szabo; victimization was then used to violate the protections of marital privileges under MCL 600.2162(3)(d).  Szabo was disqualified from marital privileges, because of a still disputed verbiage in MCL 600.2162(3)(d) inadequately defining "a cause of action that grows out of a personal wrong or injury done by one to another".  However, it is the Plaintiff who has "cause of action", because Congress failed to perform its legal and lawful obligations to Enforce the Equal Protections of the laws which preserves the Plaintiff's Exercise.  The verbiage in MCL 600. 2162(3)(d) does not deny spousal privileges and neither does the Plaintiff yield his superior rights (*see enumeration #19*).  Therefore the Plaintiff's spouse cannot be used to witness against the Plaintiff.  In furtherance, it's both illegal and unlawful to make laws respecting an establishment of religion, or to prohibit the free exercise thereof.  It's illegal and unlawful to violate the "sanctity" of marriage pursuant of the First Amendment.  It's illegal and unlawful to incriminate "male rule" pursuant of the First Amendment.  It's illegal and unlawful to incriminate the normal theocratic disciplines of one's family pursuant of the First Amendment.  It's illegal and unlawful to identify disciplined family members as victims pursuant of the First Amendment.  It's illegal and unlawful to identify disciplined family members as victims pursuant of Privileges and

**3**

p27-99

Immunities of the Fourteenth Amendment, and privileges and immunities of MCL 600.2162 and Federal Rules of Evidence Article V, Privileges; Rule 505 and 501.

61. The language of MCL 600.2162 Husband or wife as witness against for or against each other is ambiguous, disputed and requires interpretation.   The verbiage in MCL 600.2162(3)(d) is in question, "In a cause of action that grows out of a personal wrong or injury done by one to the other..."A cause of action as seen by an individual, -vs.- a cause of action as seen by the state, -vs.- a cause of action as viewed by the courts aren't necessarily the same thing. So how do we define "a cause of action" "which grows out of a personal wrong" if early DV propaganda statistically estimated that over 70% of all women were being abused by their husbands "whether they knew it or not" and estimated the probability of abuse by a theoretical number of women they believed were not coming forward. So how do these women know if they're being abused or not and/or is if for the courts to decide?   In MCL 600.2162(3)(d) the state of Michigan has seemed to have forgotten the purpose of the statute and cannot define the terms "grows out of" and "a personal wrong or injury".   In the People of the State of Michigan v. Ashley Marie Kujik, February 24, 2005 it was argued that [*The first step in discovering legislative intent is to look at the specific language of the statute. People v Lively, 470 Mich 248, 253; 680 NW2d 878 (2004). When the language of the statute is clear, judicial construction is not permitted. Weeder, supra at 497. People v Venticinque, 459 Mich 90, 99; 586 NW2d 732 (1998).If the statute's language is clear and unambiguous, this Court must enforce the language as written. Id. at 99-100*].   However, in People of the State of Michigan, Plaintiff-Appellee, v. Larry Alfonso Moorer, May 18, 2004; the statute was discussed along the lines of hearsay exceptions and found inadmissible.   In People of the State of Michigan, Plaintiff-Appellee, v. Brian Andre Warren, July 11, 2000, the verbiage was disputed as a cause of action as seen by the courts.   There the court tried to determine if a spouse had "cause of action" simply because the action violated a state statute as crimes against other persons and/or if the "cause of action" must've been a perpetrated as a personal wrong committed against the spouse called to witness.   With Justices disagreeing on the term "grows out of".   The wording requires a connection between the cause of action and the harm or injury committed against the spouse.   In other words, the crime charged against a defendant-spouse must have been committed against the witness-spouse

**3**
p27-99

to come within the exception. In People v. Love 425 Mich. 691 (1986), the Court initially noted that the modern justification for the spousal privilege is preservation of marital harmony. The Court noted that requiring a victim-spouse to testify concerning all offenses, rather than only those committed against her, would not significantly decrease marital harmony. In the People v. Love the prosecution initially urged the court to strike down MCL 600.2162; MSA 27 A. 2162 because it conflicts with MRE 601:

Rule 601 Witnesses; General Rule of Competency: Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.

In the People v. Love the prosecution maintains that the spousal privilege statute renders persons incompetent to testify merely because they are married. In contrast, MRE 601 states that every person is competent, except in very limited circumstances. Since a rule of evidence is at issue and the statute conflicts with a court rule, the statute must fall. MRE 101; MCR 1.104; Perin v Peuler (On Rehearing), 373 Mich 531, 540-543; 130 NW2d 4 (1964); People v Jackson, 391 Mich 323, 336; 217 NW2d 22 (1974). The court rejected the prosecutor's argument. The spousal privilege is a product of ancient common-law rules of incompetency. As explained in Trammel v United States, 445 US 40, 43-44; 100 S Ct 906; 63 L Ed 2d 186 (1980): the privilege has ancient roots. In 1628, Lord Coke observed that "it hath been resolved by the Justices that a wife cannot be produced either against or for her husband." This spousal disqualification sprang from two canons of medieval jurisprudence: first, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one. From those two now long-abandoned doctrines, it followed that what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife. Despite its medieval origins, this rule of spousal disqualification remained intact in most common-law jurisdictions well into the 19th century. By 1846, the State of Michigan had enacted laws which removed the absolute disqualification of spouses, while retaining the privilege of preventing spousal testimony. However, the Married Women's Independent Citizenship Acts of the 1900's only provide women a separate legal existence outside of their First Amendment Exercise as provided by Citizenship. However, the State of

3

p27-99

Michigan legislated that "No person shall be excluded from giving evidence on any matter, civil or criminal ... by reason of marital or other relationship to any party thereto...", MCL 600.2158. To wit the modern justification for the marital privilege is in the preservation of marital harmony which could be disrupted if spouses are required to testify for or against each other. Trammel, supra; Sykes, supra, 122. When faced with the opportunity to abrogate the spousal privilege in the federal courts, the United States Supreme Court retained it, but vested the privilege in the witness-spouse. Testimonial exclusionary rules and privileges contravene the fundamental principle that "the public... has a right to every man's evidence." But this is not true, both Thomas Jefferson and James Madison are on record to define the wall of separation between church and state pursuant of the First Amendment; therefore it must be noted that a wall of any type denotes Privacy pursuant of the Fourth Amendment. Even the Plaintiff's Exercise denotes privacy in Malachi 2:16 (*KJV*) as God Himself covers/hides violence with a marital garment. Therefore the public does not have the right to know about anything which transpires in the Plaintiff's theocratic household. Over one hundred years ago, in People v. Quanstrom, the Court rendered a narrow interpretation of the personal injury exception to the spousal privilege. It found that a wife could not testify in her husband's prosecution for bigamy as the Court read "personal [wrong or] injury" to mean "violence, either actual or constructive, to the person." Id. at 256, 53 N.W. 165. "If not a crime against her, it certainly is not a wrong which is personal to her." Id. at 260, 53 N.W. 165. A cause of action growing out of a personal wrong is one designed to protect or secure some individual right. The right, as well as the wrong, must pertain to the person. It must be one that is purely personal in its character, and in no sense can the exception here be said to embrace public wrongs, which are personal only in the sense that they wound the feelings or annoy or humiliate, but inflict no injury upon the person.* * * Therefore a cause of action cannot grow out of a personal wrong if the right to Exercise is still secured and protected by the [11]individuals right that the [12]public have declared injured.* * * In the cases excluding the testimony of the wife, it is held that the legislature had imported into the statute the common-law rule, and that, before any departure from that rule ... can be adjudged, the language declaring the

3

p27-99

---

[11]Plaintiff spouse and family.
[12]Defendants'.

legislation should be so clear as to prevent doubt as to its intent and limit. The clear weight of authority ... is against the admissibility of the testimony.  If not a crime against her, it certainly is not a wrong which is personal to her. [Id., pp 256-257, 260.] * * * However, both the Plaintiff and his family were in Exercise of their First Amendment rights.  The Supreme Law of the Land assures the Plaintiff that no crime was committed during the Exercise.   If no crime;  then no personal wrong or injury.   So why is there a misunderstanding of the law (MCL 600.2162(3)(d)?  Why did the Defendants' arrest, try and convict the Plaintiff?  In enumeration #5 of the FIRST CLAIM the Plaintiff found it odd that the Defendants' would recognize one half of his religious right, but not all of it. Likewise in the People v. Love, the Defendants' still recognizes the need for marital harmony while violating the sanctity thereof.  * * * The existence of the spousal privilege has been justified on the basis of the need to preserve marital harmony, which could be disrupted by requiring one spouse to testify for or against the other spouse when the non-testifying spouse does not consent to such testimony.  However, where the cause of action grows out of a personal injury or wrong done by one spouse to the other there is no just reason for preventing the victim-spouse from testifying.  In such a case, the need to preserve marital harmony is no longer compelling; presumably the wrong or injury has already disrupted such harmony.  It is for these reasons the statute expressly provides that the "spousal privilege" does not apply where the cause of action grows out of a personal wrong or injury done by one spouse to the other.  This exception was carved out for the benefit of the victim-spouse who wishes to testify regarding such a wrong or injury.  We hold that the statutory exception to the spousal privilege is a permissive one.  It allows the victim-spouse to testify against the defendant-spouse if the victim so desires.  We do not interpret the exception to require the victim-spouse to testify against the defendant-spouse when the cause of action grows out of a personal injury or wrong done by the defendant to the victim.  Although there is a presumption that marital harmony no longer exists when one spouse injures another, this is not conclusive.  If the victim-spouse does not want to testify, and there is no indication that such a reluctance stems from fear of the defendant, some marital harmony may still exist between the parties.  This is what the marital privilege statute aims to protect, and the statute's purpose should not be undercut by interpreting the exception as requiring the victim's testimony. [117 Mich App 122-123]. *

3
p27-99

* * The ideology supporting a voluntary spousal testimony is secular.  In the workings of a theocratic household the wife and children cannot make such a decision for themselves. The ideology supporting that the marital harmony no longer exists when the witness-spouse is wronged by the defendant-spouse remains inconclusive even until this very day, because records show the witness-spouse will still demonstrate a tendency to drop charges. So much so, that the State of Michigan had to implement a policy of "no dropped charges". * * * In People v, Love, Wigmore further posits that the privilege against adverse spousal testimony, as opposed to disqualification, has for its ancient rationale the natural and strong repugnance to "condemning a man by admitting to the witness stand against him those who lived under his roof, shared the secrets of his domestic life, depended on him for sustenance and were almost numbered among his chattels."   Wigmore, Evidence (McNaughton rev), § 2227, p 212, § 2228, p 217.  The United States Supreme Court in Trammel, supra, 52, aptly pointed out, however, that the ancient foundations for so sweeping a privilege have long since disappeared. Nowhere in the common-law world indeed in any modern society is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being. Chip by chip, over the years those archaic notions have been cast aside so that "[n]o longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas."   Given that the common-law basis for the statute is no longer viable, I would not hesitate to depart from the common-law construction of the exceptions to the statute, especially since such a construction will oftentimes result in the relevant testimony of the only witness being excluded.  Therefore, I would apply the rule of construction set forth by the Trammel Court which requires that privileges "be strictly construed and accepted `only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" Trammel, supra, 50. * * * The evolution of court opinions regarding spousal privileges express a desire to obliterate the Plaintiff's religion and not just his Exercise. In Wisconsin v Yoder, Chief Justice Burger offered the opinion that the Amish "lifestyles" have not altered in fundamentals for centuries; however, the views expressed in the evolution of the court opinion shown in this enumeration "changes what a right". The

3

p27-99

Plaintiff is not of the authority to change the commandments of his God; and neither is society and/or the Defendants'.

62. In January 2001 the Plaintiff discovered his true religious identity.   In April 2003 the Plaintiff married his wife in the right ways of God.   During this time the Plaintiff also discovered a map drawn by the renowned map maker Emanuel Bowen.   The map showed the "Tribe of Judah" in the Whydah Slave Coast during the Trans-Atlantic Slave Trade in Negroland Africa.   The Plaintiff also discovered a French publication called the "Nouvelle Geographie Universelle; La Terre Et Les Hommes; vol 12", which verified that the "Tribe of Judah" identified in the Whydah Slave Coast was in fact one of the "Twelve Tribes of Israel" brought over to the Americas during the Trans-Atlantic Slave Trade.   Through intense biblical study, the Plaintiff has come to realize that if he desires the help of his God in a world oppressed by men then he must obey "all" of the commandments of his God and not only those deemed acceptable by the Defendants'.   For it is through the Bible the Plaintiff has observed that the "Twelve Tribes of Israel" has endured a long and pitiful history of being routinely and severely punished by God for their disobedience.   This means that the Plaintiff must adhere to his Exercise and/or the "long since disappeared" ways of common law.   The Defendants' DV legislations prohibit 331 of the Plaintiff's biblical commandments given to him by his God.   This is no minor burden of religion. The Defendants' have written over 60 domestic violence laws, violating nine of the Plaintiff's constitutional rights and eighteen of their perspective clauses in 320 different ways totaling 443 alphanumeric claims in the body of this complaint.   The Defendants' have build an elaborate house of cards with one unconstitutional law atop another to violate the sanctity of marriage, the marital bed and intimate martial relations, the marital function, the marital purpose, child custody, parent-time visitation rights and many other religious rights and Exercises.   The Defendants' laws are illegal and unlawful; too broad and far reaching; promote and/or demand religious disobedience on the behalf of the Plaintiff to comply with the illegal laws in violation of both religious clauses of the First Amendment; and this is intolerable.

63. The Defendants' domestic violence legislation was also part of a conspiracy, and became the attainder of nine constitutional amendment rights.   The Defendants' DV legislation became the Attainder of Exercise and prohibited the Plaintiff's Exercise.   The Defendants'

**3**
p27-99

domestic violence laws became the attainder of "marriage" as promoted by a "separate legal identity". The Defendants' DV legislation are also ex post facto laws making non-criminal conduct criminal; as the theocratic practices of the religious home was both legal and lawful before the Defendants' incriminated it.

64. The Defendants' DV legislation became the Attainder of the Plaintiff's right against Unlawful Seizures pursuant of the Fourth Amendment. The Plaintiff was denied marital privileges as head of house, and the Defendants' seized testimonies of his wife and child. Unlawful Seizures continued to injure the Plaintiff as a different child often threatened to call the police if the Plaintiff attempted to discipline the child for their conduct. Per enumeration #4, 60 (*husband and wife witness against other*) the Plaintiff and his wife are still "one flesh" even though the governments awarded them a separate and individual citizenship status. In 1 U.S.C. § 7 and MCL 551 the Defendants' provides women a separate legal existence which complies with the Women's Citizenship Acts of enumeration #20. In the City of Boerne v Flores, Justice Kennedy wrote that legislation cannot alter the meaning of Exercise and/or change what a right is. Therefore we can denote that the new 'legal' status of marriage provided by the Defendants' cannot alter the meaning of religious marriage and/or the Exercise (*see enumeration #26*). Per enumeration #21 the Defendants' demonstrated a long history where they have ruled spousal privileges to be a common-law principle recognizing "one-marital-flesh". From the writings of Lord Coke in 1628 the Defendants were aware that MCL 600.2162(3)(d) was of biblical common-law origins and defined, and acknowledged that a husband and his wife were one (*flesh*). Ergo the Bill of Attainder against Unlawful Seizures is also ex post facto and the spousal testimony is inadmissible. From the case laws identified in enumeration #60, we also see Justices violate their oaths to specifically target religious Exercise through subsequent rulings and court opinions. In Locke v Davey the Supreme Court held that laws specifically targeting religious beliefs are not permissible.

**3**

p27-99

65. The Defendants' encouraged society to discriminate against the Plaintiff's Exercise through one of the largest media and propaganda campaigns promoted in the name of justice. The act evolved into one of the largest psychological "groupthink" experiments known to the world today. The Defendants' incriminated the Plaintiff's Exercise, encouraged society (*private actors*) to violate and condemn the Plaintiff's Exercise;

legislated social service agencies, housing industries, child care providers, health care agencies, schools, employers, child custody placement authorities, and even elicited the help of the clergy to deprive the Plaintiff of rights. [13]For in fact it was a tow truck driver/a private actor who called the police on the Plaintiff. This phenomenon took root through legislative entrenchments appearing after the Civil Rights Cases of 1883. There the courts seemed to suggest and/or encourage the deprivation of civil rights by "private actors" exempt from any constitutional statute except the Thirteenth Amendment. However, there's always a particular fiasco associated with groupthink experiments leading to the "groupthink error". In this case a collective societal opinion was generated by a [14]selective bias in process information, incomplete survey analysis, incomplete survey of causes, an incomplete survey of alternatives, an incomplete survey of objectives, failure to examine risk, failure to reappraise alternatives, a failure to establish contingencies, and poor information criteria. However, the Defendants' lead the country on an arbitrary and capricious witch-hunt, while the State of Michigan had just received a "0" on the national DV scorecard, only weeks before the Plaintiff entered the courtroom. In other words the Defendants' engaged themselves in a pattern of religious discrimination which incorporated Establishment.

3
p27-99

66. The Defendants' employed the Duluth Model of Domestic Violence Intervention Programs created by a panel of 200 battered women; who's business and therapeutic model for counseling employed a shame-based technique aimed at shaming men and discriminating against their "male chauvinistic" beliefs contrary to the APA's ethics of psychology, and in violation of Exercise and Establishment. The Defendants' believed that they needed to change the Plaintiff's behavior to stop what they called a "cycle of abuse". In short the Defendants' believed that they needed to change the Plaintiff; to psychologically reprogram and brain wash him through 52 weeks of repetitious psychological imprinting of foreign ideologies contrary to his Exercise. The Defendants' set out to changes the

---

[13] The Defendants'/PAAM also enlisted dozens of private actors to assist them in the deprivation of the Plaintiff's rights including but not limited to; Janet E Findlater Associate Professor of Law Wayne State University, Emily J Wolfe Directory of Recruiting & Training at Wayne County Prosecuting office-Frank Murphy Hall of Justice, and Mermina Kramp Deputy Executive Director f Michigan Commission on Law Enforcement Standards (MCOLES); to write Michigan's Law Enforcement Response to Domestic Violence and the Domestic Violence Trial Manual.
[14] Gender based discrimination, gender based violence, a panel of 200 battered women (Duluth); beginning with 5 women and 4 men.

Plaintiff's behavior and legislated mandatory counseling in violation of Exercise. The aim of the counseling was to prohibit Exercise - in violation of Establishment, because the aim of the counseling was to replace the Exercise with a more preferred secular/irreligious exercise. However, the Plaintiff's was commanded by His God to propagate his Exercise and the Defendants' prohibited the Exercise, as opposed to the Supreme Courts Parental Rights Doctrine. In Meyer v. State of Nebraska, 262 U.S. 390 (1923) the court held that [*It is the natural duty of the parent to give his children education suitable to their station in life*]. In Pierce v. Society of Sisters, 268 U.S. 510 (1925) the court held that [*The child is not the mere creature of the State*], * * * but I must digress to say that a child and/or people are not a creation of the state as is a corporation. The Tenth Amendment defines a "division of powers" which is not to be confused with the "separation of powers" (*triaspolitica principle*) or any federalist ideology. The Tenth Amendment reaffirms the powers and limits of powers granted to the federal and state governments as enumerated in the U.S. Constitution. The Tenth Amendment adroitly arms the Plaintiff, by detailing the powers belonging to the Plaintiff pursuant of the Bill of Rights; particularly the Fourth, Fifth and Fourteenth Amendments devised to protect the Plaintiff's rights from federal and state intrusion; and the un-enumerated rights of the Ninth Amendment regarding the "law of nature" and "the natures God entitles him"; i.e. the Tenth Amendment defines jurisdictions. * * * In 1818 the Supreme Court identified a "corporate personhood" providing corporations some but not all of the legal rights and responsibilities as natural persons. During the Slaughter House cases of 1873 the court determined that the Privileges and Immunities of the Fourteenth Amendment pertained only to the rights of United States Citizenship pursuant of the Citizenship Clause and not to state citizenship. The verbiage of "state citizenship" is used to distinguish a U.S. Citizen residing in the state from the states "own creation", because a corporation is a creation of the state whereas people/natural persons are not. As the states stipulated corporate actions through a balancing act called procedure due process and/or promoted laws in a procedural light rather than substantively. The states were able to justly and/or unjustly legislate over their creation {creatures of local law; Paul v. Virginia, 75 U.S. Wall. 168 (1869]. During the Slaughter House Cases; 83 U.S. 37, 73-74 (1873) [... *the distinction between citizenship of the United States and citizenship of a state is clearly recognized and established... It is*

3

p27-99

*clear, then, that there is a citizenship of the United States, and a citizenship of a state, which are distinct from each other, and which depend upon different characteristics or circumstances in the individual...*]. However, the mistake of the states was to employ procedural due process laws against the citizens of the United States of America, i.e. the Plaintiff; and to use jurisprudence to derive at the notion that the states could trample, if need be, the rights of U.S. Citizens simply, because they reside within their borders. This is in fact a fraudulent practice and a presumptuous statement. The word "jurisdiction" is a lawful authority, and the Defendants' do not possess a lawful authority over the Plaintiff in regards to this "COMPLAINT". Jurisdiction defines the "official power" given by law (*not legalities*) to make decisions, judgments and enforcements (*not assumed powers or abridged powers*). Therefore the second mistake of the Defendants' was to pass laws outside of their jurisdiction exceeding their limits of power. This means that no one has jurisdiction over the Plaintiff and his family and no one in the Plaintiff's family may be granted immunity from Exercise. In Wisconsin v. Yoder, 406 U.S. 205 (1972) the Court also agreed with the Plaintiff and held that [*the fundamental interest of parents, as contrasted with that of the State, to guide the religious future and education of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition*]. In Cleveland Board of Education v. LaFleur, 414 U.S. 632 (1974) it was held that [*This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment*]. In Moore v. East Cleveland, 431 U.S. 494 (1977) the Court stated that [*...our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural*]. In Smith v. Organization of Foster Families, 431 U.S. 816 (1977) [*...in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights, as they have been understood in "this Nation's history and tradition*]. Quilloin v. Walcott, 434 U.S. 246 (1978) [*We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected*]. Parham v. J. R., 442 U.S. 584 (1979) [*Simply because the decision of a parent is not*

**3**

p27-99

*agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state*].   In Washington v. Glucksburg, 521 U.S. 702 (1997) [*The Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests of all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest*]. Reno v. Flores, 507 U.S. 292 (1993) regarding the best interest of the child [*So long as certain minimum requirements of child care are met, the interests of the child may be subordinated to the interests of other children, or indeed even to the interests of the parents or guardians themselves*].   Troxel v. Granville, 530 U.S. 57 (2000) [*The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court. The Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made*].   [*A community may not suppress, or the State tax, the dissemination of views because they are unpopular, annoying or distasteful; Murdock v. Pennsylvania, 309 US 105 (1943) p319 US 16*].   [*The rights of children to exercise their religion, and of parents to give them religious training and to encourage them in the practice of religious belief, as against preponderant sentiment and assertion of state power voicing it, have had recognition here, most recently in West Virginia State Board of Education v. Barnette, 319 U.S. 624"*] 319 U.S. [p166] 624. Previously, in 319 U.S. [p166] 624. And in [*Meyer v. Nebraska, 262 U.S. 390, children's rights to receive teaching in languages other than the nation's common tongue were guarded against the state's encroachment. It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder*].   [*And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter) Pierce v. Society of Sisters, supra..*].   Previously, in Pierce v. Society of Sisters, 268 U.S. 510, [*this Court had sustained the parent's authority to provide religious with secular schooling, and the child's right to receive it, as against the state's requirement of attendance at public schools*].   [*This attempt by the state of Massachusetts to prohibit a child from exercising her constitutional right to practice her religion on the public streets*

**3**

p27-99

*cannot, in my opinion, be sustained Prince v. Massachusetts.*]. In Wisconsin v. Yoder 406 U.S. 205 (1972) it was similarly held that [*(the States interest is not totally free from a balancing act when it impinges on other fundamental rights, such as those specifically protected by the Free Exercise Clause of the First Amendment and the traditional interest of parents with respect to the religious upbringing Pp. 213-215. The court also noted that the respondents have amply supported their claim that law enforcements would gravely endanger if not destroy the free exercise of their religious beliefs. Pp. 215-215)*]. The Plaintiff contends the same; for the trust and position provided to him by his God is his and his alone; it is not for the Defendants' to interfere or prohibited the Exercise or to incorporate Establishment. For centuries parents have always raised their children within their particular faith and not by or in the faiths of others. It is unconscionable to think that the Defendants' simply aimed to destroy the Plaintiff's theocratic beliefs to break the so-called "cycle of abuse", just because the Defendants' disagreed with the Plaintiff's Exercise. In Wisconsin v. Yoder, Chief Justice Burger expressed his concern with worldly influences and the conflicts they'd produce on religious practitioners to be of similar effect brought about by the Defendants' DV legislations and the injuries wrought on the Plaintiff's and his family. In continuance the Chief Justice spoke of a great psychological harm imposed on the children, due to the conflicts legislation would ultimately cause in destroying the Amish Church (*religion/Exercise*); as they have resultantly destroyed Christ's Church (*religious marriage*). In like manner the Defendants' have cause irreparable harm to the Plaintiff; by legislating laws against the ways of God in Exercise; thereby teaching the Plaintiff's family that the ways of his God are not only wrong, but illegal. Ways representing a theocracy which has remained unaltered in its fundamentals for centuries. Ways that have convincingly demonstrated the Plaintiff's sincerity in Exercise and the interrelationship of belief embedded within his lifestyle. In like manner the Defendants' legislation has alarmed the Plaintiff's family and set them at variance with the Plaintiff's faith. The impermissible exposure to his family is in conflict with the Plaintiff's beliefs and is unwarranted and without cause. The Defendants' sent a plain unencrypted message to the Plaintiff's family persecuting religious values.

**3**

p27-99

67. The Defendants' incriminated civil liberties and transferred the jurisdictions of the new DV crime over to the drug courts who's policies, statutes and procedures mandated provisional

screening/monitoring and mental health counseling per the successful competition of a supervised treatment program (MCL 600.1060, MCL 600.1061, MCL 600.1062, MCL 600.1063, MCL 600.1070, MCL 771.2 and etc); in the Plaintiff's case treatment was provided as a cure for religion purposed to change the Plaintiff's behavior through a repetitious 52 week mandatory court ordered counseling process.   The Defendants' accredited treatment providers qualified by adhering to implemented standards for BIP (Batterers Intervention Programs) through compliance protocols which are codified and promulgated (Rules 36 & 26).   The guidelines are developed and disseminated by the domestic violence "certifying" agencies which are relatively impermeable and unresponsive in regards to program evaluation data.   The Defendants' federal and state funded DAIP (Domestic Abuse intervention Programs) promoted foreign and irreligious ideologies contrary to the Plaintiff's beliefs and penalized him for non-compliance.   Its primary goal was to deconstruct the Plaintiff's beliefs consistent with brainwashing techniques; specifically the male belief per male privilege as targeted by the Defendants'' Power and Control Wheel.   The Defendants' DAIP/BIP certified programs launched an as assault on the Plaintiff's identity to break down his identity and/or self-belief also consistent with brainwashing techniques.   The ideologies supported and passed on to the Plaintiff were irreligious, against scripture and secular.   The Defendants' Duluth model of DAIP/BIP certified programs are confrontational and shame based systems also consistent with brainwashing techniques for inserting guilt, and so is humiliating the Plaintiff with propaganda, media campaigns and religious discrimination injuring the Plaintiff within the society in which he lives.   The Defendants' even employed the groupthink method to implement behavioral changes according to Duluth's policy of "making men accountable".   The Defendants' Duluth model of DAIP/BIP certified programs used compliance statutes to mandate weekly written coerced confessions of abusive behavior (*true or false confessions stipulated with the threat of incarceration for non-compliance*) which was collected and added to statistical databases.   The threat of incarceration promoted a compulsion to confess/brought the Plaintiff to a breaking point/a stage preparing him for reeducation in violation of Establishment and "all" of these psychological stages are consistent with certified brainwashing techniques.

3

p27-99

68. The most absurd and presumptions act perpetrated by the Defendants' isn't brainwashing. However, the Defendants' did step out on a limb and attempted to [15]brainwash the Plaintiff per enumerations #67, 68, 69, 71, 72, 73, 87, 88, 178, 189, 197 & 357 according to the documented curriculum of the Defendants' accredited course material (*MCL 600.1063*); which was aimed, devoted and purposed to change the Plaintiff's beliefs and behavior through 52 weeks of repetitious, mandatory and therapeutic counseling, and penalization techniques.   Through legislation the Defendants' ordered court mandated treatment programs and employed the Duluth Model for the counseling sessions.   In 2003 (*two years before the Plaintiff appeared in court*) the U.S. National Institute of Justice of the U.S. Department of Justice accompanied by a long list of psychologist and health care criticized the ineffectiveness of the Duluth Model.   During a 10 year period it was found that the incident rate of violence against women was nearly identical regardless of the offender type; 52% by strangers, 55% by an intimate partner and 63% by a friend or acquaintance. Considering the ineffectiveness of the Duluth Model it is currently presumed that the Duluth Model is not a treatment program.   Yet the Duluth Model was employed by the Defendants' and aimed to alter the Plaintiff's beliefs, exercise and behavior as a cure for his religious Exercise.   Duluth exempted its Model from the rules and professional ethics of the experimental sciences and labeled one of God's first and most sacred Ordinance of "male rule" to be villainous.   According to Genesis 3:16 (*KJV*) "male rule" was the very first thing that God Ordained and Established after the "fall of sin" in the Garden of Eden. It refers to the mandate of Genesis 1:28 (*KJV*) whereas man is to exercise dominion over the earth.   Therefore "male rule" is the very "cornerstone" upon which all of the subsequent commandments are laid/built thereupon.   Yet Duluth villainized "male rule" and the Defendants' employed and promoted Duluth in law, concept and propaganda; while claiming that their prohibitions of Exercise was simply a minor burden on religion. According to the American Psychological Association (*APA*), the ethics of psychology has been codified against religious discrimination and villainization on any kind.   In fact the APA writes three chapters in respect of personal religions: General Principles, Principle E: Respect for People's Rights and Dignity - Standard 2: Competence, Boundaries of Competence 3.01(b) - and - Standard 3: Human Relations 3.01, Unfair Discrimination.

3
p27-99

---

[15] Brainwashing also addressed in the FOUTH CLAIM and in the RELIGIOUS CLAIM.

Yet the Defendants' ignored the religious rules and the professional ethics of the APA and specifically targeted religion with domestic violence legislation in violation of Exercise and Establishment. In other words the Defendants' response to domestic violence was completely arbitrary and capricious.

69. Since 1980, DIAP (Domestic Abuse Intervention Programs) have built an entire philosophy around what they've identified as 'the male flaw'. A trait/behavioral pattern and a belief system unique to many male regardless of the multiplicity of demographics and socioeconomic, racial, ethnic, financial and religious status. The trait originates from the Biblical Ordination of "male rule". A Coalition for Battered Women concluded that the majority of batterers are law abiding, (*therefore they couldn't be caught unless the Defendants' changed the law*) and that these men were violent and only violent with their intimate partners. In other words these men were not "private actors" and did not violate the constitutional rights of their neighbors per enumeration #126. However, these men tended to exercised religious Exercise within the boundaries of their households as permitted by the First, Ninth and Fourteenth Amendments and/or they were simply bad men. One study found that 90% of alleged abusers are devoid of criminal records with absolutely no personality profile of abusers available to the experimental sciences. Yet for thirty-one years the Defendants', DAIP and DVIC (Domestic Violence Interagency Committee) built an empire around "the male flaw". Their policies employed the psychological treatment of the religious belief system in violation of Exercise, Establishment and the APA rules of professional ethics. The entire premise of such a philosophy was, and is still focused on [16]changing "only" the male behavior in violation of Exercise, Establishment, and the APA rules of professional ethics and constitutes brainwashing. The policy discriminates against religious beliefs in violation of Article I § 2 of Michigan's Constitution and the First Amendment; by equating the beliefs and/or Exercise as a mental illness to be cured in violation of the Establishment Clause of the First Amendment.

3

p27-99

70. The premise was stereotypical of male behavior and was only supported by two philosophies shown in all eight categories of Duluth's "Power and Control Wheel". The

---

[16] The philosophy of healthy marital and/or relationship consolers is to get both parties to understand that blame is usually shared until a root may be identified.

1st) was male dominance; it included passing and minimizing blame, the male belief system, control issues, possessive tendencies and jealous behaviors; and the 2nd) was merely based on breaking the cycle of abuse by changing the behavior as well as the beliefs of the alleged perpetrator i.e. the Plaintiff. The 2nd philosophy was encouraging and it led the Defendants' to believe that there was hope at the cost of changing the identity and/or personhood of the Plaintiff. And without even hesitating, the Defendants' embarked upon the endeavor to strip the Plaintiff of his identity and of his Exercise, in violation of Exercise, Establishment, and the APA rules of professional ethics.

71. If the process of changing ones behavior and beliefs were completely voluntary like "self-help" and/or were not mandated by the courts, and/or were free of coercion and penalty for non-compliance then the act would not considered brainwashing. Religious Exercise is not the same as a drug addiction. The Defendants' ordered Court-Mandated Counseling per MCL 771.3(h)(i), ordering the Plaintiff to mental health treatments and evaluation because to his religious beliefs and Exercise. The Plaintiff was subjugated to demeaning and offensive attempts to change his religious beliefs and cure the Plaintiff of religion in violation of Exercise. The Duluth Model which was used to brainwash the Plaintiff is based on the premise that abuse is a learned behavior that could be unlearned. This of course implied; that men choose to batter, and it has been stated that men choose to batter, because the choice is there's to make with no consequence of their actions; so the Defendants' added consequences for the Exercise in violation of the First and Eighth Amendments.

**3**

p27-99

72. The Defendants' misconduct and outrageous behavior mandated 52 weeks of counseling sessions devised to reshape, alter, reform and prohibit the Plaintiffs religious beliefs; and to promoted alternative beliefs; violating Exercise and Establishment, the APA rules of professional ethics and constitutes brainwashing; by forcing the Plaintiff to worship God in a manner contrary to his conscious. Brainwashing is defined as a method of controlled systematic indoctrination, especially one based on repetition (*a mandatory 52 weeks of repetition*) and confusion (*hence the shame based counseling technique of the Duluth Model*). Thus whenever foreign ideologies are adopted or introduced to a person through repetition, process procedure and systematic course or training material it is called brainwashing. Brainwashing is considered to be one of the most evil practices on Earth,

because it is aimed at changing or altering an individual's thought patterns, belief systems or behavior per the Phase I Agreement line item 7 of the Defendants' course material. According to Shashank Nakate "the motive or purpose behind brainwashing a person is mostly evil or antisocial" and "the person who brainwashes someone generally resorts to harassing the victim, both physically (*arrest or detention*) and mentally (*media propaganda/attacks on beliefs*). Nakate also states that one of the first steps in brainwashing is breaking the self-belief and/or breaking down a person's morale and their present/current beliefs by means of physical and mental torture like conditioning the Plaintiff's return home solely upon the consent of the person of whom he has authority over, and/or disarming and dissolving the Plaintiff theocratic presence in the home (*demeaning the Plaintiff in view of subordinates*). To which, brainwashing techniques are particularly harmful to the victim. To wit, the Plaintiff is unaware of any other form of counseling that penalizes noncompliance.

73. The Defendants' accredited treatment providers qualified by adhering to implemented standards for BIP (Batterers Intervention Programs) through compliance protocols which are codified and promulgated (Rules 36 & 26). The guidelines are developed and disseminated by the domestic violence "certifying" agencies which are relatively impermeable and unresponsive regarding program evaluation data. The Defendants' federal and state funded DAIP (Domestic Abuse intervention Programs) promoted foreign and irreligious ideologies contrary to the Plaintiff's beliefs and penalized him for non-compliance. Its primary goal was to deconstruct the Plaintiff's beliefs consistent with brainwashing techniques; specifically the male belief along male privilege as targeted by the Defendants'' Power and Control Wheel. The Defendants' DAIP/BIP certified programs launched an as assault on the Plaintiff's identity to break down his identity and/or self-belief also consistent with brainwashing techniques. The ideologies supported and passed on to the Plaintiff were irreligious, against scripture and secular. The Defendants' Duluth model of DAIP/BIP certified programs are confrontational and shame based systems also consistent with brainwashing techniques for the insertion of guilt. The Plaintiff was also humiliated with propaganda, media campaigns and religious discrimination injuring the Plaintiff within the society in which he lives. Religious abasement was also taught in schools injuring the Plaintiff's children and thereby injuring

**3**

p27-99

the Plaintiff and his spouse.  The Defendants' even employed the "groupthink" method to implement behavioral changes according to Duluth's policy of "making men accountable". The Defendants' Duluth model of DAIP/BIP certified programs used compliance statutes to mandate weekly written coerced confessions of abusive behavior (*true or false confessions stipulated with the threat of incarceration for non-compliance*) that was collected and added to the statistical databases.  The threat of incarceration promoted a compulsion to confess/brought the Plaintiff to a breaking point/a stage preparing him for reeducation in violation of Establishment and "all" of these psychological stages are consistent with certified brainwashing techniques.

74. The Defendants' selection, use and promotion of specific ideologies found in the counseling training material were deemed legally approved substitutions for the Plaintiffs beliefs by the Defendants' and incorporates a state church in violation of Establishment.

75. During the counseling sessions the Defendants' tried to force substitutions, doctrines, ideology and alterations on and/or in exchange of the Plaintiffs beliefs; contrary to his Exercise incorporating Establishment.

76. During the counseling sessions, the Defendants' penalized the Plaintiff through negative progress reporting, because the Plaintiff politely refused to abandon his religious beliefs and [17]refused to regularly write, list and confess his Exercise as a crime.  In so doing the Defendants' tried to reform the Plaintiff of his religious Exercise in violation of the First Amendment.

77. When the Defendants' tried to force and reinforce alternative beliefs upon the Plaintiff and imposed penalties against the Plaintiff for noncompliance the Defendants violated the Establishment Clause of the First Amendment.  The First Amendment protects the Plaintiff from being made to serve God in a manner contrary to the will of God and/or against the dictates of the Plaintiffs conscience.  I would've assumed that the Defendants' could've never forgotten that this is one of the very reasons that the American nation gained its independence from Britain.

78. When the Defendants were unable to change the Plaintiffs' beliefs and practices, they punished the Plaintiff with negative progress reports sent to his probation officer as a

**3**

p27-99

---

[17] This data is collected and added to national domestic violence statistics.

means to reinforce their ideology and force the Plaintiff's compliance. Non-compliance meant violating the terms of probation.

79. The Defendants' mandatory counseling sessions adhered to the nonclinical and non-therapeutic material of the Duluth Model involving the experimental sciences; it did not comply with the APA's rules of professional ethics.

80. The training material mandated that the Plaintiff list and verbally confess crimes and behavior as indicated in enumerations #72 & 74. When the Plaintiff failed to produce weekly confessions the Defendants' (*Catholic Charities*) became annoyed by at Plaintiffs lack of reporting and notified the Plaintiff's probation officer that the Plaintiff was uncooperative and dropped him from the mandatory court ordered sessions which placed him in noncompliance. Even though the Defendants' claimed that the Plaintiff had the right to refuse all disclosures according to the Authorization to Disclose Protected Personal/Health Information, also noted in the Phase I Agreement line item 8, other policies still threatened the Plaintiff with incarceration for noncompliance. DVIC Catholic Charities dropped the Plaintiff from their sessions and labeled the Plaintiff as a disturbed and uncooperative trouble maker contrary to the findings of his Personality Assessment Inventory (PAI) test results, and forwarded a caution to any alternative counseling agency. DVIC also forwarded negative progress reports to the Plaintiff's probation officer as if the Plaintiff was expected to conform to their ideas. The Defendants' negative progress reporting of the Plaintiffs' nonconformance of said training materials is evidence of a Federal and State sanctioned religion per the Defendant specific guidelines. The reporting was forwarded to Plaintiffs' next counselors (*Tomahawk Counseling Center*) and the Defendants' labeled the Plaintiff as an "uncooperative trouble maker". This diagnosis is inconsistent with to the Plaintiff's Personality Assessment Inventory (PAI) test results. Nevertheless, the Defendants' rewarded compliance with a dismissal of charges and imposed sanctions for noncompliance, including, but not limited to, the possibility of incarceration or confinement. MCL 600.1072. The defendants' also violated the Plaintiff's privacy to monitor his so-called progress per MCL 600.1060, MCL 600.1076 and MCL 600.1074; to be notified if the Plaintiff is accused of a new crime, which would be in violation of his condition of release/probation MCL 769.4a, MCL 764.15e, MCL

3
p27-99

780.582a, MCL 771.3, and MCL 600.2950a per MCL 750.411h, MCL 750.411i and MCL 750.411.

81. The Plaintiff attended all sessions, because he was ordered to attend; the Plaintiff was unaware that he was expected to subscribe to the Defendants' ideology in place of his own religious beliefs and Exercises.

82. The Plaintiff didn't know that the Defendants' counseling sessions were an attempt to cure him of Christianity and/or would prescribe a diagnoses and/or misdiagnoses due to the liability of suit.  Furthermore the Plaintiff was particularly surprised when Catholic Charities of the Dioceses of Green Bay Wisconsin were opposed to the Biblical point of view.

83. The Defendants' forced the Plaintiff to sign documentation identifying that his mandatory counseling sessions were therapeutic psychological attempts to change his beliefs and behavior against his religious Exercises; and that the Plaintiff was required to produce weekly logs of abusive behavior to be shared with statically data bases or be expelled from the mandatory probationary counseling sessions and fall in violation of the terms of probation.

3
p27-99

84. The Defendants' employed the Duluth Model which required the collection of voluntary and/or coerced confessions of abuses behavior per each counseling session.  This data was collected and distributed to national databases for statistical reporting; meaning that a large unknown number of abuse statistics could be false due to the coercion.

85. By attempting to modify, change, alter and penalize the Plaintiffs' for his religious Exercise the Defendants' created strange doctrines and State sanctioned religions practices; prohibited by the Establishment Clause of the First Amendment.

86. The Defendants' selection, use and enforcement of training materials and counseling session's shows an irresponsible and blatant disregard for Constitutional law.

87. The Defendants' mandatory court ordered counseling violated free Exercise and incorporated Establishment and denotes brainwashing with repetitious and forced indoctrination of foreign ideologies foreign to the Plaintiff and his household and contrary to his beliefs.

88. The Defendants mandatory court ordered counseling violated free Exercise and incorporated Establishment and denotes brain washing in the manner of which it was

performed through repetition and forced indoctrinations of foreign ideologies contrary to the Plaintiff's Exercise.

89. Per enumeration #66, 68 & 70, the Defendants' entire [18]enterprise was unnecessary and ineffective according to the D.O.J.; U.S. National Institute of Justice and violated three APA rules of professional ethics.

90. The Defendants' stepped out on a limb and completely committed themselves to an unlawful endeavor. The sheer magnitude of offenders *(state actors)* suggest that the Defendants' might hope that the governments could not set so large a net to catch all possible offenders *(U.S. v. Harris 106 U.S. 629)*; due to such an unprecedented solidarity. Marbury v. Madison also suggests no punishable deterrents for wayward lawmakers; therefore Ex parte Young must apply to all state actors in order to restore the integrity of the offices held by such lawless lawmakers and law enforcement agencies. For a "state," like any nonhuman entity whose existence and powers are recognized by law can "act" only through its human representatives. Under Ex parte Young, the Plaintiff also seeks suit against a fair and impartial number of state actors as a reasonable effort to minimize the size of the Plaintiff's suit against DV legislations unanimously supported by nearly every lawmaker in the country for the past 21 years. Of them the Plaintiff has identified a list of state actors by their voting records and/or by other direct connections to his complaint that have injured the Plaintiff and continued to injure the Plaintiff for eleven consecutive years. And just because there are simply so many "actors" involved, the Plaintiff prays that the Court will rely on his [19]discretion to reduce the number of state actors to one of any federal DV laws decided by the 535 members of congress (House/Senate); and one of any state DV laws decided by 38 members of the Michigan Senate and its 110 Michigan legislators.

91. It must be noted that the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments, which the Defendants' have violated were so ratified between December 15, 1791 and July 7, 1868. The State of Michigan held no engagements honored by the Eleventh Amendment of the U.S. Constitution to provide any

3
p27-99

---

[18] Process of implementing the DV initiative.
[19] The Plaintiff has been deprived and injured, and is therefore entitled to remedy; if the state actors are deceased, incompetent and/or bankrupt the Plaintiff may be allowed to choose other lawmakers directly responsible for his plight in substitution for the ineligible parties named under PARTIES pg 7-10 per their voting records.

immunity from suit prior to adopting the U.S. Constitution relative to its Statehood in January 26, 1937. Therewith no particularized constitutional authorization exists which could've justified the Defendants' actions against the Plaintiff.

92. In Malachi 2:16 (*KJV*) the Lord tells us that "domestic violence" is covered by the marital covering while commanding a woman to continue within her faith (*towards her husband; I Timothy 2:16 KJV*) even as Sarah obeyed her faith and became the mother all Holy women (*I Peter 3:5-6 KJV*). However, in U.S. v Morrison's "Mountains of Data" it has been suggested and implemented that even the members of the Clergy should preach against the Word of God for the sake of the Defendants' domestic violence initiative; thereby becoming friends with the world and enemies of God (*James 4:4 KJV*). Malachi 2:16 (*KJV*) also shows makes reference to a marital covering and shows that a covering denotes privacy. The same privacy Thomas Jefferson definitively defined January 1, 1802 in a letter to the Danbury Baptist Association. It reads; *"Believing with you that religion is a matter which lies solely between Man and his God, that he owes account to none other for his faith or his worship, that the legitimate powers of government reach actions only, and not opinions, I contemplate with sovereign reverence that act of the whole American people which declared that their legislature should "make no law respecting an establishment of religion, or prohibiting the free exercise thereof," thus building a wall of separation between Church & State."* On June 8, 1789, James Madison concurs as recorded in the Annals of Congress 434, to have written a text stating that: *"The civil rights of none shall be abridged on account of religious belief or worship, nor shall any national religion be established, nor shall the full and equal rights of conscience be in any manner, or on any pretence, infringed."* In furtherance during a House debate on the subject; Madison explained that *"he apprehended the meaning of the words to be, that Congress should not establish a religion, and enforce the legal observation of it by law, nor compel men to worship God in any Manner contrary to their conscience"*; August 17, 1789, I Annals of Congress 730. In another letter James Madison wrote "To the Baptist Churches in Neal's Creek and on Black Creek, North Carolina," in Letters And Other Writings of James Madison, Fourth President Of The United States, In Four Volumes, Published By the Order Of Congress, Vol. II, J. B. Lippincott & Co., Philadelphia, (1865) pp 511-512. He said *"[I have] always regarded the practical distinction between Religion*

3

p27-99

*and Civil Government as essential to the purity of both and as guaranteed by the Constitution of the United States."* It must be noted that a wall of any type is presented by a raised structure and/or barrier. Therefore it must be noted that a wall of any type denotes Privacy pursuant the Fourth Amendment as applied to the Plaintiff's Exercise; the same privacy confirmed by Malachi 2:16 (*KJV*). Yet the Defendants' negated, denied and violated the Plaintiff's Privacy when they prohibited Exercise and incorporated Establishment. These facts show that the federal and state government(s) Domestic Violence laws are arbitrary and capricious. The Plaintiff was denied Due Process and process is due.

93. Jurisprudence in First Amendment cases often delivers the tone suggesting that Free Exercise is not limited in belief, but is limited in action in accordance to one's religious convictions that may not be totally free from legislative restrictions. Adjudications like these imply that Free Exercise can either be prohibited by law and/or that the First Amendment actually bears an 'exceptions clause'. To wit a pattern has emerged in every significant Amendment Case examined; consistently and consecutively Justices rule in favor of the U.S. Constitution, but offer opinions stipulating the practice with exceptions slanted towards the lawmakers they often need to scold, because they've misused the court's opinion in an attempted to exceed their limits of power. The message is ambiguous and seems to contribute to the Defendants' misinterpretations of jurisprudence; particularly its jurisdiction. So lets' be limpid. [20]Prior to 1791 and the ratification of the First Amendment nearly all "Religious Exercise and/or Religious Tolerance Clauses" of the original Thirteen Colonies contained Exception Clauses permitting religious freedoms for as long as it did not disturb the peace and/or a conflict with a compelling government interest of sorts. However, during the ratification of the First Amendment those "exception clauses" were removed, but are still seen in court opinions and in the Defendants' illegal domestic violence laws; and this is not to be so (*see the previous enumeration*). Religious Exercise is defined as a duty the Plaintiff owes to the Creator and not to man (*the Defendants'; Acts 5:29 & 4:19 KJV*). Therefore any and all exceptions, alterations,

3

p27-99

---

[20] The Colonies/States were newly formed, just freed from British rule and conditioned to British ideologies.

modifications and/or changes would cause the Plaintiff to be unfaithful to the Lord. Hence the language of the First Amendment is specific to prohibit any governmental trespass.

94. Exceptions to un-prohibited religious exercise existed in the Bill of Rights of the Original Thirteen Colonies prior to the ratification of the First Amendment (*enumeration #26*). By Law, the First Amendment removed those exceptions in exchange for un-prohibited Exercise. After the ratification of the First Amendment, Presidents Jefferson and Madison clearly defined the wall of separation between church and state (*enumeration #25*), making the RFRA unconstitutional, ex post facto and Bills of Attainder. Likewise, so are the Defendants' domestic violence laws including, but not limited to; 1 U.S.C. § 7, 18 U.S.C. § 371, 18 U.S.C. §§ 2261, 18 U.S.C. §§ 2261A, 18 U.S.C. §§ 2262, 18 U.S.C. § 2265, 18 U.S.C. § 2266, 18 U.S.C § 922, Pub. L. 103-322 (VAWA of 1994), Pub. L. 106-386 (Victims of Trafficking and Violence Protection Act of 2000), Pub. L. 109-162 (VAWA Reauthorization Act of 2005), MCL 600.2158, MCL 600.2950, MCL 600.2950a, MCL 750.81, MCL 750.81a, MCL 769.4a, MCL 780.811. Therefore the Defendants' actions constitute a blatant disregard for law.

95. In 1791, the new United States Government ratified the First Amendment and did institute a "Separation of Church and State" contained within the Amendment.   The phrase has become "coined" as a legal derivation of the Amendment. As a Citizen of the United States the Plaintiff relied on the securities provided by the First Amendment to raise his family in the nurture and admonition of the Lord (*Eph 6:4 KJV*). This objective requires a broad and proper balance, because its antonym could provoke a child to wrath. According to Hebrews 13:17 (*KJV*) the Plaintiff is accountable to God for the souls within his care. The Defendants' prohibited the Exercise and incorporated Establishment. The Defendants' inserted the antonym and the Plaintiff's child to wrath in violation of Exercise and Establishment.

96. In the State of Florida v. U.S. Dept of Health and Human Services the Defendants' are reminded that if powers, grants and articles (*enumerations*) are not found in the Constitution of the United States for federal authority then it is a therefore a power reserved to the states. However, the statement fails to yield to the powers reserved for the people pursuant the Ninth and Tenth Amendment inciting a perpetual procedural battle between the states and the Citizens of the United States of America i.e. the Plaintiff. In

3

p27-99

this case the burden of presenting an alternative to domestic violence solely resides upon the "wall of separation" between church and state.  The alternative must exempt the Plaintiff's Exercise from the law for which the Defendants' have no jurisdiction over.  The Exercise Clause of the First Amendment protects the Plaintiff from religious persecution and religious prosecution.  However, the Establishment Clause of the First Amendment cannot protect irreligiously married persons from federal or state jurisdictions even though the governments may honor irreligious marriage, because secular marriage is not a religious Exercise.  Viable religious beliefs and/or Exercises are defined by things that the Plaintiff's God condones and/or commands for service.  However, this doesn't mean that any and all sin and/or the things condemned by God is a crime.  However, it does imply that those things which are condemned by God are certainly not a valid religious practice. In the United States v. Lee 455 U.S. 252 (1982) the government suggested that [*((c) It would be difficult to accommodate the social security system with myriad exceptions flowing from a wide variety of religious beliefs such as the Amish)*].  Wisconsin v. Yoder, 406 U. S. 205, stated that  [*(There is no principled way, for purposes of this case, to distinguish between general taxes and those imposed under the Social Security Act.  The tax system could not function if denominations were allowed to challenge it because tax payments were spent in a manner that violates their religious belief.  Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax. Pp. 455 U. S. 259-260)*].  In both the United States v. Lee and Wisconsin v. Yoder, the governments argue a dereliction of duty.  Our country has many interests on foreign shores and yet it argues to abandon Due Process simply because of a burden emphasized on record keeping.  Can we assume that this is the reason why the Defendants' DV laws made no distinction to differentiate the married Plaintiff from other lawful forms of assault?  The Defendants' must be made to recognize the Plaintiff's rights.  The Defendants' must be made to distinguish the "marital person" and "their" rights pursuant of the First Amendment from the unmarried and/or those persons entering into some form of legal marriage and/or civil union.  This action is necessary for two reasons; 1st) to define and prescribe the limits of the Defendants' jurisdiction, because the Plaintiff will not surrender his rights; and 2nd) because the Ninth Amendment insists that the Constitution should not be construed in a

3

p27-99

manner that denies or disparages the retained rights of the people. It's clear that the First Amendment, ratified December 15, 1791, was intended to prohibit legislators from performing the acts listed in the body of this complaint. In 1802, Thomas Jefferson clearly defined 'said' wall of separation between Church and State that had already existed for ten years prior. To reiterate; James Madison vetoed two bills in 1811, that would've violated the Establishment Clause. Their actions were profound, well-founded and praiseworthy. However, every President since the signing of the VAWA of 1994 has done the opposite. It must be noted that Presidents Jefferson and Madison have long deduced that the governments cannot in any way prohibit the free Exercise Clause without incorporating Establishment, or incorporate Establishment without prohibiting free Exercise. "Hands-off religion" clearly provides Christians the same sovereignty as enjoyed by the Vatican in Rome. We can clearly see why the governments would fear such freedom (*liberty*). It is the duty of the people to align themselves according to their faiths or to separate themselves from it. It is not the duty of the Defendants' to polarize The Plaintiff's Exercise. *"The Constitution was reticent about religion for two reasons: first, many delegates were committed federalists, who believed that the power to legislate on religion, "if it existed at all", lay within the domain of the state, not the national, governments; second, the delegates believed that it would be a tactical mistake to introduce such a politically controversial issue as religion into the Constitution* (Religion and the Federal Government; Library of Congress). Resultantly the power to legislate religion was never formed in this country and neither could it be, pursuant of the First Amendment. This means that there is no power vested in any clergy, judge or magistrate by the state to pronounce or declare marriage; let alone interfere in the practices of a theocratic household to violate the sanctity and/or privacy thereof. Yet the Defendants' violated Fee Exercise, Establishment and Privacy in almost every conceivable manner. In the City of Boerne v. Flores Justice Kennedy said that [*Congress' constitutional powers cover only enforcement of laws protecting fundamental religious and other freedoms*]. The Defendant's illegal actions prosecuted the Plaintiff per the first and second Calder category of ex post facto and arrested him without Probable Cause of the Fourth Amendment. Justice Kennedy also wrote that [*"Legislation which alters the meaning of the Free Exercise clause cannot be said to be enforcing the Clause." "Congress does not enforce a constitutional right by*

**3**

p27-99

*changing what the right is. It has been given the power to 'enforce,' not the power to determine what constitutes a constitutional violation."*] The Defendants' DV legislation alters the meaning of the Exercise Clause in enumeration #20 through illegal, unlawful and procedural due process laws. The procedural due process laws were legislated and enforced in an attempt to provide Equal Protection to protect the deprivation of rights belonging to the Plaintiff's family which the Defendants' assumed were caused by the Constitution, by depriving the Plaintiff's of his rights. The legislation adds exceptions, prohibitions and stipulations. Let's be clear; the Christian God demands the use of the rod as a corrective action and any so-called expert to say otherwise is no expert. In other words we can inarguably say that the Christian God demands the use of violence which the Defendants' have incriminated. Violence is a very broad term and discretion is to be used, but yes, in some cases the Bible even goes as far as to say that practitioners are to "beat" a child if they desire to save its soul (*Prov 23:14 KJV*). This reality is very offensive to some, but indubitably it goes without saying that the Defendants' altered the meaning Exercise. The Defendants' prohibited free Exercise, replaced it with Establishment and Enforced the "state church" version of the "right" with inferior laws prevailing over the Plaintiff's superior rights. Thus demonstrating a blatant disregard for law has been the cause of much pain, suffering and injury

**3**

p27-99

97. According to three publications furnished by the Michigan Judicial Institute developed in 1977 to inform and educate Michigan's judicial branch employees of domestic violence laws; the Defendants' did willfully, and intentionally defraud the Plaintiff, and did also violate and deprive him of his rights according to the Domestic Violence Benchbook (DVB), the Michigan Crime Victims Rights Manual (CVRA) and the Michigan Judicial Institute Online Resources Desk Reference. The CVRA was enacted in 1985 and clearly states in section 2.1 (CVRA), that [*It is important to note that provisions of the United States Constitution take precedence over conflicting state constitutional and statutory provisions. Therefore, when an offender's federal constitutional right conflicts with a crime victim's right contained in a state constitution or statute, the offender's federal constitutional right prevails and must be preserved at the cost of the victim's right*]. According to this statement the Plaintiff repeated noted his superior rights to the same Courts operating under the authority of the Michigan Judicial Institute which issued the

statement. However, the Defendants' did not abide by the noble declaration to yield to the Supremacy of the U.S. Constitution; therefore the Plaintiff's superior rights did not prevail. The same can be said for Klein v Long, 275 F3d 544 (CA 6, 2001), the United States Court concerning a warrantless arrest. His story is told is also told in the Michigan Judicial Institute's Domestic Violence Benchbook;   Domestic Violence: A Guide to Civil & Criminal Proceedings – Third Edition.  In section 2.2 of the CVRA, the Defendants' state that [*if a criminal defendant is not asserting a federal constitutional right, a crime victim's right contained in a state's constitution prevails*].   So why did the Defendants' ignore the Plaintiff in the assertion of his rights?   The question regarding the constitutionally of the Defendants' domestic violence laws appears 118 times within the pages of this book, and every answer is fraudulent and misleading; causing the Plaintiff to believe that he had no legal options or alternatives.

98. The Defendants' domestic violence legislation misappropriates Equal Protection as argued in U.S. v. Morrison to assert that pervasive gender stereotypes and assumptions permeate state judicial systems. Even though the argument precludes that the constitutional rights of some are violated by the constitutional rights of others; the argument was actually construed around "gender based violence" and "gender based discrimination". As shown in enumeration #27, some women wanted to change the definition of Exercise and needed the Defendants' to change the meaning of Exercise. According to the many studies and publications presented in U.S. v. Morrison as "Mountains of Data" it is noted that the First Amendment 'must' fall victim to the whims of the Defendants' as a remedy to what the Defendants' called "gender based violence".   Four of the Defendants' publications are listed in enumeration #20.  The remedies proposed in these publications became law; and the laws prohibit the Plaintiff's First Amendment right to Exercise. The laws specifically targeted religious Exercise.  Thus constituting conspiracy; 18 U.S.C § 241 Conspiracy Against Rights, 18 U.S.C § 242 Deprivation of Rights Under Color of Law, 42 U.S.C § 1985 Conspiracy to Interfere With Civil Rights ¶¶¶, 42 U.S.C. § 1983 Civil Action for Deprivation of Rights, and 42 U.S.C § 1986 Action For Neglect to Prevent.

99. The Defendants' DV legislation became the Attainder of the Plaintiff's Right to Bear Arms pursuant of the Second Amendment.  The Plaintiff was prohibited from owning fire arms with a DV conviction.

3
p27-99

100. The Defendants' DV legislation became the Attainder of the Plaintiff's right against Unlawful Seizures pursuant of the Fourth Amendment. The Plaintiff was denied marital privileges as head of theocratic house, and the Defendants' seized testimonies of his wife and child.

101. The Defendants' DV legislation became the Attainder of the Plaintiff's right against Warrantless Arrest. The Defendants' enacted and enforced "mandatory arrest' protocols.

102. The Defendants' DV legislation became the Attainder of the Plaintiff's right of Probable Cause. The Defendants' converted a civil liberty and turned it into a crime. Consistent with the Plaintiff's civil liberty Probable Cause doesn't exist. Even if the Plaintiff and his wife were unwedded it would be his word against hers; and there again no probable cause. However, the Defendants' provided a "full faith" guarantee in support of the trustworthiness of declarants statements; negating Probable Cause.

103. The Defendants' DV legislation became the Attainder of the Plaintiff's right to Due Process pursuant of the Fifth Amendment. In this regard the federal Defendants' should've ensured that their laws were constitutionally compliant per Article III § 2, and Article VI par. ¶¶ & ¶¶¶ of the U.S. Constitution. The federal Defendants' funded the DV initiative and encouraged the Michigan Defendants' to arrest, charge, try, convict and punish the Plaintiff. The Plaintiff alleges that the Defendants' wrote and enforced laws that exceeded their prescribed limits of power and are not constitutionally compliant. The State of Florida v U.S. Dept of Health and Human Services; Order Granting Summary Judgment has held that all such laws exceeding its congressional authority are void. The Plaintiff was arrested, charged, tried, convicted and punished, because of the violation of rights, and the Attainder of rights. Due Process was denied and process is due.

3

p27-99

104. The Defendants' DV legislation became the Attainder of the Plaintiff's right to a Fair Trial pursuant of the Sixth Amendment. The Defendants' converted a civil liberty and turned it into a crime and denied Due Process to argue the Plaintiff's constitutional rights. Due process would have determined if the Plaintiff owned the right in question, before trying and/or convicting him of a crime. Instead the Defendants' processed the Plaintiff like meat in Star Chamber proceeding perpetrated in a kangaroo court. In Chicago, B. & Q. R. Co. v. Chicago 166 U.S. 226,237 (1897) Justice Harlan wrote [*Satisfying legislative procedure alone is not enough to satisfy Due Process. In determining what is Due Process*

*of law regard must be had to substance, not to form*].   The entire trial was a farce; ref enumeration #20; the Defendants' used procedures/procedural light.

105. The Defendants' DV legislation became the Attainder of the Plaintiff's right to a Fair Trial.   When the Plaintiff informed the Defendants' of his constitutional rights; the Defendants' should've provided Due Process of law and inferred to Bradley v. State and inquired if the so-called-victims were the Plaintiff's wife and/or daughter.   However, the Defendants' had already added the words "spouse" and/or "child in common" to the definitions of domestic violence and added and included it to the crimes of assault.   In other words the Defendants' had already written ex post facto laws and Bills of Attainder for which the Plaintiff was being tried.   The Defendants' converted a civil liberty into a crime and tried the Plaintiff in the wrong court.

106. The Defendants' DV legislation became the Attainder of the Plaintiff's right against Cruel and Unusual Punishment pursuant of the Eighth Amendment.   The Defendants' arrested and unlawfully detained the Plaintiff against his will in Exercise of his First Amendment rights.   In other words the Plaintiff was jailed and placed on probation, because he was law abiding.

3
p27-99

107. The Defendants' DV legislation became the Attainder of the Plaintiff's un-enumerated rights not to be denied or disparaged per the Ninth Amendment.

108. The Defendants' DV legislation became the Attainder of the powers belonging to the Plaintiff's pursuant of the Tenth Amendment.

109. The Defendants' DV legislation became the Attainder of the Plaintiff's right to Citizenship pursuant of the Fourteenth Amendment.   The Defendants' denied the "marital person" of which Citizenship permits pursuant of the First Amendment.

110. The Defendants' DV legislation became the Attainder of the Plaintiff's right to Privileges and Immunities.   The Defendants' denied the entitlements of Citizenship secured by Privileges and Immunities.

111. The Defendants' DV legislation became the Attainder of the Plaintiff's right to Due Process.  The Defendants' should've ensured that their laws were constitutionally compliant per Article III § 2, and Article VI par. ¶¶ & ¶¶¶ of the U.S. Constitution.  The Defendants' wrote and enforced laws which exceeded their prescribed limits of power and are not constitutionally compliant.  The State of Florida v U.S. Dept of Health and Human

Services; Order Granting Summary Judgment has held that all such laws exceeding its congressional authority are void. The Plaintiff was arrested, charged, tried, convicted and punished because of the violation of rights, and the Attainder of rights. Due Process was denied and process is due.

112. The Defendants' DV legislation became the Attainder of the Plaintiff's right to the Equal Protection of the laws. The Defendants' failed to protect the Plaintiff's superior religious rights in an effort to enforce their inferior rights through state police powers. The Defendants' also failed to protect the superior religious rights of the Plaintiff's family.

113. In the City of Boerne v. Flores Justice Kennedy said that [*Congress' constitutional powers cover only enforcement of laws protecting fundamental religious and other freedoms*]. However, the Defendants' used their Enforcement powers against religious Exercise allowing DV legislation to become the Attainder of the Plaintiff's right of Enforcement. Congress failed to Enforce the provisions pertaining to Citizenship, Privileges and Immunities, Due Process and Equal Protection on behalf of the Plaintiff's Exercise, right to Bear Arms, to be protected against Unlawful Seizures and Warrantless Arrest, to ensure Probable Cause, protect against Self-Incrimination, etc and so forth, ad infinitum.

3
p27-99

114. The Bills of Attainder and ex post facto laws shown in enumerations #29-46 defraud the Plaintiff of the associated rights. The fraud allowed the Defendants' to prosecute the Plaintiff protected under the provisions of the First Amendment. Other evidences suggest that the Defendants' invented the crime of Domestic Violence simply because it was a "cash cow". Religious persons deeply entrenched in their beliefs/Exercise are habitual and predictable. Habitual in the fact that the Plaintiff is likely to continue the Exercise and become a repeat offender; a trait Duluth identifies as a behavior. And passive like a patsy because religious acquiesce will usually allow the Defendants' to roll right over religious the Exercise without resistance. In U.S. v. Morrison's "Mountains of Data" good Sumerians proposed to take away the Plaintiff's First Amendment rights to provide equal protection... and they did. The Defendants' argued that gender-based bias i.e. the protections of the First Amendment [*led to the "insufficient investigation and prosecution of gender-motivated crime and violence, inappropriate focus on the behavior and credibility of the victims of crimes, and unacceptably lenient punishments for those who*

*are actually convicted of gender-motivated violence."*] Without even proving if a person's gender was in fact the motivation for marital violence; the Defendants' implemented laws accrediting the trustworthiness of a declarants' statement with full faith guarantees as a remedy (*Pub. L. 103-322 Pub.106-386, Pub. L. 109-16, 18 U.S.C. § 2265, MCL 768.27c and MRE 804*) in violation of Exercise, Privacy, Unlawful Seizure, Probable Cause, Due Process, etc, and so forth, ad infinitum. The Defendants' domestic violence laws are reminiscent of a Communist Regime and not an American Republic. A Communist state (*like the Defendants'*) requires no proof of wrong doing for detainment, confinement or punishments; even if the declarants' statements negated any and all evidence of a crime and/or contribute to a false police report, the Defendants' still mandated mandatory arrest policies in Pub. L. 103-322 VAWA 1994, Pub. L. 109-165 VAWA 2005, MCL 764.15a arrest without warrant, 769.4a mandatory counseling, and MCL 600.1072 mandatory periodic and random drug testing and etc. These acts also denote a conspiracy to defraud the United States, the republic for which it stands and the "impenetrable construction". The essence of a conspiracy is the making of the agreement itself followed by the commission of an overt act. To wit the Defendants' did this openly and in plain sight. Morrison's "Mountains of Data" details the conspiracy, while the Defendants' carried out the act through legislated and enforced law. The acts defeated the lawful function of any department of government pursuant of 18 U.S.C. § 371 - Conspiracy to Defraud the United States. The acts created an entire industry dedicated to domestic violence and the formation of councils, committees and departments within departments such as the OVW inside the DOJ. The acts spent billions in grants and funding because DV laws are illegal, arbitrary and capricious needing a special category to categorize the act and task forces to oversee them. Even Michigan's attorneys are now advertising on the www in protest of pursuing domestic violence convictions where there's overwhelming evidence of a false accusations. Therefore it is clear that a conscious still exist in law.

**3**

p27-99

115. U.S. v. Morrison made it perfectly clear that the Defendants' hoped and/or intended to abolish the protections of the First Amendment because [*gender based bias i.e. Equal Protection pursuant of Citizenship and Privileges and Immunities deprived women of the equal protection and enforcement of local laws and promoted gender-based discrimination in state courts*]. There is no assaultive behavior defined in the theocratic Exercise of First

Amendment, thus the Defendants' had to assign an assaultive behavior to the First Amendment in the same way they assigned a legal status to marriage in enumeration #31; thereby changing the Exercise of the First Amendment and changing what the right is. The language in U.S. v. Morrison pleaded the Equal Protection of the states against the superior rights of the Plaintiff. In Morrison, the Defendants' hoped to create special rights and privileges were none currently exists under the Constitution. Some proponents of Morrison's gender-based-violence and discrimination were Christian women who in turn sought legislative action to change the First Amendment Exercise and/or to change what the First Amendment right is. Equal Protection pursuant of the Fourteenth Amendments was clearly intended to "remove the last vestiges of slavery" per the Thirteenth Amendment. Equal Protections was written to secure the Plaintiff's Constitutional rights; not to take them away. Therefore Equal Protection as applied against Exercise is arbitrary and capricious. The Defendants' "private civil remedy" represents a rouge action of government under the "color of law" and/or acting "without lawful authority". The Defendants' "private civil remedy" also represents a substantively weak argument thought only to produce an attenuated effect with no reason to violate so many of the Plaintiff's rights. The genius of the "impenetrable construction" was designed to link one variable right to another. Therefore it is impossible for the Defendants' to violate only one of the Plaintiff's rights without violating others. To wit a minor burden on religion, becomes something else (*like a Bill of Attainder of other rights*).

3
p27-99

116. In the Civil Rights Cases of 1883, the government [21] adopted a-hands-off approach promoting a policy that any continuing acts of slavery were prosecutable offenses, but should be left in the hands of local authorities. The show of neglect not only enabled, but approved a de facto acceptance of white oppression from southerners who could do as they wished with Blacks. To wit the hands-off approach is not acceptable. The Plaintiff demands congress to Enforce his rights to Exercise. Without sufficient Enforcement it can be argued that the opinions offered in U.S. v. Morrison either gave wayward lawmakers the green-light for the domestic violence initiative and/or the Defendants' misinterpretation of jurisprudence fortified domestic violence legislation with adjudicative integration and

---

[21] The Plaintiff's complaint is adverse to federal and state legislations that cannot rest upon the ground of the inferior courts. The inferior courts denied the Plaintiff Due Process, a Fair Trail and admitted inadmissible evidence in Star Chamber proceedings perpetuated in a kangaroo court.

legislative entrenchments. However, the U.S. Constitution governs the governments by which it must abide. The grants guaranteed to the Plaintiff by the Constitution cannot be broken and must be Enforced pursuant of the Fourteenth Amendment. The laws broken by the Defendants' must be Enforced pursuant of the Fourteenth Amendment. For the U.S. Constitutional and its Amendments are a writ of guarantee to the Plaintiff, of the Plaintiff and for the Plaintiff; as dictated by the Laws of the Land; so therefore are we lawless?

117. The Defendants' are also guilty of 42 U.S.C. § 1983 (*Civil Action for Deprivation of Rights*) per Hafer v. Melo 502 U.S. 25, and Oklahoma City v. Tuttle 471 U.S. 808, whereas municipal policies caused the deprivation of the Plaintiff's rights amounting to the 'deliberate indifference' or 'gross negligence' on the part of officials; the same is true pertaining to the Defendants' DV conspiracy in violation of 42 U.S.C. § 1985 (*Conspiracy to Interfere with Civil Rights*).

118. In the State of Florida v. U.S. Dept of Health and Human Services case no: 3:10-cv-91-RV/EMT the Court held of course, that the U.S. Constitution defines the entire scope of Federal and State powers. Therein the U.S. Constitution enumerates all of the powers and prescribes boundaries limiting of the powers of the governments. For which we are certain that the powers excluded from the enumerations do not exist. All nine of the Plaintiff's violated rights contained a specific language prohibiting any governmental trespass. Therefore it is clearly written that no state shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States without Due Process of Law. The Defendant's illegal DV legislations did make and enforced laws abridging the privileges and immunities of the Plaintiff without Due Process of Law.

3
p27-99

119. The Plaintiff was un-prosecutable under the protections of the First Amendment per State v. Black, Bradley v. State and Joyner v. Joyner. The Plaintiff was also immune from prosecution by the protections of standing federal and state laws. The Defendants' enacted the first Calder category of ex post facto to incriminate the Plaintiff. Then the Defendants' enacted the third Calder category of ex post facto to arrest the Plaintiff.

120. To prosecute the Plaintiff the Defendants' then employed the second Calder category of ex post facto by permitting prosecutions which would've otherwise been forbidden and inflicting punishments, where the Plaintiff was not by law, liable to any punishment. Then the Defendants' enacted the fourth Calder category of ex post facto to convict the Plaintiff.

121. In U.S. v. Morrison ET AL - 529 U.S. 598, Supreme Court Justices made it perfectly clear [*that Congress (and the states) cannot simply rewrite the present law. Every law enacted by Congress and the States must be based on one or more of its powers enumerated in the Constitution*]. All laws must be Necessary and Proper; [*therefore "let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are Constitutional (McCulloch v. Maryland; Justice Marshall)"*]. Ergo [*the power of the federal government is "defined and limited" and therefore: "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution"*].

122. When the Defendants' prohibited the Plaintiff's First Amendment right to Exercise and incorporated Establishment; the Defendants' also violated the Plaintiff's Ninth and Tenth concurring Amendments rights. The Tenth Amendment delegates all of the powers reserved for the Plaintiff to the Plaintiff, because they neither belong to any other division of government. Hence defining jurisdictions. The un-enumerated powers of the Plaintiff are enumerated in the Ninth Amendment; as James Madison limited the powers of government and un-enumerated the liberties of the Plaintiff. This is again reiterated by the Citizenship Clause of the Fourteenth Amendment as Citizenship denotes the superior rights belonging to the Plaintiff as a Citizen of the United States. Thereby the Tenth Amendment defines the working jurisdictions of the governments through a "division of powers". Every Amendment within the Bill of Rights concedes to this point. Every Amendment in the Bill of Rights empowers the Plaintiff without an army to stand against tyranny; lest we forget that this country was formed to escape rule and not to create it. Therefore the Constitution was constructed to govern the governments; and the Defendants' trespassed and violated the Plaintiff's Ninth and Tenth Amendment rights when they violated his First Amendment rights.

3

p27-99

> *Ninth Amendment:* The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. The Ninth Amendment defines other un-enumerated rights as all un-enumerated rights are retained by the people. Madison argued that any attempt to enumerate fundamental liberties would be incomplete and might imperil other freedoms not listed. A "positive declaration of some essential rights could not be obtained in the requisite latitude," Madison said. "If an enumeration be made of all our rights, will it not be implied that everything omitted

is given to the general governments?"   Ergo the framers of our Constitution enumerated the powers of the general governments and gave everything else to the people.  In many cases of modern law the States lay claim to the rights retained by the people.

*Tenth Amendment:* The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

According to Sir William Blackstone the uniformity between the Declaration of Independence and the U.S. Constitution stems from common ancestries recognizing the unalienable rights entitled to all of God's creation, i.e. the Night Amendment.  The U.S. Constitution is preceded by the Declaration of Independence which fought for the Plaintiff's rights and/or declarations pertaining to "law of nature "and the "natures God entitles them" - Exercise.

123. Therefore, when the Defendants' violated the Plaintiff's First Amendment rights they also violated the Plaintiff's Ninth and Tenth Amendment rights.  When the Defendants' violated the "sanctity of marriage" they also violated Citizenship, and Privileges and Immunities.  As it pertains to domestic violence, the Tenth Amendment represents the Plaintiff's jurisdiction pursuant of Exercise, Citizenship, and Privileges and Immunities; and thereby supersedes the Defendants' illegal DV laws, which used Equal Protection "not" to protect the Plaintiff's rights, but to deny them (*ref enumeration #50*).

124. When the Defendants' incorporated Establishment they violated the Plaintiff's First, Ninth, Tenth and Fourteenth Amendment rights.

125. When the Defendants' arrested, charged, tried, convicted and punished the Plaintiff they violated the Plaintiff's First, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth and Fourteenth Amendment rights.

126. To simplify the Plaintiff's CLAIMS, we already know that the VAWA exceeded the Defendants' power.  We also know that the Defendants' have no jurisdiction and no legal precedent over the Plaintiff pursuant of the First Amendment.  The Tenth Amendment specifically recognizes, delegates and distributes 'three distinct powers to three separate entities.  Two of the recipients of those grants are legally bound to abide by the U.S. Constitution, while the Plaintiff remains free; and is only confined by those rights belonging to his neighbors, apart from the powers of government; and not necessarily to

3
p27-99

[22]all others.  This means that the Defendants' lied when they promoted DV legislations under the guise of Equal Protection and claimed that they had a right to do so at the expense of the Plaintiff.   This also means that the Defendants' acted under the "color of law" and without lawful authority.   This is a fraud that the Plaintiff and his family believed.  Therefore it also constitutes a "breach of trust".

127. To wit the Defendants' continue to defraud the Plaintiff with an unprecedented solidarity 1) prohibiting Free Exercise, and 2) incorporating Establishment to prohibit Free Exercise. By incorporating Establishment the Defendants' altered, modified and changed the Exercise thereby creating a "state church" and a state sanctioned religious practice. Establishment may be defined as indiscriminative non-preferential tolerance and/or intolerance of an Exercise.  DV legislation, DV counseling and DV campaigning has made it abundantly clear that the Defendants' are intolerant of the Plaintiff's Exercise.

128. The Defendants' violated, negated, denied, deprived and prohibited the Plaintiff's Exercise and incorporated Establishment as previously mentioned.   The Defendants' incriminated the Plaintiff's Exercise with laws including but not limited to the following; MCL 780.811, MCL 750.81 and MCL 600.2950, VAWA of 1994, H.R. 3355, Pub. L. 103-322., Sep 13, 1994, The Victims of Trafficking and Violence Protection Act of 2000, H.R. 3244, Pub. L. 106-386, Oct 25, 2000, VAWA Reauthorization Act of. 2005, H.R. 3402, Pub. L. 109-162, Jan 5, 2006.

**3**
p27-99

129. The Defendants' prohibited the Plaintiff's right to Exercise by violating the theocratic household in violation of Privacy pursuant of the Fourth Amendment.   The trespass usurped the Plaintiff's authority pursuant of the First, Ninth and Tenth Amendments, and the Defendants' seized inadmissible statements from his child in violation of the Plaintiff's Exercise. (child)

130. The Defendants' prohibited the Plaintiff's right to Exercise of the First Amendment, by entering in the theocratic home violating Privacy of the Fourth Amendment; and trespassing the jurisdictional boundaries of the Tenth Amendment, and made the Plaintiff spare the rod against his child in violation of Exercise. (child)

---

[22] "All others" would include the persons within the Plaintiff's household that the Ninth Amendment would still relatively protect if the family was irreligious; as the First Amendment provides for the protection of the theocratic household.

131. The Defendants' prohibited the Plaintiff's Exercise of the First Amendment, by entering in the theocratic home violating Privacy of the Fourth Amendment; and trespassing the jurisdictional boundaries of the Tenth Amendment, and arrested the Plaintiff because of his lawful Exercise where probable cause does not exist in violation of Probable Cause of the Fourth Amendment (child).

132. The Defendants' prohibited the Plaintiff's right to Exercise of the First Amendment, by entering in the theocratic home violating Privacy of the Fourth Amendment; and trespassing the jurisdictional boundaries of the Tenth Amendment, and arrested the Plaintiff for the lawful exercise of Exercise, with a Warrantless Arrest in violation of the Fourth Amendment (child).

133. The Defendants' prohibited the Plaintiff's right to Exercise of the First Amendment, by entering in the theocratic home violating Privacy of the Fourth Amendment; and trespassing the jurisdictional boundaries of the Tenth Amendment, and made the Plaintiff cease theocratic actions with his wife in violation of Exercise and the Defendants' seized inadmissible statements from his spouse in violation of the Plaintiff's Exercise; including, but not limited to the following; to testify in place of spouse or on behalf or state; MCL 49.153, MCL 768.26 Evidence, use of former testimony, MRE 803 Exceptions to Hearsay, MCL 780.702 Order Granting Immunity, MRE 607 Impeaching the Victim and MCL 49.153 Prosecuting attorney; duties. .

**3**
p27-99

134. The Defendants' prohibited the Plaintiff's Exercise of the First Amendment, by entering in the theocratic home violating Privacy of the Fourth Amendment; and trespassed the jurisdictional boundaries of the Tenth Amendment, and arrested the Plaintiff because of his lawful Exercise where probable cause does not exist in violation of Probable Cause of the Fourth Amendment (spouse).

135. The Defendants' prohibited the Plaintiff's right to Exercise of the First Amendment, by entering in the theocratic home violating Privacy of the Fourth Amendment; and trespassed the jurisdictional boundaries of the Tenth Amendment, and arrested the Plaintiff for the lawful exercise of Exercise, with a Warrantless Arrest in violation of the Fourth Amendment (spouse).

136. The Defendants' violation of Exercise prohibits the Plaintiff's right to Bear Arms in violation of Exercise, with laws including but not limited to the following; Pub. L. 103-322

VAWA 1994, 18 U.S.C. § 922. MCL 28.422b, MCL 600.1060, MCL 600.2590, MCL 600.2950a, MCL 764.15b, MCL 764.15c, MCL 765.6b.

137. On 02/07/2006 the Plaintiff was told some very disheartening news at the beginning of his tribunal by the [23]Judge who seemed irritated with the Plaintiff stance on domestic violence in lieu of his rights. The Judge told the Plaintiff that if he were to take the time to hear the Plaintiff's case then the Plaintiff would be jailed immediately following the proceeding regardless of the outcome. Per enumeration #7k; this is a choice that the Plaintiff should have never been forced to make [*Thomas v. Review board 450 U.S. 707; a person may not be compelled to choose between the exercise of a First Amendment right and any other programs or consequence*]. When the Plaintiff complies with the Defendants' illegal laws he alienates himself from the Lord that he so desperately needs in a world oppressed by men (*enumeration #21*). Disobedience and irreverence towards his God for the sake of worldly influences makes the Plaintiff an enemy of the Lord (*James 4:4 KJV*). Faced with incarceration and the loss of income the Plaintiff pleaded no contest. Placing the Plaintiff within a predicament to contest his Exercise, because the Defendants' laws prohibited his Exercise in violation of the First Amendment.

**3**

p27-99

138. Religious acquiesce and sufferance of governmental interferences can no longer be taken carte blanche, for as much as such interferences can be construed as a war against the theocracy of the Church and the Sovereignty provided by the Bill of Rights (*see RELIGIOUS CLAIM*). Modifying, altering and/or changing what "doth saith the Lord" while demanding legal compliance to worldly establishments is treasonous against God (*James 4:4, II Corinthians 6:17 KJV*). The fact that millions of Christians don't understand religious marriage and/or have seemed to have accepted the Defendants' DV legislations is irrelevant and inconsequential per *[(450 U.S. 707 Thomas v Review Board of the Indiana Employment Security Division; the court also erred in apparently giving significant weight to the fact that another religious practitioner might yield their faith. The courts should not undertake or dissect religious beliefs on the surrendered grounds of others. The free exercise of religion is not limited to beliefs which are shared by all members of a religious sect;)*]. Thus by passing DV laws to include religious marriage the Defendants'- like - the Indiana Supreme Court (may have) improperly relied on the facts

---

[23] Defendant.

that (other religious practitioners were) "struggling" with (their) beliefs and that (they were) not able to "articulate" (their) beliefs precisely (450 U.S. 707 Thomas v Review Board of the Indiana Employment Security Division).   The Plaintiff understands his Exercise.   Perhaps legalized marriage beginning in 1923 made Christians less aware of their religious obligations.   For in Ephesians 5:21 (*KJV*) the Lord commands the Plaintiff and his wife to submit to one another, but this verse is frequently misunderstood.   Some believe that Ephesians 5:21 (*KJV*) refers to a 50/50 marriage contrary to all of the other scriptures in the Bible and thereby suggests a contradiction in the scriptures.   However, the verse actually commands husbands and wives to submit to their marriages when it says to submit to one another.   Submitting to marriage defines the marital roles each are required to play per the commandments that God has given them through other scriptures.   The Defendants' violated this Exercise by offering the Plaintiff's family an alternative to religious obedience contrary to the scriptures.   In violation of the First Amendment the Defendants' also provided "full faith" guarantees that if the Plaintiff's wife should ever fail to submit to religious marriage as commanded by God, then the Defendants' would stand to protect her from the corrective actions of the Plaintiff.   In so doing, the governments altered, modified and changed the Exercise and/or change what the religious right was; they also changed the definition and meaning of marriage for some Americans by pinning a legally married button on the chest of religiously married persons.

**3**
p27-99

139. The domestic violence timeline shows that the Defendants' mandated presumptive arrest policies to ensure Equal Protection under the law (Belknap, 1995; Stark, 1996).   At the same time the police faced lawsuits which held no legal precedent if the couple was married.   The Defendants' acted in a reactionary manner due to widely published lawsuits in New York and Oakland which compelled the Defendants' to make arrest "in every case of domestic violence".   Therefore must be noted that mandatory arrests policies negates Probable Cause of the Fourth Amendment.   Mandatory arrest also violates Privacy, Warrantless Arrest and Due Process of the Fourth, Fifth and Fourteenth Amendments.

140. Meanwhile, state legislatures lobbied successfully to reduce the "evidentiary requirements" needed in order to make an arrest in violation of Probable Cause pursuant of the Fourth Amendment.

141. The "new evidentiary requirements" negated Due Process pursuant of the Fifth and Fourteenth Amendments and incorporated the Third Calder category of ex post facto by increasing retroactive modifications to a punishment beyond limits the law annexed to the office. Therefore the Defendants' detaining the Plaintiff against his will for a non-criminal offense under the Currie Category of ex post facto (*converting a constitutional right into a crime*), and/or without Probable Cause.

142. Thurman v. City of Torrington 595 F. Supp. 1521 Dist of Conn (1984) involved a $2.3 million settlement that law enforcement took notice of (*Law Enforcement Response to Domestic Violence Calls for Service; Meg Townsend, Dana Hunt, Sara Kuck and Caity Baxter; ref Zorza 1992*). The cases cited in this CLAIM put the police departments and their officers on notice that they would be liable if they failed to adequately protect victims from harm (Buzawa & Buzawa, 1996a). However, this belief was false on two accounts. In the City of Castle Rock v. Jessica Gonzales (2005) the Supreme Court held that the police do not have a constitutional right to protect persons from harm with a PPO (*personal protection order; stay away restraining order*), because all such orders are unconstitutional pursuant of the Fourth Amendment. To which a writ of restraint, protection and/or stay away proximity isn't one of the government(s) enumerated powers per the Fourth Amendment and is thereby unenforceable. It has been found that all legal writs and warrants per the Fourth Amendment only applies to Due Process against warrantless arrests, seizures of property and/or blurted out statements and testimonies and not personal protection. Personal protection is not listed as one of the enumerated powers of the government(s). Therefore all such writs are unconstitutional and cannot be supported or enforced by law. In addition to the City of Castle Rock v. Gonzales the Defendants' responses to domestic violence was completely reactionary like an involuntary impulse. Therefore the Defendants' responses were arbitrary and capricious. Yet with much suffering the Defendants' separated the Plaintiff from his wife and family with a PPO stay away no contact restraining order and threatened to enforce the order with an arrest on March 31, 2012. The PPO restraining order is a violation of Exercise (*ref Matthew 19:6 & Mark 10:8; what God has joined together, let no man put asunder KJV*).

**3**

p27-99

143. According to the facts indicated in the domestic violence timeline at some point the Defendants' became party to a conspiracy to deprive the Plaintiff of his civil rights. To

such, we can clearly see that the Defendants' impeded or interfered with legitimate governmental functions intended to protect the integrity of the United States and its agencies, programs and policies.  It is clear that some of the Defendants' passed domestic violence legislations to get elected, re-elected and/or to show a local and national response to the domestic violence issue.  For over twenty-seven years and by their own admission battered women's movements have challenged societal, cultural and religious norms.  It's not illegal to challenge religious norms, but it is illegal to join in and legislate against them and/or to prohibit the Exercise.  18 U.S.C § 241 Conspiracy Against Rights, 18 U.S.C § 242 Deprivation of Rights Under Color of Law, 42 U.S.C § 1983 Civil Action For Deprivation of Rights and etc.

144. The Defendants' held the Plaintiff to a writ of a PPO stay away restraining order in violation of the Fourth Amendment.  Roe vs. Wade signifies the Supremacy of the U.S. Constitution's Bill of Rights over any procedural applications of law.  Roe vs. Wade denotes Privacy pursuant the Fourth Amendment.  The Defendants' violated Privacy when they violated Exercise, and they did both when they violated the "sanctity of marriage".  The Defendants' PPO separated the Plaintiff from his God given wife violating Exercise and incorporated Establishment.  The PPO was unconstitutional per City of Castle Rock v. Jessica Gonzales since 2005 thus the Defendants' demonstrated a blatant disregard for law.

**3**

p27-99

145. The Defendants' violated the Plaintiff's Exercise when the separated him from his spouse with a PPO stay away restraining order in violation of Matthew 19:6 and Mark 10:9 (*KJV*)

146. The Defendants' acted "parens patriae" over the Plaintiff and as a surrogate husband to his wife in violation of both religious clauses of the First Amendment.   And the Defendants' did this without any jurisdiction to regulate religion due to the wall of separation between church and state.   Therefore the federal and state government(s) Domestic Violence laws are arbitrary and capricious.  The Plaintiff was denied due process and process is due.

147. In spite of the Defendants' obligation(s) to uphold the laws according to their oaths they choose to do otherwise.  According to section 4.1 of the CVRA & section 8.5 of the DVB the Defendants' knew that they could not legally enforce a no contact stay away PPO and/or make lawful arrests and/or codify jurisdictions over the Fourth Amendment due to Castle Rock v Gonzales; yet they did it anyway, and they did it openly and in plain sight.

148. According to Article III § 2, of the U.S. Constitution, the Plaintiff believed that that the Defendants' illegal laws passed in a procedural due process manner were abrogated after substantive due process availed. If unconstitutional procedural due process laws can be passed independently and in violation of the Plaintiff's rights and against the rulings of the Superior Courts then irreparable harm or injury may occur before the laws are abrogated. [*"Since judges cannot change the world, the "defect" means that, within the bounds of the rational, Congress, not the courts, must remain primarily responsible for striking the appropriate state/federal balance", U.S. v. Morrison*] The Plaintiff was injured, because the Defendants' failed to strike a balance. The Defendants' went on a witch hunt and the Plaintiff was the witch per Yick Wo v. Hopkins. The Defendants' sounded a call to arms and labeled domestic violence as an "epidemic", political agenda and campaign platform despite all evidences to the contrary. The country responded in kind while special interest groups lobbied to make domestic violence the number one issue in America i.e. the NCADV (National Coalition Against Domestic Violence); Vision Statement reads as follows [*NCADV strives to make issues relating to battered women and children one of the top ten political and legislative issues in the U.S. We envision a time in the near future when political parties will include progressive domestic violence legislation as a major platform in their local, state, and national elections and use NCADV research and public policy expertise to inform them. We envision a time in the near future when domestic violence issues are aired on television, radio, in the press and in magazines with the same level of attention as the national struggles against Cancer and HIV/AIDS*].

**3**

p27-99

149. The Defendants' responded to the domestic violence issue in the exact manner described by the NCADV vision statement. Yet during the time frame of 1994 - 1995 when Congress passed the VAWA, Aardvark (An Abuse, Rape and Domestic Violence Aid and Resource Collection) reported from the U.S. Dept. of Justice Bureau of Justice Statistics that 572,032 women experienced violent victimizations at the hands of intimates annually, as compared to 48,983 incidents committed against men. Aardvark continued to state that women experience over 10 times as many incidents of violence by an intimate than men. However, we must note that the word "intimate" is relatively vague and doubtful as most men fail to report similar conflicts according to other statistics. We also have to remember that 'Aardvark' is also an acronym for rape, and rape is an act of violence, so

the statistic is slanted, because men are seldom raped. Resultantly we see a long history of national responses and political platforms on which the Defendants' campaigned and passed domestic violence legislation in accordance to the NCADV vision statement; in violation of the Plaintiff's rights.

150. In 2007-2008 the 110th Congress (Defendants') approved between $409 to $430 million for the Office on Violence Against Women Recovery Act, in the H.R. 3093 bill (*U.S Department of Commerce, Justice, Science and Related Agencies*) with what the media called a Feminist Pork Spending Bill, which allotted $115 million to encourage arrests and an additional $55 million to encourage the arrest and prosecution of children (*the Plaintiff's son fell prey to this action*). In 2009 the recovery act received $612 million allocating $175 million for prevention and prosecution programs. For the years of 2009 and 2010 domestic violence legislations allotted themselves $2.1 billion as the domestic violence issue transformed from a cash cow and grew exponentially into an industry (*as repeated from enumeration #15*). And I can say this for two reasons. 1st) DV laws fall under a special/specific category, requiring special tasks forces and special funding as no other law. Resultantly they invest vast sums of money in media campaigns to abase the beliefs of theocratic households in a seemingly attempt to convince the general public of a legal right unsupported by the Constitution. And 2nd) because domestic violence has been allotted $1.2 billion *(p95)* for statistical reporting alone in H.R. 3093, and none of the statistics are consistent or correct. The statistical reporting was intended to confirm the exuberant claims of DV and the mandatory DV arrests policies were intended to supply the data the Defendants' needed in order to support the statistical claims. Yet the ABA (*American Bar Association Commission offers statistics on domestic violence*) presented an entirely different finding of the DV statistics than did "Aardvark" by showing that 1.3 million women and 835,000 men are physically assaulted by an intimate partner annually in the U.S. during a 1995-1996 survey. The difference between the two studies in enumeration #86 & 87 are merely years apart but Aardvark shows a 91% gender-based violence rate of women over men, while the ABA only shows 36%. But according to the Criminal Justice Statistics Center, domestic violence statistics dropped 25.6% from 250,439 reported calls in 1994 to 186,439 in 2004; these numbers are 1/2 of Aardvark's and 1/5[th] of the ABA's because of the arrest protocols. Consistent with the views

3

p27-99

expressed in Morrison's "Mountains of Data" men were forced to cease the practice of "male privilege" simply because they didn't want to go to jail anymore. According to Morrison's "Mountains of Data" this message to men must be sent and enforced from the top down; from the President all the way to law enforcement officers. Likewise every President since the signing of the VAWA in 1994 has signed and enforced the domestic violence initiative per enumeration #26 (*in the exact manner as suggested by Morrison's "Mountains of Data"*). This means that the data pertaining to DV legislation and the Equal Protection that the Defendants' hoped to provide against Exercise seems to be completely unsupported. The City of Boerne v. Flores 'Held'. [*(Yes. While Congress has the first instance to determine whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment, including the right to free exercise of religion, and its conclusions are entitled much deference, this deference is not unlimited. The courts retain the power to determine if Congress has exceeded its power under the Constitution. Broad as the power of Congress is under the Enforcement Clause of the Fourteenth Amendment, RFRA contradicts vital principles necessary to maintain separation of powers and the federal balance.)*].

**3**

p27-99

151. According to the domestic violence statistic; the most important numbers are actually provided by the U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, in 2000. The numbers show no "epidemic", or at least none threatening to women, as it estimates that 1.9 million women and 3.2 million men are physically assaulted annually in the United States. This study showed that men experience 41% more assaultive behavior than women. Enumeration #11 showed a 10 year period whereas it was found that the incident rate of violence against women was nearly identical regardless of the offender type; 52% by strangers, 55% by an intimate partner and 63% by a friend or acquaintance. Even the State of Michigan's; Michigan State Police Crime Reporting Divisions revealed a larger number of reported domestic violence victims than perpetrators; and to be candid, that's just impossible. The ratio should be one to one. One offense to one perpetrator; and/or a second offense to a second and/or the same perpetrator. Nevertheless the Department of Justice proudly reports that 91% of the nation's police departments are employing 98% of their resources/officers to be committed to the domestic violence issue (2007) even though the numbers provided by statically reports will never

add up because governmental agencies like the Department of Justice rely on data provided by independents in partnership and/or funded by the Defendants' like the NIJ (*National Institute of Justice*), NCADV (National Coalition Against Domestic violence) and others. The data is derived from formulas, percentages and magic numbers that even try to calculate error ratios by multiplying a Z-score (*whatever that is*) against the equation. How can any of these numbers be accurate if they're simply not true and if not true then why are they supported by law? None of the data is real, probable or even plausible yet the Defendants' publish these findings perpetuating a national "wag the dog" campaign against the Bill of Rights. To which the issue of domestic violence has raised opponents on each side of the table placing dissention in the Plaintiff's home and across the nation.

152. When we see statements indicating that "men choose to batter, because the choice is there's to make with no consequence of their actions" in the Defendants' very own databases; we know that the statements are made against the protected religious Exercise and the statutes surrounding them. We also know that the Exercise and the religious protection specifically targeted to prohibit the Exercise in violation of the First Amendment, ex post facto and Bills of Attainder. Therefore it is cognizable that the Defendants' violated the Exercise as an act of deliberation and intent.

3
p27-99

153. Even Duluth recognizes its own flawed stereotypical philosophies based on the changing the thoughts, behavior and male belief system due to the increasing number of women that are also using violence in the home (*data found Duluth's primary webpage*). Thereby it was wrong of the Defendants' to take such bold and decisive actions against guaranteed liberties of the Plaintiff, and even bolder to equate the Plaintiff's religious beliefs aside mental health disorders. We live in a world with a diversified belief system; and as a demoralized and decaying society we're drawn to imperfection; or to say, that which is easy, that which will affirm us. Consequently and consistently we tend to marry our lust; someone who is not our like kind, someone who'll accept our frailties and criticizes a greater good. Resultantly, some of us should've made a better choice for a spouse. However, this is not true on the behalf of the Plaintiff; the Plaintiff is merely making a point. The point is that Duluth should've realized an infinite number of variables contributing to marital strife before they packaged their product and sold it to the

Defendants'.  Religious marriage not only defines a bed chamber, but the obligations and duties DV legislation intends to relieve the wedded of.

154. Not all violence is caused and/or supported by false statistical data and/or magic numbers.  We know this, because the Plaintiff's mandatory counseling sessions actually tried to force the Plaintiff to admit and/or confess that God's righteous and theocratic exercises that the Plaintiff Exercised in the home were crimes of abuse.  The confessions are collected and added to the DV statistical database.

155. There again, not all violence is caused and/or supported by false statistical data and/or magic numbers, or even estimates the probability of women not coming forward, or is perpetuated by federal bribes and mandatory arrest policies which will in fact provide the evidence supporting the fabrication.  Some people need time to get on the same page and it's not for the Defendants' to deprive them of the opportunity.

156. According to the Civil Rights Act of 1964 [*un-prohibited religious exercise must include all aspects of religious observance and practice as well as ones beliefs*]; and not simply those Exercises approved by the Defendants' as to prohibit the Exercise.  This is a powerful statement.  The statement was taken from a federal website.  In like manner this complaint shows statements from the Defendants' themselves, from other branches and/or departments of government, Congressional Senate Committee Hearings, police agencies and domestic violence agencies and publications.  In fact everywhere we look we see clearly see evidences to suggest that the Defendants' completely understood, knew and/or held knowledge that it was illegal to prohibit the Plaintiff's Exercise, but they did it anyway.

3

p27-99

4

p99-123

**FOURTH CLAIM**

**Facts; the Plaintiff alleges the following in every enumeration; the Plaintiff makes the following claims in every enumeration;**

**Ongoing offenses and more detailed accounts.**

157. The Plaintiff recounts and incorporates the enumerated paragraphs from the previous CLAIMS of the complaint therein.

158. The Defendants' failed to observe constitutionality per their oaths. In violation of the Supremacy Clause of Article VI, ¶¶; as they were so duty bound by oath of office pursuant of, Article VI, ¶¶¶ of the U.S. Constitution; the Senate Article I § 3, par 6, of the U.S. Constitution, and 18 U.S.C § 1623.

159. The Defendants' did not uphold the Plaintiffs First Amendments rights per the Supremacy Clause of Article VI, ¶¶; as they were so duty bound by oath of office pursuant of, Article VI, ¶¶¶ of the U.S. Constitution; the Senate Article I § 3, par 6, of the U.S. Constitution, and 18 U.S.C § 1623. Criticism

160. Under Michigan's Constitution [*Article I, Bill of Rights; Religious Worship Sec. 4. Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled to attend, or, against his consent, to contribute to the erection or support of any place of religious worship, or to pay tithes, taxes or other rates for the support of any minister of the gospel or teacher of religion. No money shall be appropriated or drawn from the treasury for the benefit of any religious sect or society, theological or religious seminary; nor shall property belonging to the state be appropriated for any such purpose. The civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief*]. Yet the Defendants' incriminated those beliefs and launched societal campaigns discriminating against said belief. The Defendants' even violated the Plaintiff's right to worship in Michigan. To worship; is a reverent honor and homage paid to God. To wit the Jews define worship as a way of life. Thereby God is reverenced though obedience. The Defendants' prohibited the Plaintiff's obedience in violation of Exercise, and incorporated disobedience (*an alternative Exercise*) in violation of Establishment.

4

p99-123

161. One of the foreign ideologies promoted by the Defendants' contracted the BIP and DAIP accredited treatment providers per MCL 600.1063. And its ideologies were in direct contrast of the Plaintiff's religious beliefs per Genesis 3:16 (*KJV*). Genesis 3:16 (*KJV*) gives the Plaintiff "rule" over his house; the Defendants' Duluth Model harassed the ideology



of "male rule" and/or the "male privilege" and classified it is a form of abuse. The Defendants' supported the heresy by employing it in violation of Exercise.

162. Rule is absolute in nearly every language of the world. Resultantly the powers reserved by the Plaintiff pursuant of the Tenth Amendment are consistent with the entitlement of Citizenship pursuant of Exercise of the First Amendment. There again, rule is absolute in nearly every language of the world and that's exactly why the U.S. Constitution does not grant rule to the governments; but governorship.

163. The Defendants' also invaded the Plaintiff's privacy by empowered the DVIC counseling facility to illegally monitor the Plaintiff's compliance; thus violating the Fourth Amendment by looking for evidence that the Plaintiff was still in exercise of un-prohibited Exercise. The Defendants' also granted themselves the authority to violate Exercise and to be the attainder Exercise according to line item 13 of the DV counseling Phase 1 Agreement; as also stated in the Welcome to Phase 1, ¶ 5, intro packet.

164. When the Defendants' monitored the Plaintiff compliance to their illegal laws; the Defendants' contacted the Plaintiff's wife. Through contact the Defendants' invaded the Plaintiff's Privacy and asked personal question pertaining to the Plaintiff's conduct and Exercise. The Defendants' also advised the Plaintiff's wife as a heresiarch to spread their dogmas contaminating the Plaintiff's home with unwelcomed ideologies foreign to the Plaintiff and inconsistent with his beliefs and Exercise.

165. The Defendants' defined assault in terms unsupported by law and convinced the Plaintiff's wife that everyday normal, natural and/or healthy interactions with her husband were actually forms of abuse. As a direct result of the Defendants' teachings, the Plaintiff wife maintained the belief that any and all conversations which did not affirm her was a form of emotional abuse. As a direct result of the Defendants' trespass the Plaintiff could no longer correct or instruct his wife. The Defendants' presumed to be experts in the field of the experimental sciences and introduced the psychology of victims and the dynamics of victimhood that has been largely ignored by scholars and clinicians for good reason. The Defendants' recklessly engaged in this pathological activity while chapter 2, section 2.4 of the DVB (*Domestic*

**4**

p99-123

USING
EMOTIONAL
ABUSE
Putting her down • making her
feel bad about herself • calling her
names • making her think she's crazy

*Violence Benchbook 2012* ) was careful not to order couples counseling (*marriage counseling*) and/or joint counseling deemed inappropriate by the Defendants', because it could reinforce power differences and/or gender inequalities disadvantageous to the victim. This means that the Defendants' were not trying to help and/or assist the Plaintiff's marriage in any way. For in fact the Defendant's DVB demonstrates no fear against the liability of suit due to the Defendants' malpractice and/or misdiagnoses they offered a as therapist; in violation of Exercise and Establishment. According to I Corinthians 14:35 (*KJV*) and other scriptures the Plaintiff is the only authorized person God has assigned to instruct his wife. This is a religious Exercise whereas the Defendants' have no legal jurisdiction or legal precedent. When the Defendants' violated the Plaintiff religious rights of Exercise they also incorporated Establishment by instructing the Plaintiffs' wife on matters pertaining to their marital relationship without the Plaintiffs' knowledge or consent and crossed the jurisdictional lines of the Tenth Amendment, with doctrines that were not in line with the Plaintiff's beliefs or Exercise. This act violates both clauses of the First Amendment because it prohibits the Plaintiffs' Exercise as the "instructor" of his wife/house; and it also incorporates Establishment because the Defendants' provided secular doctrine opposed to Exercise. This was a very and bold and dangerous step which psychiatrists amply try to avoid at all cost due to the liability of suit. It is a grave mistake for any mental health professional to prescribe an action for any of their patients that could result in error. In such cases the therapist allows the patient arrive at their own 'break through'. One of the diagnoses of the Defendants' was to teach the Plaintiff's wife not to accept "any" blame and/or not to submit herself to "any" form of verbal abuse deemed negative and/or as a putdown; ironically these are almost the exact words used in Morrison's "Mountains of Data". Resultantly the Plaintiff was unable to instruct his wife. Criticisms, constructive criticisms and other difficult conversations were ignored like the warning lights in a car. Consequently the marital vehicle broke down due to unattended maintenance issues that couldn't be discussed. In instances like these the Plaintiff is instructed to use the "rod" (*in order to rule well*), but the rod was deemed illegal by the Defendants'. In instances like these when the

**4**

p99-123

rod is not used (*ref Prov 20:30 KJV*) androgenous seed (*male offspring*) is not made as a like-kind in the same way that God made man and commanded him to be fruitful and to multiply (*to understand please refer to the RELIGIOUS CLAIM*).

166. The Defendants' employed Duluth's shamed-based approach to counseling utilizing visual stimuli introducing fractured audio scenarios which could easily be deduced from an infinite number of variables related to raised voice and physical intimidation.  It showed [24]graves and caskets and offered no marital solutions.  The best and only thing retrieved from the sessions were the "I statements"; everything else demanded that the male spouse should remain hapless, helpless and passive in the matters pertaining to his very own household.

167. The Defendants' employed forcible indoctrination to induce the Plaintiff to give up his political, social or religious beliefs and/or attitudes to accept contrasting regimented ideas through the batterer's intervention program.  The Defendants also employed other means related to negative persuasions and national media campaigns promoting propaganda and salesmanship.  The Defendants' even used the 'group think error' in their mandatory counseling sessions in hopes to influence the Plaintiff's loyalty away from his ideas by targeting the credibility of the belief as shared and/or disavowed by those easier persuaded persons with whom the Plaintiff might trust.

168. Per MCL 769.4a, MCL 600.2157a etc, the Plaintiff was expected to reform behaviors to remain in compliance of federal and state rules as a condition of probation (MCL 771.3, and MCL 600.1060 etc).

169. The irresponsible actions on the behalf of lawmakers and law enforcement officers are a continued source of strife, grief and conflict among all the members of the Plaintiff's house.

170.  The Defendants' blatant disregard for law has been the cause of much pain, suffering and injury as they carelessly shredded intangibles.

171. According to the Bible i.e. Prince v Massachusetts it is the Plaintiff's responsibility to teach the tenets, practices and even the function of his families faith pursuant of the First, Tenth and Fourteenth Amendments.

172. The Plaintiff did not permit the Defendants' to teach alternative doctrines to this family.

**4**

p99-123

---

[24] Producing a positive impact on the Plaintiff, but was insulting.

173. It has been observed that the Defendants' illegal laws and societal teachings produce cowards and fractured men. Men who are not God fearing men enough to save the souls of their families they watch over (*Hebrews 13:7 717 KJV*), nor are as brave as lions (*Proverbs 28:1 KJV*); but are feeble men liable to forsake the Lord's ways.

174. It has also been observed that the Defendants' illegal laws and societal teachings have taught women to dishonor the male position in the home (*ref: Eph 5:33; II Pet 2:10 and Jude 8 KJV*) in violation of Exercise and Establishment. These women are self-willed and all of life is the lending of wills (*Mt 6:10 and 26:39 KJV*).

175. As such, the Plaintiff has watched his daughters and his neighbors daughters lash out to strike their husbands, brothers and/or playmates, while daring them to strike back because they're gender-protected. The Plaintiff has also seen women us DV laws as a weapon and/or a means for revenge.

176. *In Lockhart v. U.S. et al. No. 04-881, jurisprudence is said to been laded with congressional attempts to burden the future exercise of legislative power with express-references and express-statement requirements. Moreover, such reasoning will not limit Congress to regulating violence, but may be applied equally as well to family law and other areas of state regulation since the aggregate effect of marriage, divorce, and childrearing may also be national significant. Nevertheless, the Constitution requires a distinction between what is truly national and what is truly local or personal least we forget the First, Ninth and Tenth Amendments.*

177. The Defendants' also invaded the Plaintiff's privacy and discriminated against his religious beliefs by making a mental assessment of the Plaintiff by a licensed psychologist, because of his Exercise. The mental health provider shared the Plaintiff's personal data with an interdisciplinary team of treatment/education providers, probationary and parole agents and other members of the DVIC in order to provide the best continued domestic violence treatment per the available programming recommended by this committee so that the Defendants' might cure the Plaintiff of religion, according to line item 15 of the Phase I Agreement, Welcome to Phase 1, ¶ 3, intro packet and the Phase II intro letter by Judy Turba, M.A.; L.P.C. Mental Health Counselor.

**4**

p99-123

178. The Defendants' deprived the Plaintiff of doctor client privileges by coercing and conditioning his consent and participation on compliance; subjecting a sound minded

Plaintiff to mental treatments and brainwashing techniques, divulged confidential information about the patient (*Plaintiff*) without his voluntary consent according to the Notice of Provider Privacy Practices (*describing how the mental/psychological info will be disclosed*) per line items 1, 5 and 6.

179. The Plaintiff alleges that the Defendants' actions were governed by the localities of the local culture and overlooked the law *(the Supreme Law of the Land)* and ruled based on local believes, response and political resolve; disregarding the Plaintiffs' First Amendment Rights as well as his psychological make-up.

180. The Defendants' falsely arrested the Plaintiff and convicted him of crimes he didn't commit.

181. The Defendants' tried to make the Plaintiff admit to crimes that he was not guilty of. The Defendants' tried to coerce the Plaintiff into pleading guilty of crimes he was not guilty of

182. The Defendants' mandatory counseling tried to make the Plaintiff believe that he was guilty of a criminal act.

183. The Defendants' DV laws condemned the Plaintiff's Exercise and delivered a message to the Plaintiff's family that the "right ways" of God were not only wrong, but illegal, in violation of Exercise and Establishment. This message was also conveyed in the schools of the Plaintiff's children and injured them with inquiries violating Privacy.

184. The Defendants' DV laws offered the Plaintiff's family an alternative to religious obedience in violation of Exercise and Establishment.

185. The Defendants continued to make false public statements in an attempt to continue their conspiracy and to cover up their own wrongdoings.

186. The Defendants' misrepresented the law and initiated the "color of law" incriminating the Plaintiff.

187. The Defendants' failed to exercise adequate supervisory responsibilities in the protection of the Plaintiffs First Amendment rights in Violation of Equal Protection and Enforcement

188. The Defendants' failed in their civic duties.

189. The Defendants' did not protect a civilian (*the Plaintiff*) from brainwashing in violation of 42 U.S.C § 1986 Action For Neglect to Prevent.

190. The penal system is based on crime and punishment which is used in the reforming criminals. Court ordered counseling implies a cure and/or mental health issues,

**4**

p99-123

evaluations and related crimes psychological in nature.  Rehabilitate the offender Mandatory court ordered counseling for theocratic beliefs is a highly irregular method of reforming criminals and non criminals alike.  The Duluth Model counseling sessions are ineffective according to the D.O.J. N.I.J. and it violates the A.P.A's rules of professional ethnics as previously mentioned in enumeration #11.  So why would the Defendants' assume such a bizarre threat of liability?  Spouses are comforted under the notion that the programs are designed to stop and/or deter battering.  The nature of such counseling assures the victim and/or the client that they will be safe from their predators in whatever form they may take (OCD's, phobias, stress, coping mechanism, batterers and etc.).  On one hand it can be argued that the counseling sessions suggested that the victims will soon be safe from a cured and reformed spouse.  While on the other hand the Plaintiff is expected to be cured of his theocratic Exercises.  We know this not only because the Plaintiff attended the mandatory counseling sessions, copied and documented the course materials and read various reports.

191.  And the Defendants' did so openly and in plain sight. To which every enumeration in this complaint is not only alleged, but can be entered as evidence, direct evidence and incontrovertible evidence.

192.  It is certain that the word "right(s)" implies ownership.  Yet the Defendants confiscated the rights of the Plaintiff and treated him in a very unusual and undignified manner.

193.  In MCL 765.6b(7) and similar statutes, the Defendants' granted themselves unlimited judicial power over the Plaintiff with his rights Unlawfully Seized.  The Defendants' claimed to yield to the Plaintiff's superior rights in several judicial publications and Public Acts, however, they did not. In section 2.1 of the CVRA, the Defendants' stated  that [*It is important to note that provisions of the United States Constitution take precedence over conflicting state constitutional and statutory provisions.  Therefore, when an offender's federal constitutional right conflicts with a crime victim's right contained in a state constitution or statute, the offender's federal constitutional right prevails and must be preserved at the cost of the victim's right*].  In section 2.2 of the CVRA, the Defendants' also stated that [*if a criminal defendant is not asserting a federal constitutional right, a crime victim's right contained in a state's constitution prevails*].  However, the Plaintiff claimed his rights to no avail, as the Defendants' Seized his First, Second, Fourth, Fifth,

4

p99-123

Sixth, Eighth, Ninth, Tenth and Fourteenth Amendment rights, and eighteen of their respective Clauses. Therefore the Plaintiff feels threatened by the Defendants' procedural application of laws against which the Plaintiff has no defense. The Plaintiff is pathetically disadvantaged against the Defendants' if the U.S. Constitution is meaningless and demands a remedy.

194. As a matter of record women's organizations pressured police and legislators to categorize domestic violence as a crime of assault. The Defendants' campaigned on the issue and then legislated it. Hence the domestic violence timeline also shows the Defendants' involved in numerous marital studies specifically targeting religious marriage and/or Exercise. In Morrison's 'Mountains of Data' it has been indicated that a marriage license was a license to hit and/or abuse.

195. The domestic violence timeline shows a reluctance on the part of local authorities to enforce domestic violence legislation. The police, at one time, were apprehensive about violating the Privacy of the marital Exercise, because it was in violation of the First Amendment. [25]Yet all Defendants' soon complied and competed for the eligible shares of federal funding and/or bribes called Stop Grants. The police assumed the role of hire thugs and immediately enforced DV legislations stripping the Plaintiff of his rights. His trial was a farce with no other foreseeable outcome. There was no Douglas County Sheriff John Hanlin in the state of Michigan to write a letter to the Vice President of the United States, standing up for the Plaintiff's rights of Exercise at the behest of his sworn oath.

196. With Congress turning a blind eye to the illegal enforcement protocols appropriated through state police powers the Plaintiff was/is victimized by an iconic hypocrisy. Religious Exercise provides the Plaintiff with "power and control" over his theocratic household as denoted by the word "rule" in Genesis 3:16 (*KJV*). However, Duluth demonized the Plaintiff's use of "power and control", while some police officers demand "power and control" over Citizenship and this has currently become a source of social unrest. On the other hand Congress fervently tries to exceed the limits of their authority because they seem to crave "power and control", while the Defendants' seized "power and control" over the Plaintiff's Exercise. This enumeration lists five different entities in

4

p99-123

---

[25]Pub. L. 103-322, Pub. L. 106-386, Pub. L. 109-162, MCL 600.1060, MCL 600.1076, MCL 600.1078, MCL 600.1082, MCL 600.1080, Michigan Judicial Institute Domestic Violence Benchbook and Crime Victims Rights Manual).

reference to "power and control", but only one is authorized to Exercise "power and control" within the confines of law.

197.  The Defendants' illegal laws violate the sanctity of religious marriage and are enforced with federal compliance protocols, grants and funding; including but not limited to punishing and incarceration the innocent, and forcing them to pay undue fines [26]denying child custody, [27]requiring the posting of bonds for parent time visitation, [28]brainwashing and the [29]suspension of occupational, recreational and sporting licenses.

198.  The continued ongoing legislation perpetrates a fraud against the Plaintiff and demonstrates a blatant disregard for law.  The continued ongoing legislation deprives the Plaintiff of his rights.  The continued ongoing legislation defines a state of lawlessness. The continued ongoing legislation injuries the Plaintiff.  The continued ongoing legislation sets the Plaintiff at variance against his God.  The Plaintiff has already lost one child to the legislation, while his children have lost a sibling.  This child was one that the Plaintiff could not reach as he was bound by the Defendants' domestic violence laws.  The Plaintiff could not Exercise the "power and control" that the child needed, because the Defendant's prohibited Exercise.

199.  To wit the Defendants' built a very elaborate house of cards with one unconstitutional law atop another.  For example; MCL 764.15a; arrest without a warrant; grants the Defendants' authority to make a warrantless arrest, with [30]reasonable cause, for persons in violation of MCL 750.81 and MCL 750.81a.  However, the Fourth Amendment demands Probable Cause for an arrest and it forbids Warrantless Arrests.   While the Fourth Amendment does promote Reasonable Suspicion for searches, we must note that Reasonable Suspicion is a level of suspicion lower than Probable Cause; while suspicion remains merely speculative, and reasonable cause remains undefined by the Constitution

**4**

p99-123

---

[26] Michigan Judicial Institute,  Domestic violence Benchbook 3rd Ed, section 10.3, B. Minimizing Contact Between the Parties. MCL 552.505, MCL 722.22, MCL 722.23 and MCL 722.31.
[27] Michigan Judicial Institute,  Domestic violence Benchbook 3rd Ed, section 12.7, B. Terms for Parenting Time. MCL 722.27a
[28] method of controlled/forcible indoctrination of foreign ideologies contradictory and conflicting to established belief systems introduced through repetition, process, procedure and systematic course/training material; breaking self-belief and rebuilding a new belief system
[29] Michigan Judicial Institute,  Domestic violence Benchbook 3rd Ed, section 12.9, Civil Remedies to Enforce Parenting Time Orders.
[30] State of Michigan Standard Domestic Relationship Incident Report From, August 2002. Arrest Decisions page 3.

and is therefore not an enumerated power of government. Furthermore both MCL 750.81 and MCL 750.81a are unconstitutional in violation of Exercise of the First Amendment. To wit Probable Cause cannot exist in the absence of a crime. So how could an arrest be made and/or a verdict reached? There again this preludes to a violation of multiple rights and the absence of a fair trial, etc and so forth, ad infinitum.

200. The Defendants' made non-criminal conduct criminal per the first Calder category of ex post facto, to incriminate the Plaintiff. The Defendants' increased retroactive modifications of punishments beyond the law annexed to the office, per the third Calder category of ex post facto, to arrest the Plaintiff. The Defendants' changed the rules of evidence per the fourth Calder category of ex post facto, to convict the Plaintiff. And the Defendants' inflicted punishments where the party was not, by law, liable to any punishment under law per the second Calder category of ex post facto, to punish the Plaintiff. Both the Second and Third Calder categories of ex post facto constitute Cruel and Unusual Punishment of the Eight Amendment.

201. The Defendants' wrote ex post facto laws in violation of Article I § 9, ¶ 3, of the U.S. Constitution and against the First and subsequent Amendments.

202. The Defendants' wrote ex post facto laws in violation of Article I, § 10, of Michigan's State Constitution and against the First and subsequent Amendments.

203. The Defendants' wrote Bills of Attainder in violation of Article I § 9, ¶ 3, of the U.S. Constitution and against the Second and subsequent Amendments.

204. The Defendants' wrote Bills of attainder in violation of Article I § 10 of Michigan's State Constitution and against the Second and subsequent U.S. Constitutional Amendments including many clauses of Article I of Michigan's State Constitution.

4

p99-123

205. The Defendants' recalled the grants of the Bill of Rights and many clauses of Article I of Michigan's Constitution which belonged to the Plaintiff and are not enumerated with the power to revoke grants. [*I do not hesitate to declare that a State does not possess the power of revoking its own grants (Fletcher v. Peck 10h)*].

206. The Defendants' violated and denied Privacy in violation of the Fourth Amendment.

207. The Defendants' violated and denied Unlawful Seizures in violation of the Fourth Amendment.

208. The Defendants' violated and denied Probable Cause in violation of the Fourth Amendment.

209. The Defendants' incorporated Warrantless Arrest in violation of the Fourth Amendment.

210. The Defendants violated and denied Due Process of law in violation of the Fifth and Fourteenth Amendments.

211. The Defendants' denied the Plaintiff's right to a fair trial in violation of the Sixth Amendment.

212. The Defendants' made and enforced laws abridging the Privileges and Immunities of U.S. Citizens.

213. The Defendants' passed Bills of Attainder revoking First Amendment rights to apply the equal protection of illegal DV laws that were written and enforced, in violation of the Fourteenth Amendment.

214. The Defendants' violated and deprived the Plaintiff of life, liberty and property without Due Process of law.

215. The Defendants' violated the First Amendment by prohibiting free Exercise of religions with the list of laws in enumerations #14-18b of the Third Claim.

216. The Defendants' incorporated Establishment with the list of laws #14-18b of the Third Claim.

217. The Defendants' did not enforce the Enforcement or Equal Protection Clauses of the Fourteenth Amendment to protect the religious rights of the Plaintiff.

218. The Defendants' trespass and intervention in the theocratic household violating free Exercise, Establishment and Privacy.

**4**

p99-123

219. The Defendant's prohibited Exercise causing the Plaintiff to disobey a minimum of 331 related commandments (see RELIGIOUS CLAIM).

220. The Defendants' mandatory arrest policies violated and negated Probable Cause.

221. The Defendants' used Unlawful Seized testimonies in violation of the First and Fourteenth Amendments.

222. The Defendants' practice of testifying in place of spouse violates the Plaintiff's Exercise. For if the Defendant's can't take the Plaintiff's spouses place in the bed; then they can't take her place in court. Similar is true of the Plaintiff's daughter. The Plaintiff and his